## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **G.W.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE** |
| **vs.** | : | |
| | : | **NO. 1:20-cv-05232-JPB** |
| **NORTHBROOK INDUSTRIES,** | : | |
| **INC., D/B/A UNITED INN AND** | : | |
| **SUITES,** | : | |
| | : | |
| **Defendant.** | : | |

## PLAINTIFF'S MOTION FOR SANCTIONS AND MEMORANDUM IN SUPPORT

Plaintiff hereby moves for sanctions against Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites, and in support thereof respectfully submits the enclosed memorandum of law.

## <u>TABLE OF CONTENTS</u>

BACKGROUND………………………………………………………....2

   I.   In June 2022—Before Fact Discovery Started—Defendant
      Agreed to Search and Produce Its Responsive Electronically
      Stored Information (ESI)………………………………………….…...2

   II.   In July 2022, Plaintiff Served Discovery Requests on
      Defendant, and Defendant Responded in August 2022………......................3

   III.   In January 2023, Plaintiff Served a 30(b)(6) Notice on
      Defendant and a Request to Produce Documents Responsive
      to the 30(b)(6) Topics…………………………………………….....4

   IV.   Plaintiff's February 2023 Depositions of Defendant's
      30(b)(6) Representative, Owner, and Manager Revealed
      Defendant Did Not Search Its ESI or Relevant Files
      Before Responding to Plaintiff's Discovery Requests
      and Notice to Produce……..……………………………………….....5

   V.   Plaintiff Spent the Next Two Months Trying to Get Defendant
      to Search for and Produce the Documents Plaintiff Requested in
      July 2022 and January 2023……………………………………….…..6

   VI.   On April 20, 2023, Approximately 40 Days After Fact
      Discovery Closed, Defendant Produced 3,500 Pages—Six
      Times More than Defendant Produced in Fact Discovery—
      Including Many Critical Documents……………………………………..9

   VII.   In the Weeks After Defendant's Untimely April
      Production of Key Documents, Plaintiff Scrambled to
      Revise Her Discovery Strategies, Retake Depositions,
      and Re-Visit Previous Discovery and Investigative Work……………..…12

**ARGUMENT**………………………………………………………………..**14**

I.   Defendant Must Be Sanctioned Under Rule 26(g)(3) Because
Defendant Did Not Conduct a "Reasonable Inquiry" of the
Records in its Possession, Custody, or Control Before
Responding to Plaintiff's Discovery Requests……………………………..17

II.   In Addition to Mandated Sanctions Under Rule 26(g)(3),
Sanctions are Also Warranted Under Rules 37(b)(2) and (c)(1)
Because of the Magnitude of Defendant's Negligence, Defendant's
Delay in Correcting It, and the Prejudice to Plaintiff…………………….....19

III.   Plaintiff Requests Targeted Sanctions Under Rules 26(g)(3),
37(b)(2), and 37(c)(1), and the Court's Inherent Powers Because of
Defendant's Discovery Negligence……………………………………………...24

In this case concerning sex trafficking of a minor, Defendant responded to Plaintiff's July 2022 discovery requests without searching its computer, emails, text messages, sex trafficking file, and staffing files.   In February 2023 depositions, Plaintiff uncovered the problem.   In early April, after discovery closed on March 10th, Defendant began searching its ESI and relevant files.   On April 28th, Defendant produced 3,500 new pages—six times more than it produced in discovery.   The late documents, which are the most critical in the case, include discussions with law enforcement about crime and commercial sex, sex trafficking training materials, lists of staff who worked at the hotel, and a notice of a "missing" 16-year-old trafficked at the hotel.   Defendant's late production conflicts with its prior responses on key issues, like who worked at the hotel, staff training on crime, and communications with law enforcement.   Defendant "must" be sanctioned under Rule 26(g)(3) because it did not make a "reasonable inquiry" before responding to discovery requests.

Sanctions are also appropriate under Rules 37(b)(2) and (c)(1) because of the scale of Defendant's discovery negligence, Defendant's delay in correcting it, and the prejudice to Plaintiff.   Defendant's pivotal late production meant Plaintiff wasted and misdirected resources in discovery and then had to re-do discovery work and revise strategies *after* discovery closed on March 10th.   For these reasons, the sanctions outlined on pages 24-25 must *and* should be imposed here.

## BACKGROUND

On December 28, 2020, Plaintiff sued Defendant Northbrook Industries, Inc.

d/b/a United Inn & Suites ("Defendant" or "United Inn") and alleged that United Inn

is liable to her for violation of 18 U.S.C. 1595(a) and for negligence because she was

sex trafficked as a minor at United Inn in 2017.  (Doc. 1).[1]

On March 15, 2021, Defendant served its initial disclosures.  (Doc. 26).

