# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

G.W.,                                    *
                                         *
      Plaintiffs,                    *        Civil Action No.
                                         *        1:20-cv-05232-JPB
v.                                       *
                                         *
NORTHBROOK INDUSTRIES,                   *
INC., d/b/a UNITED INN AND               *
SUITES,                                  *
                                         *
      Defendants.                    *

## DEFENDANT NORTHBROOK INDUSTRIES, INC. d/b/a/ UNITED INN AND SUITES' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

COMES NOW Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites ("United") and, pursuant to FED. R. CIV. PROC. R. 56, respectfully submits this Motion for Summary Judgment showing this Honorable Court as follows:

## I.       INTRODUCTION

This action involves claims by Plaintiff G.W. ("Plaintiff" or "G.W.") against United for damages arising out of alleged violation of: (1)  The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a) [Count 1];  and (2) negligence [Count 2]. *See* Pl.'s Compl. at ¶¶ 2, 71-81, 82-109. Plaintiff's Complaint is premised upon alleged TVPRA violations at the United Inn and Suites located at 4649 Memorial Drive, Decatur, Georgia (the "Property").

Plaintiff's TVPRA beneficiary liability claim fails as a matter of law because Plaintiff has failed to present admissible evidence demonstrating that United participated in venture that it knew or should have known violated the TVPRA as to Plaintiff. Because Plaintiff cannot show that United had actual or constructive knowledge of her trafficking at the Property, she similarly cannot demonstrate that it had superior knowledge of the risk that she would be trafficked at the Property. Therefore, United is also entitled to summary judgment on Plaintiff's negligence claim.  For these reasons, set forth more fully below, United respectfully requests that the Court issue an ORDER granting the instant Motion and dismissing Plaintiff's Complaint with prejudice.

## II.    RELEVANT FACTS

### A.    Plaintiff's Alleged Trafficking at the Property and Other Hotels

Plaintiff G.W. alleges that she had been trafficked by Zaccheus Obie ("Mr. Obie") between June 22, 2017 and July 23, 2017. G.W. Dep. 34:23-35:3. Plaintiff G.W. and her friend A.G., a plaintiff in a similar action against United, were put in contact with Mr. Obie through Quintavious Obie, Mr. Obie's cousin. G.W. Dep. 28:19-29:22. G.W. was 17 years old during the time of alleged trafficking. G.W. Dep. 14:12-13. G.W. was under the impression Mr. Obie could get them into clubs to dance for money; G.W. alleges she did not know she would be performing sexual acts. G.W. Dep. 31:23-33:15.

After conversing with Mr. Obie via text message, G.W. and A.G. agreed to be picked up in commerce and taken into Atlanta to work for Mr. Obie. G.W. Dep 33:20-34:11. On the night of June 23, 2017, G.W. and A.G. were taken to Red Roof Inn off Fulton Industrial Boulevard in Atlanta, Georgia; that evening they both performed commercial sex acts at the direction of Mr. Obie although he was not present. G.W. Dep. 38:1-25. At the time, G.W. felt that she could physically leave the arrangement with Mr. Obie whenever she wanted to. G.W. Dep. 71:12-19; 72:17-25.

Mr. Obie later directed G.W. to solicit buyers of commercial sex acts in the area surrounding the Property and perform commercial sex acts in guest rooms he rented for her at the Property. G.W. Dep. 78:3-81:1. On June 23, 2017, Mr. Obie and his associate Dontavious Carr, paid for and checked into Room 112 at the Property while G.W. and A.G. waited outside in Mr. Obie's car. G.W. Dep. 75:1-77:3; 78:20-79:15. G.W. and A.G. then used that room to perform commercial sex acts. G.W. Dep. 77:1-21. At no point during her alleged trafficking did G.W. ever check herself into any hotel room. G.W. Dep. 41:1-3. G.W. found men to engage in commercial sex acts with by walking the streets around a hotel and from online websites. G.W. Dep. 56:6-57:6. Mr. Obie would collect the money G.W. and A.G. earned after performance of commercial sex acts. G.W. Dep. 73:1-17.

