**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| G.W, | * | |
| | * | Civil Action No. |
| Plaintiffs, | * | 1:20-cv-05232-JPB |
| v. | * | |
| | * | |
| NORTHBROOK INDUSTRIES, | * | |
| INC., d/b/a UNITED INN AND | * | |
| SUITES, | * | |
| | * | |
| Defendants. | * | |

## NORTHBROOK INDUSTRIES, INC. d/b/a UNITED INN AND SUITES' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

COMES NOW Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites ("United") and respectfully submits this Response in Opposition to Plaintiff's Motion for Sanctions (Plaintiff's "Motion"), showing this Honorable Court as follows:

## INTRODUCTION

United readily acknowledges that its initial discovery responses and production were deficient. However, Plaintiff's Motion is a textbook example of an overreach. While United's delayed satisfaction of its discovery obligations does constitute a discovery violation, the drastic sanctions requested in Plaintiff's Motion are disproportionate and solely intended to give Plaintiff an unfair advantage at trial.

1

United ultimately provided all of the discovery materials, without a motion to compel or Court's intervention, and Plaintiff received a unilateral discovery extension in order to remedy any prejudice caused by the delayed production. To the extent that the Court is inclined to impose sanctions for deterrent or punitive effect, the appropriate sanction would be ordering United to pay reasonable attorney's fees incurred as a result of the delayed disclosure. Any such award, however, would be moot as to United because Plaintiff has fully released United in this case. *See* Ex. "A". Plaintiff's extremely harsh requested sanctions seeking to prohibit United from introducing relevant and admissible evidence in its defense would not serve the interests of justice.

## **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

This is a beneficiary liability action filed pursuant to 18 U.S.C. 1595(a) (the "TVPRA") in which Plaintiff alleges that United is liable to her for damages she sustained as a result of being trafficked for sex at the United Inn and Suites located at 4649 Memorial Drive, Decatur, Georgia (the "Property"). Specifically, Plaintiff claims to have been trafficked at the property in June and July of 2017. *See* Doc. 1 at ¶ 17. This is one of three TVPRA beneficiary liability claims involving trafficking at the Property. Of the three, two actions—G.W. and A.G.—are pending before this Court, while a third—J.G.—is also pending in the United States District Court for the Northern District of Georgia before Judge Sarah E. Geraghty.

All three cases were filed on December 28, 2020. Initially, United was represented by the same law firm, Hall Booth Smith, P.C. ("Hall Booth") in all three cases. Hall Booth filed motions to dismiss in all three cases. While the motions to dismiss were pending, a second firm, Smith, Gambrell & Russell, LLP ("Smith Gambrell") substituted in as counsel in the J.G. matter due to there having been different insurers providing coverage for the different time periods encompassing Plaintiff J.G.'s claims. The undersigned counsel did not enter an appearance in this case until October 27, 2023. Doc. 101, 102, 103.

On May 24, 2022, this Court denied United's motions to dismiss in the G.W. and A.G. matters. Shortly thereafter, United filed answers to those complaints and discovery commenced. United served Plaintiff with initial disclosures, responses to Plaintiff's discovery requests, and document production. Notably, United's initial disclosures identified 18 current and former employees that worked at the Property in the timeframe encompassing Plaintiff's alleged trafficking. *See* Ex. "B". In addition to the discovery documents produced by Hall Booth on behalf of United in the G.W. and A.G. cases, Plaintiff also received additional documents from Smith Gambrell after it conducted additional investigations into United's documents in

relationship to the J.G. case. Declaration of Dana M. Richens, at ¶ 8 (attached hereto as exhibit "C").[1]

On February 22, 2023, Plaintiff deposed United's owner and 30(b)(6) representative, Tahir Shareef ("Shareef"), and its manager, Ashar Islam ("Islam"), for use in all three cases.[2]  During these depositions, it became apparent that United had not searched for potentially responsive documents in its electronic filing systems. *See generally*, Shareef Dep.