Defendant never supplemented its initial disclosures.  On June 7, 2022, Defendant

answered the Complaint (Doc. 41), after the Court resolved Rule 12(b)(6) briefing,

(*see, e.g.*, Doc. 34).  The case was assigned to a six-month discovery period, with

discovery opening on July 7, 2022.  (Doc. 40 at 16).  On December 2, 2022, the

parties filed a joint motion to extend the fact discovery deadline to March 10, 2023

(Doc. 50), which the Court granted on December 5, 2023.  The Court instructed:

"Given this lengthy extension, future extensions are unlikely."

## I.   In June 2022—Before Fact Discovery Started—Defendant Agreed to Search for and Produce Its Responsive Electronically Stored Information (ESI).

On June 15, 2022, before discovery began on July 7, 2022, Plaintiff wrote

Defendant to address ESI: "[T]o avoid delay later, I think it makes sense for us to

---

[1] Plaintiff's traffickers pled guilty to sex trafficking Plaintiff as a minor at United Inn in violation of 18 U.S.C. § 1591.  *See, e.g., United States v. Obie*, Case No. 1:18-cr-00424-MLB-JKL (N.D.GA., Nov. 6, 2020), ECF No. 60.

2

agree on search terms to use on ESI. To get the ball rolling, please see the attached list[.]"   (Exhibit 1).   Plaintiff proposed that certain custodians' ESI should be searched: "At a minimum, any corporate/entity email addresses used to discuss hotel business should be searched. If there are other email addresses used for hotel business, those should be searched too."   (*Id.*)   Defendant had "no objection" to Plaintiff's proposal.  (Exhibit 2).

## II.   In July 2022, Plaintiff Served Discovery Requests on Defendant, and Defendant Responded in August 2022.

On July 7, 2022—the day discovery opened—Plaintiff served Defendant with written discovery requests for Defendant's documents on a variety of subjects, including commercial sex, Plaintiff and other minor victims, security at the hotel, crime at the hotel, staff training, names of staff, and more.  (Exhibit 3).  Plaintiff's requests sought Defendant's responsive "Documents" and "Communications," defined broadly to include ESI—*e.g.*, e-mails, text messages, and computer records. (*Id.*)  On August 17, 2022, Defendant responded and produced 511 pages.  (Exhibit 4).  The production did not include emails, text messages, training records, sex trafficking materials, payroll records, or staffing records.   Plaintiff presumed

Defendant had conducted a reasonable inquiry and was acting in good faith.  At that point, Plaintiff had no reason to believe otherwise.[2]

### III.    In January 2023, Plaintiff Served Defendant With a 30(b)(6) Notice and a Request to Produce Documents Responsive to the 30(b)(6) Topics.

On January 9, 2023, Plaintiff served Defendant with a Notice of 30(b)(6) Deposition of Defendant *and* a Notice to Produce.  (Exhibit 5).  The Notice to Produce required Defendant to produce "documents responsive to the topics set forth in Exhibit A that have not been produced previously in this litigation[.]"  (*Id.*)  The topics included the hotel's "security" (Topic 3), "training of managers and employees" (Topic 6), "communications with law enforcement regarding the United Inn & Suites" (Topic 7), "responses to Plaintiff's discovery requests" (Topic 17), and "anti-trafficking training materials" (Topic 18).  (*Id.*)  Defendant did not confer with Plaintiff about the notice and did not produce any additional documents in response to it.

---

[2] On October 21, 2022, Defendant produced an additional 74 pages in response to supplemental requests.  Again, Defendant did not produce ESI, training records, sex trafficking materials, or staffing records.  In total, Defendant produced 585 pages prior to the February 2023 depositions.

IV.   **Plaintiff's February 2023 Depositions of Defendant's 30(b)(6) Representative, Owner, and Manager Revealed Defendant Did Not Search Its ESI and Relevant Paper Files Before Responding to Plaintiff's Discovery Requests.**

During depositions on February 22, 2023—more than 6 months into fact discovery and 16 days before the fact discovery deadline—Defendant's 30(b)(6) representative, owner, and manager admitted that Defendant had not searched significant ESI sources.   As of February 22nd, Defendant had not searched its computer, emails, text messages, sex trafficking file, staff files, or communications with law enforcement about commercial sex at the hotel.  Plaintiff learned about Defendant's negligence because of deposition questions about Defendant's production.  While the February depositions established that Defendant did not make a "reasonable inquiry" before responding to Plaintiff's discovery requests, the gravity of Defendant's discovery negligence and whether Defendant would act in a timely fashion to correct it remained unclear.[3]

---

[3] Plaintiff did not understand the scale and significance of Defendant's negligence until April 20th, more than 40 days after the fact discovery deadline, when Defendant produced approximately 3,500 pages, many of which were hot documents.