During her alleged trafficking at the Property, G.W. only walked into the

3

lobby of the United Inn and Suites to buy snacks or condoms; she did not engage in any conversation with staff while making these purchases. G.W. Dep. 125:21-126:11. She also never informed any of United's staff that she was being forced to perform commercial sex acts. G.W. Dep. 121:9-14; 125:21-126:5; 172:7-173:6.

On June 26, 2017, G.W. and A.G. left the Property and went back home to family in Commerce, Georgia. G.W. Dep. 97:6-98:5. On July 2, 2017, G.W. chose to leave home again and go back to the Property to continue working for Mr. Obie; A.G. chose not to go back and did not work with Mr. Obie again. G.W. Dep. 113:24-115:5.

G.W. stayed a second time at the United Inn and Suites on July 2, 2017. G.W. Dep. 46:15-20;115:1-5. On her second visit to the Property, G.W. shared a room on the second floor with two other women working for Mr. Obie. G.W. Dep 118:17-119:1. G.W. stayed  in this room until July 3, 2017 before being moved to a different hotel. G.W. Dep. 119:2-10; 124:1-13. Subsequently, G.W. stayed at and engaged in commercial sex acts at the following establishments: Western Inn in Forest Park, the Home Lodge Hotel of Forest Park, the EconoLodge in Forest Park off Old Dixie Highway, the Travel Lodge in College Park, an unidentified hotel off of Old National Highway, an unidentified hotel in East Point, and the Econolodge in Atlanta off Virginia Avenue, an unidentified hotel, the American Inn in Jonesboro off of Old Dixie Highway G.W. Depo. 128:2-139:23. On July 17, 2017, G.W. went back home

to Commerce, Georgia. G.W. Depo. 140:18-20.

On July 20, 2017, G.W. returned to the United Inn and Suites where Mr. Obie's associate, Kikia Anderson, checked into room 222 for G.W. and Shay. G.W. Depo. 144:1-25. On July 21, 2017, G.W. left the United Inn and visited an unknown hotel off Old Dixie Highway in Jonesboro for the night of the July 21st – 22nd, 2017 before visiting the American Inn on Tara Boulevard in Jonesboro for the night of July 22nd – 23rd, 2017 to engage in commercial sex acts. G.W. Depo. 149:10-150:8; 153:20. On July 23rd, GW alleges she was raped and robbed by a potential client while at the American Inn in Jonesboro. G.W. did not call the police. G.W. Depo. 154:6-155:8. On July 23, 2017, Mr. Obie was arrested and G.W. was taken into the police department. G.W. Depo. 154:6-155:23.

### B.    The Property and its Operation During the Relevant Timeframe

The Property is an exterior access hotel; guests and visitors are able to come and go from guest rooms as they please without walking into the lobby of the hotel. G.W. Depo 171:3-25; Shareef Depo. 88:25-89:8; 94:20-95:18. Ashar Islam was the general manager of the Property from 2017-2019 and reported directly to Tahir Shareef. Islam Depo. 13:21-14:14. Mr. Tahir Shareef operates and owns an 81 percent stake in the Property. Shareef Depo. 22:1- 24:19. The Property's lobby was open from 6 a.m. to 9 p.m.; from 9 p.m. to 6 a.m. only the window was open for check-in or purchases. Shareef Depo. 33:5-18. Mr. Shareef had a security guard

patrol the property from 10 p.m. to 2 a.m. each night on the property in 2017 – 2019. Shareef Depo. 92:1-13. Mr. Shareef also spoke with staff about looking out for criminal activities including commercial sex activities. Shareef Depo. 188:2-14. If Mr. Shareef thought something suspicious was going on with a person on property, Mr. Shareef would call the police to remove the person and encourage other the employees to do the same. Shareef Depo. 192:14-193:2.

Mr. Shareef resided at the Property most of the year. Shareef Depo. 26:21-18:25. However, Mr. Shareef never noticed any prostitution the United Inn and Suites at the time A.G. and G.W. allegedly were trafficked. Shareef Depo. 64:1-25. Mr. Shareef was not aware of potential human trafficking of minors until August 2017, after the arrest of Mr. Obie. Shareef Depo. 297:4-300:8. Similarly, Mr. Islam could not recognize or recall ever seeing G.W. or A.G. at the Property. Islam Depo. 105:2-5.