Following this revelation, United conducted an exhaustive search of all available electronic platforms which were primarily comprised of United's Gmail account and two cellphones belonging to United employees. Ex. "C", at ¶ 10.  As a part of this search, United's counsel used over 150 search terms proposed by Plaintiff's counsel to ensure that all potentially responsive documents were identified before reviewing the documents individually to confirm responsiveness and identify privileged documents. *Id.* and Ex. 2 thereto.  United's counsel remained in contact with Plaintiff's counsel throughout the duration of this process. *Id.*

On March 30, 2023, counsel for the Parties conferred by phone on the status of the production and United's counsel committed to providing supplemental

---

[1] United notes here that although much of the testimony included in Attorney Richens' declaration is related to a coordinated effort to complete discovery in all three of the pending matters, some of the matters contained in Attorney Richens' declaration relate to the J.G. matter alone.

[2] The deposition testimony of both Shareef and Islam are attached hereto as exhibits "F" and "G".

production by April 21, 2023. Ex. "C", at ¶ 11.  Because fact discovery was set to close on March 31, 2023, Plaintiff's counsel proposed seeking leave of court for an additional two months of unilateral discovery.  Further, Plaintiff's counsel stated that "if [United] does not meet the April 21st deadline, then I will proceed with seeking court intervention." *Id.* and Ex. 3 thereto.  United's counsel agreed to the proposal.

In accordance with this agreement, Plaintiff filed her Unopposed Motion for Proposed Second Modified Scheduling Order. Doc. 60.  The motion detailed United's incomplete document production; noted that United had agreed to supplement its production by April 21, 2023; and requested a two-month unilateral discovery extension in favor of Plaintiff. *See generally*, *Id.*  The Court granted the unopposed motion on May 11, 2023.  As agreed, United made its supplemental production on April 20, 2023.[3]

While United did produce an additional 3,500 documents on April 20, 2023, the majority of the documents produced are dated after the Plaintiff's alleged trafficking. More importantly, the so called "hot" documents Plaintiff refers to in her brief related to Plaintiff J.G. are utterly irrelevant to the instant case because they

---

[3] While Plaintiff accuses United of "drag[ging] its feet" in making the supplemental production, the foregoing statement of facts recounts the multi-step, time-consuming process undertaken by United to correct the initial deficiency.  The deficiency was identified in late February; United made its supplemental production in April.  Thus, it did not take Northbrook "8months" to correct the deficiency, as Plaintiff implies in her Motion.  And United's counsel kept Plaintiff's counsel fully apprised of the status of the preparation of the supplemental production.

relate to matters that occurred after Plaintiff's alleged trafficking and would not be relevant or admissible to establish any fact of consequence in this case.[4]  Included in United's supplemental document production was a breakdown of employees that worked at the Property in 2017, some of which had been erroneously omitted from United's prior discovery responses. *See* Ex. "D".  The supplemental document production also included a sex trafficking training document that had not been previously produced. *See* Ex. "E".

During her two-month unilateral discovery extension, Plaintiff availed herself of the benefit of additional discovery.  On May 2, 2023, Plaintiff redeposed Shareef and Islam and asked questions about 32 of the supplemental discovery documents. Ex. "C", at ¶ 14.  On May 12, 2023, Plaintiff served United with additional written discovery to which United responded. *Id.*

On May 4, 2023, Plaintiff's counsel tendered a settlement demand and asked for a call to discuss "where things stand in the litigation." Ex. "C", at ¶ 15 and Ex. 6 thereto.

---

[4] In order to establish liability against United under the TVPRA, Plaintiff must establish, among other things, that United knew or should have known that she was being trafficked for sex at the Property while it was occurring. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021).  As such, any information or documents relating to knowledge United gained after Plaintiff's trafficking concluded would not be relevant to the TVPRA analysis.  Any such evidence would also be inadmissible to demonstrate liability against United for Plaintiff's negligence claim. *See Travis v. QuikTrip Corp.*, 339 Ga. App. 551, 553 (2016) (the fundamental basis for an owner or occupier's liability is that party's superior knowledge of the hazard encountered by the plaintiff).

On May 9, 2023, counsel for the Parties conferred by telephone, during which counsel for Plaintiff asked whether the case was going to settle, and then announced his intention to seek leave to file a motion for sanctions. Ex. "C", at ¶ 16.

On May 31, 2023, counsel again conferred as instructed by the Court. During this discussion, United's counsel offered to provide Plaintiff with additional discovery time, additional depositions, and additional documents as might be needed to make Plaintiff "whole" in preparing her case for trial. However, Plaintiff's counsel refused to take this offer. Ex. "C", at ¶ 18 and Ex. 8 thereto.