5

**V.    Plaintiff Spent the Next Two Months Trying to Get Defendant to Search for and Produce the Documents Plaintiff First Requested in July 2022.**

On February 23, 2023, the day after the revelatory depositions, Plaintiff asked Defendant to promptly search for and produce responsive documents from the newly disclosed sources because such records had been requested in July 2022.  (Exhibits 6 - 7).  On February 24, 2023, Plaintiff served supplemental discovery requests that essentially duplicated Plaintiff's July requests.  (Exhibit 8).  On March 8, 2023, Plaintiff's counsel followed up about Defendant's "business emails, business text messages, payroll records, and other relevant documents" that Plaintiff "ha[d] not yet received" "even though the depositions … two weeks ago" revealed that such documents were in Defendant's possession "and [Plaintiff's] original requests for production of documents served in July 2022 asked for such documents."   (Exhibit 9).  On March 20, 2023, Plaintiff followed up again.  (Exhibit 10).

On March 27, 2023—Defendant's deadline to respond to Plaintiff's February supplemental discovery requests (which duplicated the July 2022 requests)— Defendant did not serve any responses whatsoever.  Defendant did not request an extension of time from Plaintiff and Plaintiff did not grant one.  On March 28, 2023, Plaintiff emailed about Defendant's failure to respond.  (Exhibit 11).  On March 29, 2023, Defendant responded, in part: "I am fully confident that I can get the complete responses by next week… [I] represent to you that I will get you full document

production, to the extent there are documents, next week." (Exhibit 12).[4]  Thus, Defendant first announced its plan to provide "complete responses" and a "full document production" approximately four weeks *after* the March 10th fact discovery deadline.  It did not explain why its plan to provide "complete responses" and a "full document production" was not set in motion in July 2022, when Plaintiff's discovery requests were served.  Or in January 2023, when Plaintiff's 30(b)(6) notice and notice to produce were served.  Or on February 22nd, when Defendant's 30(b)(6) representative, owner, and manager testified that major document sources had not been searched.  Or in the following weeks when Plaintiff served supplemental requests and repeatedly contacted Defendant about the overdue documents.

On March 31, 2023, Plaintiff responded to Defendant's March 29th "complete responses by next week" email and gave Defendant until April 14th to respond to Plaintiff's discovery requests.  (Exhibit 13).  If Defendant did not, Plaintiff intended to "seek[] court intervention."  (*Id.*)  Plaintiff also emailed about potentially re-

---

[4] On April 18th, Plaintiff learned that Defendant intended to make one ESI production in *AG*, *GW*, and the related *JG* matter pending before Judge Geraghty, Case No. 1:20-cv-05233-SEG.  (Exhibit 19).  In the *JG* matter, Defendant's counsel wrote on March 29th that she had "made arrangements to extract from my clients' devices the emails and text messages that are responsive to the outstanding requests. The current plan is for that to happen next week."  (Exhibit 12a).  On April 6th, she responded to Plaintiff's request to run search terms across Defendant's data, (Exhibits 12b and Exhibit 12c).

opening Defendant's depositions depending on the contents of the late documents. (Exhibit 14).   Plaintiff still did not know the volume or significance of the forthcoming documents.  (*See, e.g.,* Exhibit 15, Exhibit 16).

On Friday, April 14th—the agreed deadline—Defendant did not produce anything.  Instead, Defendant emailed and said it was "midstream on the document review."  (Exhibit 16).  On Monday, April 17th, Plaintiff expressed her intention to "move forward with seeking court intervention" and asked to schedule a telephonic conference in accordance with the Court's standing order.  (Exhibit 17).  On April 18th, Defendant responded: "[we are] [g]etting everything batestamped and will have you discovery responses by noon today."  (Exhibit 18).  Later that day, Defendant produced 87 hard-copy documents (i.e., not ESI), (Exhibit 19), including staff lists with many staff member names never previously identified or disclosed.  (*See* FN 4).   Defendant also produced an undated purported sex trafficking training document.  (Exhibit 20).  Defendant did not explain why such documents were not produced during the discovery period (or with its initial disclosures).  As for the ESI: "We have not yet received the results but believe we are getting them this week and will immediately supplement with those communications."  (Exhibit 19).