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) allows for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of demonstrating the absence of

a genuine dispute as to any material fact. *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999); *see*, *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (per curiam) ("the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case").

Once the moving party has met this burden, the burden shifts to the nonmovant who must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) ("[W]here the record taken as a whole cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial"). "Unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and a "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004)). And while trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

**B.      Plaintiff has failed to meet her burden of establishing liability against the United under the TVPRA.**

Plaintiff argues that United is liable under 18 U.S.C. § 1595(a) because United knowingly benefitted from participation in a venture that they knew or should have known violated § 1591(a) of the TVPRA. Compl. ¶ 2. Section 1591(a) criminalizes the sex trafficking of, or knowingly assisting, supporting, or facilitating the sex trafficking of, (1) children or (2) adults by force, fraud, or coercion. 18 U.S.C. § 1591(a). Plaintiff has failed to produce any evidence in support of essential elements of her TVPRA claim. In order to establish beneficiary liability under the TVPRA, G.W. must produce evidence that United:

> (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to [G.W.], and (4) [United] had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to [G.W.].

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021).  Moreover, the Eleventh Circuit explained that a plaintiff suing under the TVPRA must establish that the defendant had actual or constructive knowledge of a TVPRA violation "as to the plaintff" specifically. *Id.*

Plaintiff cannot recover against United under a theory of beneficiary liability pursuant to the TVPRA for two reasons: (1) United did not know and could not have

reasonably known that Plaintiff herself was trafficked in violation of the TVPRA; and (2) there is no admissible evidence that United **participated** in a venture which it knew or should have known engaged in a violation of the TVPRA. Thus, United is entitled to summary judgment as to Plaintiff's TVPRA claim.

> i.   ***Plaintiff has failed to establish beneficiary liability under the TVPRA because she has not produced evidence that United knew or should have known of her sex trafficking.***

In order to be held liable under the TVPRA, United must have had actual or constructive knowledge of the Plaintiff's trafficking at the Property. *See* 18 U.S.C. § 1595(a). Plaintiff alleges that United's employees failed to recognize her "visible signs" of trafficking including age, appearance, lack of eye contact, lack of possession/control of money, loitering,  solicitation, condom purchases, and male visitors to Plaintiff's room. Compl.  ¶¶ 21, 24. As an initial matter, Plaintiff has not produced any evidence that United had actual knowledge of her trafficking. Therefore, her TVPRA claim can only survive if she could produce admissible evidence that United had constructive knowledge of her trafficking.  However, Plaintiff has similarly failed to demonstrate that United had constructive knowledge of her trafficking.

"Constructive knowledge . . . is that knowledge which 'one using reasonable care or diligence should have.'" *Red Roof Inns*, 21 F.4th at 725 (quoting *Constructive Knowledge*, Black's Law Dictionary (11th ed. 2019)). Plaintiff alleges United should

have known that she was an underage victim of sex trafficking in violation of TVPRA. However, there's no evidence that the Plaintiff ever told any of United's employees that she was 17-years-old at the time of the alleged trafficking. Furthermore, Plaintiff did not check-in to the hotel so United would not have had an opportunity to review her driver's license or any other identifying documents that would have disclosed her age. G.W. Depo. 40:25-41:3. Moreover, it is not illegal or suspicious for a 17-year-old to be on the hotel property. Plaintiff's presence at the Property at 17-years-old is not sufficient to have given United constructive knowledge that she was being trafficked for sex.