Plaintiff's counsel subsequently notified the Court of the discovery dispute, and the Court held a status conference with counsel on June 14, 2023. After hearing from counsel for each side, the Court "directed [the] parties to either mediate the matter in the next couple of weeks or if a resolution is not reached, Plaintiff may file a motion for sanctions." Doc. 74.

On August 28, 2023, the parties mediated the case reaching a partial resolution. Pursuant to the Limited Release, Plaintiff agreed to "fully and forever release, acquit, and discharge [United] from all Claims…", except of any recovery from claims that limited to proceeds from excess insurance. *See* Ex. "A". Notably, the Release does not carve out any exclusions for the discovery violations that had already occurred. *Id.* On October 3rd, Plaintiff filed a motion asking the Court to refer the discovery dispute to mediation with a Magistrate Judge, (Doc. 88), and on

October 18th the Court granted the motion. Doc. 92.  On December 1st, the parties participated in mediation with Magistrate Judge Walker. Doc. 112.  Although United appeared in good faith to mediate, the parties were unable to reach a resolution. Plaintiff then filed her Motion on December 12, 2023. Doc. 114.

## SUMMARY OF ARGUMENT

United admits its delayed discovery production is the result of a lack of diligence, but it is certainly not guilty of bad faith.  The appropriate sanction for United's lack of diligence would be an award of reasonable attorney's fees for Plaintiff's efforts to ensure United's compliance with its discovery responsibilities. Given the Plaintiff's August 28th Release, however, such monetary sanctions would be moot.  Moreover, the drastic sanctions Plaintiff proposes are vastly disproportionate to United's lack of diligence and are not warranted in this case.

First, United did not violate a court order to provide discovery and, therefore, Rule 37(b)(2) does not support an award of sanctions.

Furthermore, United worked diligently to remedy its initial discovery failures to ensure that Plaintiff received all discoverable documents and information in United's possession.  After doing so, Plaintiff received a unilateral discovery extension to conduct any further investigation she deemed necessary based on the newly received documents and information.  As such, United's delayed production was harmless and does not support the imposition of sanctions under Rule 37(c)(1).

Additionally, even if United's delayed production was not harmless, the requested sanctions are either unjust or do not specifically relate to the discovery at issue.  Excluding relevant and admissible evidence is unwarranted and would deprive United of its Due Process right to defend itself in court.

Finally, because United's negligent failure to identify and produce discoverable documents and information until the end of the discovery period did not result from bad faith, the Court should not impose sanctions pursuant to its inherent powers to control the proceedings before it.  For these reasons, set forth more fully below, United respectfully requests that this Court issue an ORDER denying Plaintiff's Motion for Sanctions.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

**A.    Plaintiff's request for drastic and debilitating sanctions are patently unreasonable and disproportionate to United's delayed satisfaction of its discovery duties.**

Plaintiff's Motion is a blatant attempt to weaponize the discovery rules to give herself an unfair advantage and avoid litigating this case on its merits.  Plaintiff would have this Court deprive United of an opportunity to present evidence in its defense,  practically deeming an essential element of Plaintiff's claim established.  However, Plaintiff has set forth no authority permitting such extraordinary sanctions and no such sanctions are warranted.

i.   <u>*United did not commit any violation that would trigger sanctions under*</u>
<u>*Rule 37(b)(2).*</u>

Plaintiff's Motion is predicated on the alleged violation of Rule 26(g)(3).
Plaintiff argues that in addition to the mandatory sanctions prescribed by Rule
26(g)(3), United should also be sanctioned under Rule 37(b)(2). *See* Doc. 114 at 19.
However, Rule 37(b)(2) is specifically intended to address a party's failure to abide
by a court order, providing as follows:

> For Not Obeying a Discovery Order.  If a party or a party's officer,
> director, or managing agent—or a witness designated under Rule
> 30(b)(6) or 31(a)(4)—***fails to obey an order*** to provide or permit
> discovery, including an order under Rule 26(f), 35, or 37(a), the court
> where the action is pending may issue further just orders.