**VI.    On April 20, 2023, Approximately 40 Days After Fact Discovery Closed, Defendant Produced 3,500 Pages—Six Times More than Defendant Produced in Fact Discovery—Including Many Critical Documents.**

On April 20th and 26th, more than forty days after discovery closed on March 10th, Defendant produced approximately 3,500 pages—more than six times the 585 pages it produced in discovery.  (Exhibit 19a).  Defendant's late April productions included numerous critical documents:

- Sex trafficking training materials, including a document stating, "hotels and motels are one of the locations where sex trafficking is known to occur at higher rates," and another advertising a free training course with "basic information about how to identify human trafficking and/or related activity."  (Exhibit 20).

- A letter from the Dekalb County Police Department three months prior to Plaintiff's trafficking at United Inn that says, in relevant part: "[t]he Dekalb County Police Department is able and willing to work with you on efforts to implement prevention measures at your hotel and answer any questions … contact Lieutenant DC Thomas at 404-822-5308 or dcthomas1@dekalbcountyga.gov."  (Exhibit 21).

- Correspondence with the FBI about its investigation of Plaintiff's traffickers.

- Text messages among the hotel's owner, manager, and security guards about crime at the hotel, including commercial sex activity.  For example, texts about a

shooting two months before Plaintiff was trafficked with another minor at United Inn that that says, "[s]o far all I know is that it was prostitution related," and others about women selling "sexual relations" at United Inn.

- Staff lists, including names of people allegedly working at the hotel during the relevant period but never disclosed in fact discovery.[5]

- Emails from a law enforcement investigator to United Inn about J.G. (plaintiff in the related case pending before Judge Geraghty, No. 1:20-cv-05233-SEG), a 16-year-old "missing person" suspected of being at United Inn for weeks.  The email attached a Be On the Lookout Notice with J.G.'s name, photo, and physical description. (Exhibit 26).

Defendant's failure to produce these sorts of documents until late April—after the fact discovery deadline—resulted from discovery negligence.  More troubling,

---

[5] Plaintiff is unsure who worked at the hotel during the relevant period because Defendant has produced conflicting information about who worked at the hotel. (*See* Exhibit 22 (highlighting conflicts in Defendant's responses and production in Exhibits 22a - 22d)).

Defendant's inconsistent and incomplete disclosures about its staff has undermined Plaintiff's ability to investigate the case adequately.  Plaintiff is hamstrung in her ability to examine issues at the heart of the case—for example, Defendant's claim that it trained its staff on signs of crime, including commercial sex (Exhibit 24 at 183:4 – 186:21, 188:2 – 188:14); that it was unaware of commercial sex activity at the hotel and that its staff did not report such activity (*see, e.g.*, Exhibit 24 at 64:3 – 65:10, 120:24 – 121:21); and that it vetted its staff before hiring them through background checks and did not have reason to suspect staff complicity in crime at the hotel, (Exhibit 24 at 40:18 – 41:6).

many of the untimely April 2023 documents and responses conflict with Defendant's prior discovery responses:

- During fact discovery, Defendant purported to provide a full list of who worked at the hotel during the relevant period.  (Exhibit 22a at Attachment A; Exhibit 22b at pp. 3-4).  After fact discovery, Defendant disclosed new alleged staff members, and provided first names only for some staff, no contact information for many, and, in May 2023, admitted it paid some staff in cash and did not keep records of the payments.  (Exhibit 23 at 361:5 – 363:20; 380:18 – 381:2; 395:23 – 396:7).

- During fact discovery, Defendant repeatedly claimed it had no training documents about sex trafficking indicators or red flags.  (*See, e.g.,* Exhibit 24 at 187:13-20; *see also* Exhibit 22b at p. 12).[6]  After fact discovery, Defendant shifted course and produced an undated sex trafficking training document.  (Exhibit 20).  Defendant suddenly claimed the document was in its "sex trafficking file" for years.  (Exhibit 25 at 147:24 – 148:25; Exhibit 23 at 381:10 – 23, 385:5 – 385:13, 388:10 – 389:5, 392:24 – 393:9).

---

[6] Defendant objected to producing Documents and Communications concerning "red flags and/or indicators of Prostitution and/or Sex Trafficking" on the basis that the request was "undefined, vague and ambiguous, such that Northbrook cannot respond to the Request."  (Exhibit 4, Dft's Resp. to Document Requests at p. 29).

- During fact discovery, Defendant claimed all its communications with law enforcement were oral.  (Exhibit 22b at p. 12).  After fact discovery, Defendant produced text messages with law enforcement about crime and commercial sex at the hotel, a letter from law enforcement three months before Plaintiff's trafficking offering to "work with [Defendant] on efforts to implement prevention measures at your hotel," (Exhibit 21), emails with FBI relating to investigation of Plaintiff's trafficking at United Inn, and emails with law enforcement about Plaintiff J.G. being a "missing" 16-year-old at the hotel for weeks, (Exhibit 26).