Similarly, Plaintiff alleges that her clothing was an indication of TVPRA violations and, therefore, United had constructive knowledge of her trafficking. First, Plaintiff has not produced any evidence that clothing she wore at the Property was indicative of her willingness to perform commercial sex acts, that it was consistent with the typical apparel of sex trafficking victims, or that there even is a typical apparel of sex trafficking victims. On this basis alone, Plaintiff has failed to demonstrate that her clothing should have alerted United to her trafficking. Beyond that, allowing Plaintiff to establish liability against United based on her clothing would create an untenable "catch 22" situation for any business open to the public. Plaintiff would have United, and any other similarly situated business, profile its guests based solely on their clothing and report them to law enforcement because

they subjectively deemed their clothing to be too revealing. This would undoubtedly result in lawsuits based on discrimination and/or wrongful prosecution. According to Plaintiff, however, failing to take such drastic and uninformed actions should subject a business to liability under the TVPRA. In reality, an individual's clothing is a personal decision influenced by one's own standards, culture, and preferences. One person's fashion faux pas may very well be another person's fashion forward finest. To suggest that any one person could definitively determine that Plaintiff's clothing was indicative of sex trafficking is beyond reason.  It is also worth noting that Plaintiff's trafficking occurred between June and July. Surely, it would not be uncommon to see someone in a range of clothing coverage during the peak of a Georgia summer. More importantly, Plaintiff has not produced any evidence that discriminating against guests based on their clothing choices would assist in accurately identifying sex trafficking victims or that any such policy would be reasonable.

Plaintiff further alleges that her "lack of eye contact" with staff should have alerted United of potential human trafficking. Compl. ¶24. But like appearances, this ambiguous and subjective characterization cannot demonstrate that United knew or should have known of a violation of TVPRA.  All individuals have varying natural dispositions that may cause them to be comfortable with more or less eye contact. In turn each individual staff member who may have interacted with plaintiff has their

own natural dispositions for more or less eye contact. So what constitutes a lack of eye contact would very literally be in the eye of the beholder and the beholder's own predispositions for eye contact with plaintiff. It is impossible to make a determination as to why an individual might be less engaging during an encounter or avoid eye contact. Furthermore, there is no evidence that any employees actually witnessed Plaintiff avoiding eye contact, much less appreciated her social disposition as evidence of TVPRA violations. Notwithstanding, Plaintiff has not produced any evidence that United could have developed a policy designed to evaluate each guests' use of eye contact, that any such policy would have helped them determine whether the guest was a trafficking victim, and that such policy would have been reasonable and prevented her alleged sex trafficking at the Property.

In her complaint, Plaintiff also cites to her lack of possession or control of money as an indicator of sex trafficking. Compl. ¶¶ 21, 24. Yet Plaintiff testified that she did use cash to purchase items from the hotel lobby window, thus indicating a possession and control of money. Beyond this, Plaintiff has produced no evidence demonstrating that United perceived Plaintiff's lack of control or possession of money. More importantly, Plaintiff has not produced any evidence that a guest's lack of money is indicative of sex trafficking, that United could have instituted a policy

that would have revealed Plaintiff's lack of money, or that adopting such a policy would have been reasonable and prevented her alleged sex trafficking.

Plaintiff would also have this Court believe that her purchasing condoms or having condoms in guest rooms would indicate criminal activity in violation of the TVPRA. (G.W. Dep. 98:6-99:7). However, the purchase of condoms is not a criminal offense and—while it may be a reliable indicator of sexual intercourse—is not a reliable indicator of sex trafficking. Furthermore, Plaintiff has not produced any evidence that United's staff meticulously examined the contents of her rooms' waste baskets to determine whether the number of condoms met this illusory threshold of contraceptives that should have put them on notice of Plaintiff's trafficking. Additionally, Plaintiff has produced no evidence that a policy requiring staff to examine the contents of guest's trash would reliably assist in the identification of sex trafficking or that any such policy would be reasonable and prevented her alleged sex trafficking.