FED. R. CIV. PROC. R. 37(b)(2)(A) (emphasis added).  Therefore, a party seeking
sanctions under Rule 37(b)(2) must demonstrate that the party against whom
sanctions are sought violated a court order directing them to provide discovery. *See*
*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 695
(1982) ("[Rule 37(b)] provides that a district court may impose sanctions ***for failure***
***to comply with discovery orders***") (emphasis added); *Chudasama v. Mazda Motor*
*Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) ("Rule 37 authorizes a district court to
impose such sanctions 'as are just' ***against a party that violates an order compelling***
***discovery***")(emphasis added); *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1323
(11th Cir. 2001) (holding that violation of a protective order issued under Rule 26(c)

did not warrant sanctions under Rule 37(b) because such sanctions only apply to violations of orders to provide or permit discovery).

Here, Plaintiff never moved to compel the production of the discovery items that form the basis of her Motion.  Instead, the parties worked together in compliance with the Court's standing orders concerning discovery disputes to resolve the dispute.  The Court was never tasked with determining whether an order to produce the documents and information at issue was necessary prior to United's production of the requested discovery materials.  United complied with its discovery obligations without having to be ordered to do so by the Court.  Therefore, United did not violate any order of this Court and cannot be sanctioned under Rule 37(b)(2).  As a result, any sanctions would have to be imposed pursuant to Rule 26(g)(3), Rule 37(c)(1), or the Court's inherent power to control proceedings before it.  As demonstrated below, however, none of these sources of authority to impose sanctions justify the draconian sanctions proposed by Plaintiff.

ii.   _United's delayed production of discovery materials and information_
      _was harmless and does not support the imposition of sanctions under_
      _Rule 37(c)(1)._

Plaintiff insists that this Court should (1) prohibit United from introducing evidence or arguments in its defense; (2) provide a remarkably prejudicial jury instruction designed to inflame the jury's passions against United; and (3) permit Plaintiff to ambush United with trial witnesses that she chose not to depose when

she had the opportunity. *See* Doc. 114 at 24-25.  These requests illuminate the true

intentions underlying Plaintiff's pursuit of sanctions against United.  Plaintiff is not

seeking to be "made whole" but is instead seizing on what she views as an

opportunity to cripple United's defenses in an effort to avoid litigating this case on

its merits.  However, Plaintiff has failed to demonstrate that her requested sanctions

are warranted.

> Rule 37(c)(1) provides as follows:
>
> Failure to Disclose or Supplement.  If a party fails to provide
> information or identify a witness as required by Rule 26(a) or (e), the
> party is not allowed to use that information or witness to supply
> evidence on a motion, at a hearing, or at a trial, unless the failure was
> substantially justified or is harmless.  In addition to or instead of this
> sanction, the court, on motion and after giving an opportunity to be
> heard: (A) may order payment of the reasonable expenses, including
> attorney's fees, caused by the failure; (B) may inform the jury of the
> party's failure; and (C) may impose other appropriate sanctions,
> including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

FED. R. CIV. PROC. R. 37(c)(1).  By the plain language of Rule 37(c)(1), sanctions

should not be imposed if a party's failure to abide by their discovery obligations are

harmless. *See, e.g.*, *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 592-93 (11th

Cir. 2019) (holding that the district court did not abuse its discretion in refusing to

strike additional opinions elicited from an expert witness at trial that were not

expressed in his expert report but instead giving defense counsel additional time to

prepare for his cross examination, reasoning that the district court's finding that the

introduction of the new opinions was harmless because defense counsel was

afforded additional time to prepare cross examination questions based on the new testimony).

First, United's delayed identification of former employees is harmless. Plaintiff argues that United should be prohibited from introducing evidence in its defense because United "has produced inconsistent, incomplete information about who worked at the [Property]" and "Plaintiff cannot confront [United's] claims . . . because Plaintiff does not know who Defendant's employees were and cannot find them." Doc. 114 at 24.  It is true that United identified and disclosed eight former employees who worked at the Property in 2017 after the close of discovery upon its discovery of additional documents.[5] *See* Ex. "D".  It is also true, however, that United identified eighteen current and former employees in its initial disclosures and first interrogatory responses; a fact that is conspicuously absent from Plaintiff's Motion. *See* Ex. "B".  Despite the disclosure of these individuals, Plaintiff made no effort to depose any of the identified employees.  Instead, Plaintiff chose to depose Shareef and Islam only.  In fact, even after learning of the eight previously undisclosed employees and being granted a unilateral discovery extension to pursue any discovery she pleased, Plaintiff again elected not to depose any of these employees.  So, for Plaintiff to now argue that United's "shifting staff lists and