- During fact discovery, Defendant's 30(b)(6) representative claimed Defendant did not know J.G. and did not recognize her.  (Exhibit 24 at 210:24 – 211:8).  After fact discovery, Defendant produced multiple emails it received from law enforcement with Plaintiff's name, photo, age, and description.  (Exhibit 26).

**VII.  In the Weeks After Defendant's Untimely April Production of Key Documents, Plaintiff Scrambled to Revise Her Discovery Strategies, Retake Depositions, and Re-Visit Previous Discovery and Investigative Work.**

On May 2, 2023, Plaintiff reopened depositions of Defendant's owner, manager, and 30(b)(6) representative based on the late documents.  (Doc. 59).  In preparation, Plaintiff's counsel re-reviewed the February 22nd deposition testimonies of Defendant's owner, manager, and 30(b)(6) witnesses; re-reviewed Defendant's

12

August 2022 document production and discovery responses and compared them to Defendant's April production and supplemental responses; and developed new investigative and discovery strategies based on the late production and its conflicts with Defendant's earlier responses.

On May 3, 2023, based on the volume and significance of Defendant's late April production and the re-opened depositions, Plaintiff drafted a motion to extend discovery.    (Exhibit 27).    On May 9, 2023, Plaintiff filed the motion with Defendant's consent, (Doc. 60), and explained that the extension was necessitated by Defendant's failure to timely produce key documents, (*id.* at ¶¶3-10).  After filing the motion, Plaintiff conferred with Defendant's counsel about her efforts to conduct additional discovery on a compressed timeline. (*See, e.g.,* Exhibit 28).  She served supplemental discovery requests and subpoenas in May.  (Docs. 61-3, 70-1).

While scrambling to conduct further investigation and discovery based on Defendant's late, critical production, Plaintiff told Defendant she planned to raise Defendant's discovery negligence with the Court.  (*See, e.g.,* Exhibit 28a).  From May 11, 2023 – May 22, 2023, Plaintiff and Defendant corresponded about a draft discovery dispute statement (Exhibit 29) before Plaintiff filed it, (Doc. 68).

On June 14, 2023, the Court held a status conference regarding the discovery dispute and "directed [the] parties to either mediate the matter in the next couple of

weeks or if a resolution is not reached, Plaintiff may file a motion for sanctions." (Doc. 74). On June 15, 2023, Plaintiff's counsel attempted to contact the Court to schedule mediation of the discovery dispute. (Exhibit 31).[7]  In July, the Parties agreed to participate in a global mediation of the *A.G.* and *G.W.* matters, and Plaintiff agreed not to pursue sanctions pending the mediation, which occurred on August 28th. The Parties partially resolved the case on August 28th, but the resolution took several weeks to finalize. On October 3rd, Plaintiff filed a motion asking the Court to refer the discovery dispute to mediation with a Magistrate Judge, (Doc. 88), and on October 18th the Court granted the motion. (Doc. 92). On December 1st, the Parties participated in mediation with Magistrate Walker. (Doc. 112). The Parties did not reach a resolution of the discovery dispute because Defendant did not agree to the sanctions Plaintiff is proposing on pages 24 - 25. (*Id.*)

## ARGUMENT

The Court "must" impose sanctions under Rule 26(g)(3) because Defendant did not make a "reasonable inquiry" of its computer, emails, text messages, and business files before responding to Plaintiff's discovery requests. *Malautea v.*

---

[7] Plaintiff's counsel emailed CRDJPB@gand.uscourts.gov several times to schedule the discovery dispute mediation. (Exhibit 31). Plaintiff's counsel learned in early October that the emails were not received because the email address omitted an underscore.

*Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993) (Rule 26(g)(3) was "designed to curb discovery abuse by explicitly encouraging the imposition of sanctions."); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1305 (11th Cir. 2003) (same). Eight months after Plaintiff sent her initial discovery requests, and weeks after discovery closed on March 10th, Defendant finally searched its ESI, sex trafficking file, and staff files, and produced 3,500 pages—six times more than it produced during discovery—including many critical documents. Defendant's failure to conduct a "reasonable inquiry" in response to Plaintiff's discovery requests triggers mandatory sanctions under Rule 26(g)(3).[8]

The magnitude of Defendant's discovery negligence, Defendant's delay in correcting it, and the resulting prejudice to Plaintiff also justifies sanctions under Rules 37(b)(2) and (c)(1) and the Court's inherent powers. *See Malautea*, 987 F.2d at 1542; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("[The] inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct[.]")  Defendant failed to conduct basic searches of its hard-copy files and ESI until after discovery closed.  It