Finally, Plaintiff argues the number of male visitors present during her stay at the property should indicate a violation of the TVPRA.  The Property, an exterior access motel, and its surrounding parking lot is accessible from Memorial drive. Visitors do not have to enter the lobby to access the rooms or the adjoining parking lot, making it impossible for United to monitor the number of a single guest's visitors throughout their stay without surveilling them individually. Moreover, Plaintiff has

not produced any evidence that any additional security measures or practices would have allowed United to continuously monitor Plaintiff's visitors.  Nonetheless, any such measures would go far beyond any definition of the term "reasonable diligence". In fact, this level of person and room specific surveillance would constitute an illegal infringement of the guests' privacy rights. Plaintiff's argument would not only have each hotel engage in espionage to determine the number of guests and visitors for each room on property at a given time, but worse, Plaintiff endorses class-specific surveillance based off the perceived gender of guests and visitors alike. This is surely not legally required.

Even if United had engaged in this gender biased surveillance, United would then have to assume that each of these visitors were on the Property for the purpose of purchasing commercial sex from the unwilling Plaintiff and act on this assumption. There are endless legitimate reasons why a guest may invite individuals to their room. There is no evidence to demonstrate that these alleged visitors of the Plaintiff made any effort to make their intentions known to Property staff or to anyone other than Plaintiff. The presence of Plaintiff's guests alone is not illegal and would be unactionable had United attempted to report this presence to law enforcement.

Plaintiff argues that United had constructive knowledge of her sex trafficking because of "loitering on property. Again, Plaintiff has not presented evidence that

United had knowledge that she specifically had been loitering or that her alleged visitors loitered in the vicinity in United's view. Further, there is no evidence that loitering outside of the motel room indicates that an individual is a victim of sex trafficking. Common areas exist to accommodate guests. Using these accommodations does not indicate that a guest is involved in a sex trafficking enterprise.

Plaintiff claims to have solicited these male visitors, but Plaintiff has not demonstrated that any employee or agent of United witnessed Plaintiff soliciting men to engage in commercial sex acts. All evidence presented by Plaintiff shows that the commercial sex acts that occurred at the Property occurred inside the rented rooms, behind closed doors and beyond the scope of any reasonable due diligence by United.

If the Court accepts Plaintiff's argument, every hotel property in the United States will be required to profile all guests and visitors to determine whether each had an intent to purchase or engage in commercial sex acts. Such behavior would likely result in lawsuits from guests and visitors alike for action taken on improper discriminative assumptions and offensive allegations. Further, it could result in a litany of false prosecution claims in the event that hotel staff call law enforcement to remove suspected purchasers of commercial sex from the property. More importantly, Plaintiff presents no evidence that requiring hotel staff to make personal

judgments on visitors and guests on the property would decrease the sale of commercial sex acts at a given property.

As previously stated, there is no reasonable way for United's employees—or employees of any other hotel—to determine whether an individual intends to purchase commercial sex acts. Inviting visitors to a hotel is not illegal or suspicious. Therefore, to establish that the United had constructive knowledge of TVPRA violations based on the number of visitors Plaintiff had while staying at the Property, United would have had to know that (1) the Plaintiff's visitors were on the Property and (2) that the visitors were there to purchase commercial sex acts from Plaintiff. There is no evidence to demonstrate that the United had any such knowledge.

> ### ii.     Plaintiff has failed to produce any evidence that United knowingly participated in a venture that violated the TVPRA as to Plaintiff.

Not only does Plaintiff fail to provide evidence that United had actual or constructive knowledge of her trafficking, but she also fails to establish that United knowingly participated in a venture that violated the TVPRA as to Plaintiff. In fact, Plaintiff has failed to produce any evidence that United "**participated**" in a sex trafficking venture.

The TVPRA does not impose any affirmative obligation on private businesses to police or prevent human trafficking, and an alleged failure to prevent human trafficking is not tantamount to affirmative "participation" in it. *See*, *e.g.*, *Red Roof*

*Inns, Inc.*, 21 F.4th at 728; *see also*, *K.B. v. Inter-Continental Hotels Corp.*, No. 19-cv-1213-AJ, 2020 U.S. Dist. LEXIS 250721, at *12-13 (D.N.H. Sep. 28, 2020) (allegation that franchisor "failed to take reasonable measures to stop trafficking from occurring in their hotels" was insufficient to establish "participation" element of TVPRA claims); *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 427-28 (N.D. Tex. 2021) (allegations that hotel franchisors "failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their properties" were "not sufficient to plead that [franchisors] directly participated in a specific venture that trafficked Plaintiff").