_____

[5] United notes here that there were additional former employees identified, however, none of them worked at the Property until after Plaintiff's alleged trafficking and, therefore, would not have been able to provide any testimony relevant to Plaintiff's claims.

incomplete staff records" compromised her ability to investigate the case is disingenuous to say the least. Doc. 114 at 22. In reality, Plaintiff never had any interest in deposing United's current or former employees. She only now feigns an interest in doing so to suit her present needs. By choosing not to depose any of United's employees aside from Shareef and Islam, Plaintiff has demonstrated that her knowledge of United's former employees' identities would not have affected her prosecution of this case in any way. Moreover, Plaintiff was given additional time to depose these individuals and chose not to do so. Beyond that, United's counsel offered to provide Plaintiff with even more time to pursue discovery—an offer that Plaintiff declined. Ex. "C", at ¶ 18 and Ex. 8 thereto. Plaintiff has had several opportunities to depose the former employees at issue. Therefore, United's delayed disclosure of these former employees was harmless. For this reason, United's inadvertent delayed disclosure of these eight former employees cannot stand as a basis to impose the drastic sanctions Plaintiff seeks.

United's delayed production of the sex trafficking training document is similarly harmless. Not only has Plaintiff had ample time to review the document, she took the opportunity to re-depose United's representatives and ask them about the document. Shareef Dep. at 381:3-395:5; Islam Dep. at 147:24-151:9. Therefore, whatever prejudice Plaintiff may have suffered from receiving the document late has been cured. Moreover, United disclosed the fact that it trained its staff to be on the

lookout for crime at the Property, including sex trafficking, in its first interrogatory responses. *See* Ex. "B".  Although United did not recover the sex trafficking training document until later when it recommenced its internal discovery investigation, Plaintiff was well aware of the fact that United provided such training long before the close of discovery.  Even still, the Court's provision of a unilateral extension for Plaintiff to investigate the training document cured any harm that might have been caused by the delayed production.  For these reasons, United's delayed disclosure of the discovery items at issue was harmless and does not support the imposition of the requested sanctions under Rule 37(c)(1).

Although Plaintiff references purported "hot" documents included in United's production, she does not identify them by name or description and bases her request for sanctions only on the discovery items mentioned above.  In any event, the majority of the documents produced on April 20, 2023, pertain to facts that occurred after Plaintiff's trafficking concluded and, therefore, are not relevant.  Because these documents are irrelevant, their delayed production was harmless and cannot support the imposition of sanctions under Rule 37(c)(1).

     iii.   *This Court should not prohibit United from introducing highly relevant and admissible testimony at trial concerning United's actual or constructive knowledge of sex trafficking at the Property as a Rule 37(c)(1) sanction.*

Even if Plaintiff could demonstrate that the delayed production of the discovery at issue was not harmless, Plaintiff's requested sanctions are either unjust

or do not specifically relate to the discovery at issue.  "The broad discretion of the district court to manage its affairs is governed, of course, by the most fundamental safeguard of fairness: the Due Process Clause of the Fifth Amendment." *Serra Chevrolet, Inc. v. GMC*, 446 F.3d 1137, 1151 (11th Cir. 2006) (citing *Ins. Co. of Ireland*, 456 U.S. at 707).  "To comply with the Due Process Clause, a court must impose sanctions that are both 'just' and 'specifically related to the particular 'claim' which was at issue in the order to provide discovery.'" *Id.* (quoting  *Ins. Co. of Ireland*, 456 U.S. at 707).  Moreover, the Eleventh Circuit has consistently espoused "a strong preference that cases be heard on the merits instead of imposing sanctions that deprive a litigant of his day in court." *Owens v. Benton*, 190 F. App'x 762, 763 (11th Cir. 2006); *see Douse v. Neal Cmtys. of Sw. Fla., Inc.*, No. 21-10855, 2022 U.S. App. LEXIS 19541, at *6 (11th Cir. July 15, 2022).