---

[8] During a show cause hearing on December 12, 2023, before Judge Geraghty on a similar motion for sanctions addressing similar issues with Defendant in the related *J.G.* matter, Defendant conceded that it did not conduct a "reasonable inquiry" before responding to Plaintiff J.G.'s discovery requests. *See* No. 1:20-cv-05233-SEG.

defies belief that a party acting in good faith would fail to search such records. Plaintiff relied on Defendant's incomplete production to investigate her case, search for documents, find witnesses, depose witnesses, confer with consultants, prepare and serve discovery requests and subpoenas, and generally conduct pre-trial discovery and investigation. After Defendant's surprise deposition testimony about documents in its possession that had not been produced, Defendant dragged its feet and did not produce them for two more months—long after the fact discovery deadline. The late documents and responses materially conflict with information Defendant previously provided in discovery on critical issues like who worked at the hotel during the relevant period, whether the hotel staff was trained on sex trafficking, and the hotel's communications with law enforcement about crime. Further, the late documents materially impacted Plaintiff's investigative, discovery, and case strategies, and meant Plaintiff wasted and misdirected resources in the discovery period, and needed to revisit and re-do discovery work in the weeks after discovery was supposed to have closed.

For these reasons, and others set forth below, sanctions are warranted under Rules 26(g)(3), 37(b)(2), and 37(c)(1). Plaintiff sets forth the specific sanctions she requests on pages 24 - 25.

### I. <u>Defendant Must Be Sanctioned Under Rule 26(g)(3) Because Defendant Did Not Conduct a "Reasonable Inquiry" of the Records in its Possession, Custody, or Control Before Responding to Plaintiff's Discovery Requests.</u>

Defendant must be sanctioned under Rule 26(g)(3) for failure to make a "reasonable inquiry" of its records in response to Plaintiff's discovery requests. Discovery responses "must be signed" by an attorney or a party, and "by signing an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" the responses are complete and correct. Fed. R. Civ. P. 26(g)(1); *see also In re Delta/AirTran Baggage Fee Antitrust Litigation*, 846 F.Supp.2d 1335, 1350 (2012) ("Rule 26(g) broadly 'imposes an affirmative duty to engage in pretrial discovery in a responsible manner[.]'"). The "reasonable inquiry" standard is "an objective standard similar to the one imposed by Rule 11." Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment.

Failure to conduct a "reasonable inquiry" before responding to discovery triggers ***mandatory*** sanctions: "If a certification violates this rule without substantial justification, the court on motion or on its own ***must*** impose an appropriate sanction on the signer, the party, or both." Fed. R. Civ. P. 26(g)(3) (emphasis added). Rule 26(g)(3) leaves it to the Court to decide the appropriate sanction for a violation; although "Rule 26(g) '[is] cast in mandatory terms,'…the mandate of the provision[]

17

extends only to whether a court must impose sanctions, not to which sanction it must impose." *Chambers*, 501 U.S. at 51; Fed. R. Civ. P. 26(g)(3).

Here, Defendant did not conduct a "reasonable inquiry" of its records because it did not search its computer, emails, text messages, sex trafficking file, or staff/payroll file for responsive documents before responding to Plaintiff's discovery requests.  In 2023, ESI collection and production is a necessary part of litigation. *See, e.g., Venator v. Interstate Resources, Inc.*, 2016 WL 1574090 at *10 (S.D. Ga. April 15, 2016) (Rule 26(g) sanctions imposed because Defendant only searched his "inbox, outbox, sent items, and deleted items" for responsive documents, but "searched no other areas on his computer or [Defendant's] computer system"); *see also In re Delta*, 846 F. Supp. 2d at 1351 (Rule 26(g) sanctions appropriate for Defendant's "failure to ensure that all collected hard drives were actually searched and to locate the back-up tapes in the evidence locker"); 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2052 (3d ed. 2010) (collecting cases imposing sanctions under Rule 26(g) for failure to produce relevant ESI). Likewise, Defendant's failure to search its hard-copy business files for sex trafficking materials, payroll records, and staff lists is also indefensible.

Naturally, Plaintiff's discovery requests asked for Defendant's responsive business records, whether electronic or hard copy.  For example, Plaintiff's July

2022 requests defined the terms "Documents" and "Communications" to include emails, text messages, business files, and the like.  (Exhibit 3).  The Federal Rules, of course, encompass ESI, too.   For example, Rule 34, is entitled: "Producing Documents, Electronically Stored Information, and Tangible Things[.]"

Because Defendant did not make a "reasonable inquiry" of its records, sanctions are mandatory under Rule 26(g)(3).[9]

## II.   In Addition to Mandated Sanctions Under Rule 26(g)(3), Sanctions are Also Warranted Under Rules 37(b)(2) and (c)(1) Because of the Magnitude of Defendant's Negligence, Defendant's Delay in Correcting It, and the Prejudice to Plaintiff.