The Eleventh Circuit concluded that the phrase "participation in a venture" in the TVPRA context requires that the defendant "took part in a common undertaking or enterprise involving risk and potential profit." *Red Roof Inns, Inc.*, 21 F.4th at 725.  It further recognized that in order to plausibly allege a beneficiary liability claim against a defendant, a plaintiff must show that "the venture in which the [defendant] participated committed one of these crimes against them." *Id.*   It determined that a plaintiff must demonstrate that the defendant not only ignored or failed to prevent sex trafficking on a premises, but actually "took part in the common undertaking of sex trafficking." *Id.* at 727. In completing this analysis, the Eleventh Circuit ultimately distilled this inquiry into the following: "we must determine

whether the [plaintiff] plausibly alleged that the [defendant] took part in the common undertaking of sex trafficking with hotel employees, management, owners, and sex traffickers." *Id.* at 726.[1]

As a result, Courts in this District have repeatedly held that Plaintiff must "connect the dots between plaintiff's experience as a victim of sex trafficking and the specific defendant in the lawsuit," either by establishing "a 'direct association' between the defendant hotel and the plaintiff's trafficker, or by showing a 'continuous business relationship between a defendant hotel and a sex trafficker' who trafficked the Plaintiff." *K.H. v. Riti, Inc.*, No. 1:22-CV-3404-MHC, 2023 U.S. Dist. LEXIS 93374, at *9 (N.D. Ga. Apr. 17, 2023); *J.G. v. Northbrook Indus.*, 619 F. Supp. 3d 1228, 1235 (N.D. Ga. 2022).

Plaintiff has failed to produce any evidence that United participated in her trafficking. As an initial matter, Plaintiff has not produced any evidence that United took any affirmative steps to initiate or perpetuate her trafficking at the Property. At best, Plaintiff can only establish that United rented rooms to her traffickers with no

---

[1] District courts have repeatedly held that lawful commercial transactions alone do not give rise to a reasonable inference that the parties to the transaction shared a common criminal purpose. *See, e.g.*, *Weir v. Cenlar FSB*, No. 16-CV-8650 (CS), 2018 U.S. Dist. LEXIS 118844, at *16-17 (S.D.N.Y. July 17, 2018) ("[B]eing an 'instrumentality' does not thereby mean one shares a common purpose. Defendants allegedly used the mail in furtherance of the scheme, but that would not make the Postal Service [] a member of the enterprise."); *Cirino v. Bank of Am., N.A.*, No. CV 13-8829 PSG (MRWx), 2015 U.S. Dist. LEXIS 79179, at *10-11 (C.D. Cal. Feb. 10, 2015) (finding allegations that vendors were used as "instrumentalities" to carry out an alleged RICO enterprise were insufficient to show the vendors themselves shared in a common purpose with the alleged enterprise).

knowledge of their intention to cause Plaintiff to engage in commercial sex. Notably, the only allegation of her Complaint that would be sufficient to plausibly allege that United participated in a sex trafficking venture is the claim that United facilitated her trafficking by acting as lookouts for her traffickers, informing them of police activity at the hotel, and warning them about guest complaints and high visitor traffic drawing unwanted attention. *See* Pl.'s Compl. at ¶ 37. However, Plaintiff failed to produce any admissible evidence substantiating these allegations. Plaintiff, at best, is able to show that United, a hotel, rented rooms to guests including the alleged traffickers.  The fact that Plaintiff's traffickers took advantage of United's legitimate business by trafficking Plaintiff at the Property without United's knowledge does not demonstrate that United participated in a sex trafficking venture as defined by the Eleventh Circuit. Even if Plaintiff had been able to produce evidence that United saw and appreciated signs of her trafficking—which she has not—this would still not establish that United participated in her trafficking. As the Eleventh Circuit has recognized, "observing something is not the same as participating in it." *Red Roof Inns, Inc.*, 21 F.4th at 727. As such, Plaintiff has failed to produce any admissible evidence of the essential "participation in a venture" element of her beneficiary liability claim and, therefore, United is entitled to judgment in its favor as a matter of law.