First, Plaintiff requests that this Court prohibit United from introducing evidence or argument at trial that (1) its staff never reported concerns about commercial sex at the Property; (2) it trained its staff to be on the lookout for criminal activity and commercial sex; and (3) none of its staff had criminal records or were complicit in crime at the hotel. Doc. 114 at 24.  However, prohibiting United from eliciting testimony from Shareef and Islam is neither just nor specifically related to the disclosure of the former employees at issue.  Even if United's delayed production of the discovery at issue had harmed Plaintiff—which it has not—the

exclusion of highly relevant and admissible testimony from properly disclosed witnesses would be an overtly disproportionate remedy.  The sole case Plaintiff cites in support of these drastic measures is *Nance v. Ricoh Elecs., Inc.*, No. 1:06-CV-2396-RWS, 2008 U.S. Dist. LEXIS 27909, at *8-9 (N.D. Ga. Mar. 31, 2008).  However, the facts of *Nance* are easily distinguishable from the facts of this case and provide no support for Plaintiff's requested relief.

In *Nance*, the plaintiff failed to identify seven witnesses in their initial disclosures (or at any other time during discovery) and then relied heavily on surprise declarations from these previously unidentified witnesses in an effort to avoid summary judgment. *Nance*, 2008 U.S. Dist. LEXIS 27909, at *8-9.  Because the plaintiff failed to provide notice that they intended to rely on the testimony of these witnesses, the court concluded that their nondisclosure was not harmless. *Id.*  The court further concluded that the failure to identify these witnesses constituted a violation of Rule 26(a) and excluded the declarations as a Rule 37(c)(1) sanction. *Id.*

Here, United identified the employees at issue, Plaintiff had ample time to depose these employees, and United has not made any attempt to rely on testimony from these individuals.[6]  And unlike *Nance*, the delayed production of the discovery at issue here is harmless.  Most importantly, the *Nance* court tied the imposition of

---

[6] United moved for Summary Judgment on December 21, 2023; the only testimonial evidence cited in support of United's motion is that of Shareef, Islam, and Plaintiff herself.

sanctions directly to the discovery violation: because the plaintiff failed to disclose specific witnesses until after the summary judgment stage, they could not affirmatively rely on the testimony of the witnesses they failed to disclose.  What Plaintiff asks for here is an entirely different story.  Plaintiff is attempting to use the delayed disclosure of United's former employees as a basis to exclude testimony from Shareef and Islam, witnesses who were properly identified and deposed twice in this case.  This is not a just and proper remedy.  At no point has Plaintiff ever complained that Shareef or Islam were not properly identified nor did United make any effort to prevent Plaintiff from taking their depositions.  Indeed, both Shareef and Islam testified that none of the staff at the Property had ever raised concerns of a pattern of commercial sex at the Property. Shareef Dep. at 64:3-65:10; Islam Dep. at 55:4-9.  Additionally, Shareef testified that he provided United's employees with training intended to help them identify criminal activity at the Property, including sex trafficking. Shareef Dep. at 183:4-185:25.  United's timely served discovery responses also disclosed that it provided such training. *See* Ex. "B".  And neither Shareef nor Islam testified to being aware of any of United's former employees having criminal records or having been involved in Plaintiff's trafficking.  Yet, Plaintiff argues that because United's former employees *might* have contradicted the evidence of record *if* they had been deposed, Shareef and Islam should not be allowed to testify—based on their own direct and personal knowledge—about an

essential element of Plaintiff's claim.  Plaintiff cannot rely on hypothetical testimony from witnesses she chose not to depose to prevent a jury from hearing the actual evidence developed during discovery.  Simply put, the exclusion of testimony from United's representatives would be an improper sanction because it is neither just nor related to the discovery violation at issue.