Beyond the required sanctions under Rule 26(g)(3), the Court should also impose sanctions under Rules 37(b)(2) and (c)(1) and its inherent powers because of the magnitude of Defendant's discovery negligence, Defendant's delay in correcting it, and the prejudice to Plaintiff.  Defendant failed to conduct basic searches of its hard-copy files and ESI until *after* discovery closed because of negligence.  This is not a case where there were a few late-disclosed documents of questionable relevance that were inadvertently overlooked.  To the contrary, the more than 3,500 pages produced on April 20th, long after discovery closed, were the hottest in the

---

[9] Defendant had no "substantial justification" under 26(g)(3) for its failure to run basic searches across its ESI and paper records.

case, and were housed in the hotel's emails, text messages, computer, and files on sex trafficking, payroll, and staffing.

Worse, after Plaintiff exposed the issue through deposition questioning, Defendant dragged its feet in correcting it.  It took Defendant eight months to produce documents requested in July 2022 and again in January 2023 (many of which were due under Rule 26(a) when Defendant served its initial disclosures in March 2021).  Defendant's delay in providing accurate and complete discovery responses until long after the March 10th discovery deadline violated Rule 26(e)'s "timely" supplementation requirement.  *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F.Supp.3d 839 at 960 (N.D.Ill. 2021) ("[S]upplements made after the close of fact discovery are by definition 'untimely.'").

Defendant will likely contend, like it did at the June conference, that sanctions are unwarranted because Plaintiff suffered no prejudice.  That argument is flawed.  To start, sanctions are mandatory under Rule 26(g)(3) for failure to make a "reasonable inquiry" without "substantial justification."  Period.  Prejudice is not part of a Rule 26(g)(3) analysis.  Rule 37 does not require a showing of prejudice to trigger sanctions either:

> Although one purpose of Rule 37 sanctions may in some cases be to protect other parties to the litigation from prejudice resulting from a party's noncompliance with discovery obligations … ***Rule 37 sanctions serve other functions unrelated to the prejudice suffered by individual litigants***.

> ***Disciplinary sanctions under Rule 37 are intended to serve three purposes***. ***First***, they ensure that a party will not benefit from its own failure to comply. ***Second***, they are specific deterrents and seek to obtain compliance with the particular order issued. ***Third***, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 149 (2nd Cir. 2010) (emphasis added); *see also Nat'l Hockey League v. Metro. Hockey Club*, Inc., 427 U.S. 639, 643, 96 S. Ct. 2778, 2781, 49 L. Ed. 2d 747 (1976) (Rule 37 sanctions are to penalize and to deter).

Nevertheless, Plaintiff has been prejudiced by Defendant's discovery negligence. First, Plaintiff cannot rely on Defendant's discovery responses and document production. "Rules exist emphasizing the importance of truth in the discovery process and the need for a litigant to be able to rely upon the opposing party's discovery responses." *Green Leaf Nursery*, 341 F.3d at 1305. Here, Plaintiff received hot documents long after discovery closed, some of which conflicted with Defendant's discovery responses, and some of which Defendant had said did not exist. These circumstances undermine "truth in the discovery process" and Plaintiff's "need … to be able to rely" on Defendant's responses. Did Defendant put in effect a litigation hold? Preserve potentially relevant information during discovery? Properly search its ESI and paper files for responsive information?

Second, Defendant's discovery negligence caused Plaintiff to expend significant time and effort trying to get Defendant to comply with its basic discovery obligations.  Even after the revelatory February 2023 depositions, Defendant took 60 more days to produce the hottest documents in the case, after discovery closed.

Third, Defendant's discovery negligence caused Plaintiff investigative harm. Defendant produced 3,500 pages weeks after discovery closed, and after producing only 585 pages in discovery.  Plaintiff conducted discovery and fact investigation, conferred with consultants, and developed case strategies with materially incomplete, misleading, and inaccurate information from Defendant.  Consequently, Plaintiff wasted time, investigated unnecessary issues, and then redid work upon receiving new documents weeks after discovery closed.  Plaintiff devoted significant time to comparing the late documents to prior inconsistent discovery responses to determine a course of action.  Defendant's shifting staff lists and incomplete staff records, *see* FN 4, further compromises Plaintiff's ability to investigate the case.