**C.      Plaintiff's Negligence Claim Fails as a Matter of Law**

To recover under her negligence claims, the Plaintiff must prove that United: (1) owed them a duty to guard them against injury from the abuse of her alleged traffickers because it was reasonably foreseeable; and (2) failed to take ordinary precautions to protect Plaintiff from the risk posed by the purported abuse based on United's superior knowledge of the specific danger.

### i.      Plaintiff's negligence claim fails because she was not an invitee.

Under Georgia law, "[i]t is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." *Ware v. Jackson*, 357 Ga. App. 470, 476 (2020). In Georgia, the duty of an owner/occupier or proprietor to invitees on its premises is established by O.C.G.A. § 51-3-1, which provides:

> Duty of owner or occupier of land to invitee. Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

O.C.G.A. § 51-3-1. An owner or occupier does not owe this same duty to licensees and trespassers. Compare O.C.G.A. § 51-3-1 with O.C.G.A. § 51-3-2(b) (a landowner is "liable to a licensee only for a willful or wanton injury"); O.C.G.A. §

51-3-3 ("A lawful possessor of land owes no duty of care to a trespasser except to refrain from causing a willful or wanton injury").

In order to be an invitee entitled to a duty of care, a person must be on the subject premises "for any lawful purpose." O.C.G.A. § 51-3-1. Moreover, "[t]he 'accepted test' for invitee status in Georgia is whether the purported invitee's presence is of 'mutual benefit' to the purported invitee and the landowner." *Tobar v. United States*, 696 F. Supp. 2d 1373, 1378 (S.D. Ga. 2009).

Here, Plaintiff was not on the Property "for any lawful purpose." Plaintiff was on the property to engage in commercial sex acts. Prostitution and sex trafficking are crimes, *see* O.C.G.A. §§ 16-6-9 and 16-5-46, and thus Plaintiff cannot say that she was on the Property "for any lawful purpose" when the sole reason asserted for Plaintiff being on the Property is for commercial sex in violation of Georgia law. That Plaintiff was an alleged victim, and not a perpetrator, of the sex trafficking does not change the calculus as to whether United owed any duty under the statute.

Because Plaintiff was not on the Property for a "lawful purpose," Plaintiff is not entitled the duty of care owed to invitees pursuant to O.C.G.A. § 51-3-1. In fact, Plaintiff was a trespasser because she came to the Property specifically to commit crime. As such, "no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, man-traps, and things of that character." *Moore-Sapp Investors v. Richards*, 240 Ga. App. 798,

799 (1999). Consequently, Plaintiff's negligence claim fails as a matter of law, and United is entitled to summary judgment on Plaintiff's negligence claims.

> ## ii. *Plaintiff's knowledge of the risk of sex trafficking at the Property was superior to that of United.*

Even if Plaintiff could establish that she was an invitee at the Property, she cannot establish that United had superior knowledge of the risk that her traffickers would cause her to perform commercial sex acts at the Property. A proprietor is not the insurer of the safety of its invitees; rather, they are merely bound to exercise ordinary care to protect its invitees from unreasonable risks of which it has ***superior knowledge***. *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1997)(emphasis added); *see*, *Travis v. QuikTrip Corp.*, 339 Ga. App. 551, 553 (2016) (the fundamental basis for an owner or occupier's liability is that party's superior knowledge of the hazard encountered by the plaintiff).

Generally, an intervening criminal act by a third party insulates a proprietor from liability unless such criminal act was reasonably foreseeable. *Lau's Corp. v. Haskins*, 261 Ga. 491, 492 (1991). "But even if an intervening criminal act may have been reasonably foreseeable, the true ground of liability is the superior knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm." *Ratliff v. McDonald*, 326 Ga. App. 306, 313 (2014)(emphasis original); *see Howell v. Three Rivers Security*, 216 Ga. App. 890, 892 (1995)("The rule remains that the true ground of liability is the superior

knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm"). Where a plaintiff has equal or superior knowledge of a hazard or dangerous condition on an owner or occupier's premises, a plaintiff is not entitled to recovery if she fails to exercise reasonable care to avoid the hazard or dangerous condition. *Rice v. Six Flags over Ga.*, 257 Ga. App. 864, 868 (2002).

In *Rice v. Six Flags Over Georgia*, the Georgia Court of Appeals held that a sexual assault victim had superior knowledge of the hazard and dangerous condition posed by another Six Flags patron. *Rice*, 257 Ga. App. at 868. While Rice, a minor, was in line to ride a roller coaster, an adult man in line behind her pulled her by the arm and told her that they were going to ride together. *Id.* at 865. Rice declined an offer from another park guest in front of her to let her out of the line, despite admitting that she was fearful at the time. *Id.* While on the roller coaster, Rice was sexually assaulted and subsequently sued Six Flags under a theory of premises liability. *Id.* In affirming the trial court's summary judgment ruling, the Georgia Court of Appeals held that "[her] knowledge of the potential for violence on board the roller coaster ***was equal to or superior to that of the appellees in that [plaintiff], though fearful, chose not to alert Park authorities of the concern she felt.***" *Id.* at 868 (emphasis added).

Here, Plaintiff clearly had superior knowledge of the risk that her traffickers would cause her to perform commercial sex acts at the Property. Before she ever stepped foot on the Property, Plaintiff knew that her traffickers were taking her there to perform commercial sex acts. Her traffickers had already directed her to perform commercial sex acts at a different hotel immediately before her first visit to the Property. By the time she arrived at the Property for the first time, Plaintiff knew of her traffickers' propensities and intent. There is no evidence that United had any knowledge of her trafficker's intentions. Furthermore, Plaintiff never informed any of United's staff that she was being trafficked for sex at the Property. Therefore, Plaintiff had superior knowledge of the risk that she would be trafficked at the Property on each and every occasion that it occurred. As a result, even if Plaintiff could establish that United owed her a duty of reasonable care to protect her from foreseeable hazards at the Property—which she cannot—Plaintiff had superior knowledge of the threat of harm posed by her traffickers at the Property. Consequently, Plaintiff has failed to produce evidence of an essential element of her negligence claim and cannot impose liability against United pursuant to O.C.G.A. § 51-3-1.

## IV.   **CONCLUSION**

Based on the foregoing evidence, authority, and arguments, United respectfully requests that this Court issue an ORDER granting its Motion for Summary Judgment and dismissing Plaintiff's Complaint with prejudice.

*Signatures follow on next page.*

Respectfully submitted this the 21st day of December, 2023.

LEWIS BRISBOIS BISGAARD
& SMITH LLP
Bank of America Plaza
600 Peachtree Street, NE, Suite 4700
Atlanta, Georgia 30308
(404) 348-8585
(404) 467-8845 Facsimile
Adi.Allushi@lewisbrisbois.com
Cameron.Mobley@lewisbrisbois.com
Cecilia.Walker@lewisbrisbois.com

/s/ Adi Allushi_____
ADI ALLUSHI
Georgia Bar No. 852810
CAMERON A. MOBLEY
Georgia Bar No. 613048
CECILIA WALKER
Georgia Bar No. 916346

*Attorneys for Defendant*
*Northbrook Industries, Inc. d/b/a*
*United Inn and Suites*

## <u>RULE 7.1D CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

Dated: December 21, 2023

*/s/ Adi Alushi*
ADI ALLUSHI

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2023, I electronically filed the foregoing

***Defendant's Motion for Summary Judgment*** with the Clerk of Court using the

CM/ECF filing system which will automatically send e-mail notification of such

filing to the following counsel of record:

David H. Bouchard
Finch McCranie, LLP
229 Peachtree Street, NE, Suite 2500
Atlanta, GA 30303
david@finchmccranie.com

*Attorney for Plaintiff*

/s/ Adi Allushi
ADI ALLUSHI
Georgia Bar No. 852810

***Attorneys for NORTHBROOK
INDUSTRIES, INC. d/b/a United
Inn and Suites***

133553186.1                                                          27