For these same reasons, Plaintiff's requested jury instruction is neither just nor related to the discovery violation at issue.  As demonstrated above, Plaintiff's contention that the delayed disclosure of United's former employees affected her ability to investigate United's defenses is simply a pretext designed to give her an unfair advantage at trial.  Again, United timely disclosed the overwhelming majority of its current and former employees and Plaintiff made no effort to depose anyone other than Shareef and Islam.  Moreover, the requested jury instruction would be extremely prejudicial because it insinuates that United made some effort to obstruct Plaintiff's investigation.  Plaintiff is free to present arguments at trial about the evidentiary significance of United's lack of organization or uniform record keeping.  However, having this Court specifically instruct the jury that United essentially prevented Plaintiff from prosecuting her claims would dramatically and unjustly prejudice United.  This is especially true considering the fact that Plaintiff received a unilateral discovery extension to address the late disclosures and chose not to

depose any of United's former employees. For these reasons, this Court should not sanction United by providing Plaintiff's requested jury instruction.

Next, Plaintiff asks this Court to exclude United's sex trafficking training document from evidence. As stated above, the late production of the training document was harmless. Beyond that, United respectfully submits that exclusion of this evidence is not mandatory under Rule 37(c)(1). As Justice Carnes aptly noted in his concurrence in *Taylor*, Rule 37(c)(1) provides district courts with the discretion to impose lesser sanctions in lieu of excluding belatedly disclosed evidence. *See Taylor*, 940 F.3d at 603-604 (J. Carnes, concurring) ("although Rule 37(c)(1) states, in its first sentence, that a party who fails to provide information as required by 26(e) 'is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless,' the next sentence provides: '[i]n addition to or <u>instead of this sanction</u>, the court' may impose 'other appropriate sanctions.' In other words, given that text, one can also argue that exclusion is not automatically required by the rule") (internal citations omitted) (emphasis original). Taking this interpretation together with the text of Rule 37(c)(1)(A), the Federal Rules contemplate that an award of reasonable attorney's fees should suffice as an appropriate sanction for the late disclosure of evidence under some circumstances. Plaintiff had ample opportunity to cross examine United's representatives during his

two depositions, including about the training document.  Excluding the document from evidence altogether would not be a just remedy.

Plaintiff similarly requests that United be prohibited from relying on testimony from the belatedly disclosed former employees. Doc. 114 at 25.  Such a sanction is improper because the delayed disclosure of these individuals was harmless.  Again, exclusion of these witnesses is not mandatory and, considering that Plaintiff has been afforded a discovery extension to address the practical effect of the late disclosure—yet chose not to depose any of the disclose witnesses— sanctions would be inappropriate.  More importantly, should this Court determine that exclusion of the former employees is necessary, they should be excluded from trial altogether.  Plaintiff should not be permitted to ambush United at trial with former employees she elected not to depose when she had the opportunity to do so. As Plaintiff expressed in her own Motion, "[t]he days of trial by ambush have passed." *Wammock v. Celotex Corp.*, 793 F.2d 1518, 1527 (11th Cir. 1986); Doc. 114 at 23.  It would be patently unjust to allow Plaintiff to call United's former employees as witnesses at trial while simultaneously prohibiting United from doing so.

iv.  <u>United has not engaged in the conduct necessary to invoke the Court's inherent authority to impose sanctions.</u>

United's delayed production of the discovery items at issue was not the result of bad faith.  Courts have the inherent power to police those appearing before them.

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).   This inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43.   This power "must be exercised with restraint and discretion" and used "to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44-45.   "The key to unlocking a court's inherent power is a finding of bad faith." *Purchasing Power LLC, v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017); *see Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2022) ("[B]efore a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct constituted or was tantamount to bad faith") (internal quotations omitted).   Negligent conduct alone will not support a finding of bad faith. *Amlong & Amlong, P.A. v. Denny's Inc.*, 457 F.3d 1180, 1193 (11th Cir. 2006) (examining what constitutes "bad faith" for the purpose of determining whether sanctions should be imposed under 28 U.S.C. § 1927; *see also*, *Denny's Inc.*, 457 F.3d at 1202-1203 ("the threshold of bad faith conduct for purposes of sanctions under the court's inherent powers is at least as high as the threshold of bad faith conduct for sanctions under § 1927) (citing *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1178 n.6 (11th Cir. 2005).

United's delayed production of the discovery at issue was not the result of bad faith conduct.   It was instead the result of a lack of diligence.   United is not an

experienced litigant, it is not a large corporate entity with in house counsel, nor does it have advanced internal policies concerning the retention, preservation, or collection of discovery materials.  United is a small business trying to survive while actively being engaged in this litigation.  There is no evidence whatsoever that United or its previous counsel made any affirmative effort to improperly impede discovery.  Indeed, Plaintiff herself recognizes this fact as she repeatedly characterizes United's discovery failures as negligence. Doc. 114 at 19, 21, 22, 23, and 24. Instead, recognizing its mistake, United repeatedly offered Plaintiff the ability to conduct unilateral discovery for as long as she deemed appropriate.  As the foregoing authority demonstrates, negligence does not equate to bad faith. *See Denny's Inc.*, 457 F.3d at 1193.  Therefore, United has not engaged in the conduct necessary to invoke the Court's inherent power to impose sanctions and no additional sanctions should be imposed against it pursuant to the Court's inherent powers.

> v.    *The proper remedy would be for United to pay the reasonable attorney's fees associated only with its discovery failures but the issue is moot due to the Release.*

Plaintiff's request for sanctions is predicated on a violation of Rule 26(g)(3), on the theory that the incomplete production of documents made United's counsel's certification of the written response to the document requests improper.  United concedes that its failure to conduct a sufficiently diligent search of its records

constitutes a violation of Rule 26(g)(3). "The decision of what sanction is appropriate, however, is committed to the district court's discretion." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1372 (11th Cir. 1997); *see also* FED. R. CIV. PROC. R. 26(g) advisory committee's note to 1983 amendment ("The nature of the sanction is a matter of judicial discretion to be exercised in light of the particular circumstances").

The appropriate sanction for United's discovery failures is an award of reasonable attorney's fees associated with Plaintiff's efforts to remedy United's delayed production. Any such award, however, would be moot as to United because Plaintiff fully Released United pursuant to the August 28th Release. *See* Ex. "A". Ultimately, United abided by the Court's standing orders and worked to ensure that all responsive documents and information in United's possession were produced. United agreed to, and the Court provided Plaintiff with, a unilateral discovery extension to examine the discovery items and determine what additional investigative efforts were necessary. The majority of the 3,500 documents were not relevant because they dated after Plaintiff's alleged trafficking. Plaintiff took advantage of the Court's unilateral discovery extension and pursued additional discovery as she saw fit, including redeposing Shareef and Islam. For these reasons, any practical prejudice to Plaintiff caused by United's delayed production has been remedied. Therefore, there is no need to impose the draconian, exclusionary

sanctions proposed by Plaintiff.  Given Plaintiff's Release of United, the Court can and should deny any additional sanctions.

## CONCLUSION

Based on the foregoing evidence, authority, and arguments, United respectfully requests that this Court issue an ORDER denying Plaintiff's Motion. Respectfully submitted this the 2nd day of January, 2024.

LEWIS BRISBOIS BISGAARD
& SMITH LLP
Bank of America Plaza
600 Peachtree Street, NE, Suite 4700
Atlanta, Georgia 30308
(404) 348-8585
(404) 467-8845 Facsimile
Adi.Allushi@lewisbrisbois.com
Cameron.Mobley@lewisbrisbois.com
Cecilia.Walker@lewisbrisbois.com

*/s/ Adi Allushi*_____
ADI ALLUSHI
Georgia Bar No. 852810
CAMERON A. MOBLEY
Georgia Bar No. 613048
CECILIA WALKER
Georgia Bar No. 916346

*Attorneys for Defendant*
*Northbrook Industries, Inc. d/b/a*
*United Inn and Suites*

## **RULE 7.1D CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

Dated: January 2, 2024

*/s/ Adi Alushi*
ADI ALLUSHI

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 2, 2024, I electronically filed the foregoing

***Defendant's Response in Opposition to Plaintiff's Motion for Sanctions***  with the

Clerk of Court using the CM/ECF filing system which will automatically send e-

mail notification of such filing to the following counsel of record:

David H. Bouchard
Finch McCranie, LLP
229 Peachtree Street, NE, Suite 2500
Atlanta, GA 30303
david@finchmccranie.com

*Attorney for Plaintiff*


*/s/ Adi Allushi*_____
ADI ALLUSHI
Georgia Bar No. 852810

***Attorneys for NORTHBROOK***
***INDUSTRIES, INC. d/b/a United***
***Inn and Suites***

27