Fourth, Defendant's discovery negligence is likely to cause Plaintiff evidentiary harm.  Because Defendant has produced inconsistent hotel staff lists and first names only for several staff, Plaintiff does not know who worked at the hotel during the relevant period, let alone who Defendant may try to call as a witness to testify about purportedly working at the hotel.  *See* FN 4.  "The days of trial by

22

ambush have passed." *Wammock v. Celotex Corp.*, 793 F.2d 1518, 1527 (11th Cir. 1986); *see also King v. City of Waycross, Georgia*, 2015 WL 5468646 at *3 (S.D. Ga. Sept. 17, 2015) ("A major purpose of discovery is eliminating surprise."). At trial, Defendant will presumably repeat what it said in discovery—that it was unaware of commercial sex activity at the hotel, that its staff never reported it, and that its staff was not complicit in crime. (*See, e.g.*, Exhibit 24 at 40:25 18 – 41:6; 64:3–65:10, 120:24–121:21). How can Plaintiff interrogate such claims without knowing Defendant's staff? Additionally, at trial Defendant is likely to use its undated sex trafficking training document purportedly available to staff as affirmative evidence that it trained its staff to be on the lookout for crime. Again, how can Plaintiff examine the claim without knowing Defendant's staff?

Sixth, and finally, Defendant's discovery negligence harmed the efficient and economical movement of cases, violated the purposes of civil discovery set forth in the Rules, and directed judicial resources to policing bedrock discovery duties.

While prejudice is not a requirement of sanctions under the mandatory sanctions regime of Rule 26(g)(3), or under the penal and deterrent sanctions regime of Rule 37, Defendant's discovery negligence prejudiced Plaintiff. Because of that prejudice, the magnitude of Defendant's error, and Defendant's delay in correcting it, the Court should also impose sanctions under Rules 37(b)(2) and (c)(1).

**III.** **Plaintiff Requests Targeted Sanctions Under Rules 26(g)(3), 37(b)(2), and 37(c)(1), and the Court's Inherent Powers because of Defendant's Discovery Negligence.**

Plaintiff requests the following sanctions for Defendant's discovery negligence under Rules 26(g)(3) and 37(c)(1).  First, Plaintiff requests reasonable attorneys' fees as set forth in Exhibit 32, which reflect the time and effort Plaintiff's counsel has expended to enforce Plaintiff's discovery rights, to obtain basic discoverable information (e.g., Defendant's responsive ESI and hard-copy business files), and to raise Defendant's discovery negligence with the Court to seek relief.

Second, Defendant should not be allowed to introduce evidence or argument at trial that its staff never reported concerns about commercial sex at the hotel, that it trained its staff to be on the lookout for criminal activity and commercial sex, and that none of its staff had criminal records or were complicit in crime at the hotel, because it has produced inconsistent, incomplete information about who worked at the hotel.  Plaintiff cannot confront Defendant's claims about staff reports of crime, staff trainings, and vetting of staff because Plaintiff does not know who Defendant's employees were and cannot find them.  *See, e.g., Nance v. Ricoh Electronics, Inc.*, 2008 WL 926662 at *3 (N.D. Ga. April 4, 2008) aff'd, 38 Fed. Appx. 99 [1]1th Cir. 2010) (imposing Rule 37(c)(1) sanction for Rule 26(a) violations).  Alternatively, Plaintiff requests a jury instruction on how Defendant's conflicting and partial staff

records compromised Plaintiff's ability to examine Defendant's claims about staff crime reports, staff trainings, and vetting of staff, among other topics.

Third, Defendant should not be allowed to introduce evidence or argument that it had a sex trafficking training document available to staff during the relevant period when it first said that such a document did not exist and then produced an undated document in late April and claimed it had existed for years in a sex trafficking file. *See, e.g., Clarke v. Schofield*, 2009 WL 10674468 (M.D. Ga. March 30, 2009) (striking affidavit under Rule 37(c)(1) for Rule 26(a) violation).

Fourth, Defendant should not be allowed to use affirmatively evidence and witnesses it produced or identified late in violation of Rules 26 and 37. Fed.R.Civ.P. 37(c)(1) (prohibiting use of any witness or information "at a trial, at a hearing, or on a motion" not disclosed as required by Rule 26(a) absent inapplicable circumstances); Doc. 6 at 17 ("The Court does not allow evidence at trial which was requested and not revealed during the discovery period.").   Plaintiff should, however, be allowed to use such evidence or witnesses if she chooses and it is admissible.

## CONCLUSION

Plaintiff respectfully requests that the Court impose the requested sanctions for the reasons set forth herein.

This 12th day of December, 2023.

/s/ David H. Bouchard
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

/s/ Patrick J. McDonough
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing **Plaintiff's Motion for Sanctions and Memorandum in Support** has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certify that Plaintiff, through her attorneys, has served a true and correct copy of the foregoing ***Plaintiff's Motion for Sanctions and Memorandum in Support*** into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 12th day of December, 2023.

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*/s/ Patrick J. McDonough*
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000

Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff*