**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **G.W.,** | : | |
| | : | |
| | : | |
| | : | **CIVIL ACTION FILE** |
| **vs.** | : | |
| | : | **NO. 1:20-cv-05232-JPB** |
| **NORTHBROOK INDUSTRIES,** | : | |
| **INC., D/B/A UNITED INN AND** | : | |
| **SUITES,** | : | |
| | : | |
| **Defendant.** | : | |

**PLAINTIFF G.W.'S RESPONSE IN OPPOSITION TO
DEFENDANT UNITED INN'S MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

COMES NOW, G.W. ("Plaintiff"), by and through the undersigned counsel, and hereby respectfully moves that the Court deny Defendant's Motion for Summary Judgment. In support, Plaintiff encloses a Brief in Support of her Opposition to Defendant's Motion for Summary Judgment.

For years, law enforcement, hotel guests, and the Internet have known what United Inn now tries to deny—that commercial sex activity was commonplace at the United Inn.  The hotel's reputation as a hotspot for commercial sex culminated in the tragic and foreseeable: G.W. and A.G., 17-year-olds, were sex trafficked together at United Inn in June 2017, and then G.W. was trafficked again on her own at United Inn in July 2017.  G.W.'s and A.G.'s traffickers pled guilty to sex trafficking the minors at United Inn before Judge Michael L. Brown.

G.W.'s and A.G.'s armed, gang-affiliated traffickers controlled and monitored the girls' movements and directed them to loiter in United Inn's common areas in provocative clothing to attract sex buyers and to make $500/day from commercial sex.  When they were trafficked at United Inn, A.G. had sex for money with approximately 15 men at United Inn, G.W. with 30 men.  Their traffickers collected the money they earned from sex and paid a portion of it to United Inn for rooms. The evidence shows that United Inn staff repeatedly talked to A.G. and G.W. and observed (or should have observed) their ages, attire, appearances, and conduct; observed (or should have observed) them loitering in common areas late at night scantily clad; observed (or should have observed) the high volume of visitors to their room; observed (or should have observed) disturbances from raucous sex buyers late night; sold them the necessary condoms for commercial sex acts; and entered the

1

room in which they were trafficked together with used condoms and extra linens and towels.

In its motion for summary judgment, United Inn misconstrues 18 U.S.C. § 1595(a) and ignores the evidence to argue that (1) United Inn "could not have reasonably known" that A.G. and G.W. were sex trafficked together at United Inn, and (2) that "there is no admissible evidence" showing that United Inn took part in a common undertaking involving risk and potential profit.  Because of the substantial evidence that United Inn knowingly profited from renting rooms to A.G.'s and G.W.'s traffickers, rooms it knew or should have known were used to traffic A.G. and G.W., summary judgment on the § 1595(a) beneficiary claim is improper. Likewise, because the evidence shows that A.G. and G.W. were invitees who were sex trafficked at United Inn, summary judgment on the negligence claim is also improper.

## **STATEMENT OF FACTS**

### I.   **G.W.'s Sex Trafficking at United Inn.**

From June 23 – 26, 2017, G.W. and A.G., who were 17 years old at the time, were sex trafficked together in the same room at United Inn.[1]  Ex. 1, A.G. Dep. at

---

[1] G.W. was sex trafficked at the United Inn without A.G. from July 2, 2017 – July 4, 2017 and July 20, 2017 – July 21, 2017.  Ex. 2, G.W. Dep. at 158:22-159:8.

14:23-24, 28:17-21, 73:1-8, 99:21-24; Ex. 2, G.W. Dep. at 14:12-13, 21:15-19, 76:13-17, 110:13-17; 158:14-19.  A.G. and G.W. were sex trafficked by Zaccheus Obie, Kikia Anderson, and their associates, one of whom was Dontavis Carr, aka "Doc."[2]  Ex. 1, A.G. Dep. at 49:20-22, 96:13-97:03, 136:12-13; Ex. 2, G.W. Dep. at 58:11-20, 75:12-76:03, 85:2-14, 91:7-11, 99:5-24, 101:25-102:2, 160:6-11.  From June 23 - June 26, 2017, A.G. had sex for money with approximately 15 men at the United Inn. Ex. 1, A.G. Dep. at 86:4-19, 131:12-20.  One man who paid A.G. for sex slapped her in the face and held her down while she cried. Ex. 1, A.G. Dep. at 131:21-132:3; Ex. 2, G.W. Dep. at 191:8-13.  Over June 23 – June 26, 2017, July 2, 2017 – July 4, 2017, and July 20, 2017 – July 21, 2017, G.W. had sex for money with approximately 30 men at the United Inn.  Ex. 2, G.W. Dep. at 159:21-160:5.

The United Inn had an ongoing business relationship with A.G.'s and G.W.'s traffickers and their associates.  Ex. 2, G.W. Dep. at 213:5-10, 91:18-25; Ex. 1, A.G. Dep. at 132:14-134:3; Ex. 10, Dontavis Carr room receipt; Ex. 11, Kikia Anderson

---

[2] Zaccheus Obie and Kikia Anderson pled guilty before Judge Michael L. Brown in the United States District Court for the Northern District of Georgia to sex trafficking A.G. and G.W. at United Inn as minors in 2017 in violation of 18 U.S.C. 1591.  *United States v. Obie*, Case No. 1:18-cr-00424-MLB-JKL (N.D.Ga., Nov. 6, 2020), Doc Nos. 160, 178; *United States v. Anderson*, Case No. 1:18-cr-00424-MLB-JKL (N.D.Ga., April 1, 2021), Doc. No. 177.

room receipt.  A.G. and G.W.'s traffickers, and their associates, repeatedly paid the United Inn to rent rooms necessary for A.G.'s and G.W.'s trafficking.  Ex. 1, A.G. Dep. at 57:7-22, 58:15-25; Ex. 2, G.W. Dep. at 76:8-15, 100:11-101:11; Ex. 10, Dontavis Carr room receipt; Ex. 11, Kikia Anderson room receipt.  Dontavis Carr, an associate of A.G.'s and G.W.'s traffickers, rented a United Inn room from June 23 - June 26, 2017 that Carr, Zaccheus Obie, and Kikia Anderson used to traffic A.G. and G.W.  Ex. 1, A.G. Dep. at 57:7-22; Ex. 2, G.W. Dep. at 76:8-15; Ex. 10, Dontavis Carr room receipt.  Mr. Carr had previously rented a room at the United Inn in February 2017, and he later rented a room at the United Inn for July 2 – 4, 2017 that was again used to traffic G.W.  Ex. 2, G.W. Dep. at 158:22-159; Ex. 10, Dontavis Carr room receipt.  Kikia Anderson, one of A.G.'s and G.W.'s traffickers who pled guilty to trafficking the minor girls at United Inn, rented a room at United Inn from July 20 – July 21, 2017 that was used to traffic G.W. Ex. 2, G.W. Dep. at 158:22-159; Ex. 11, Kikia Anderson room receipt.

A.G.'s and G.W.'s traffickers demanded that A.G. and G.W. make at least $500 per night from commercial sex work at United Inn.  Ex. 1, A.G. Dep. at 71:10-24, 179:16-180:8; Ex. 2, G.W. Dep. at 80:11-16.  A.G. and G.W. gave all the money they were paid by sex buyers at United Inn to Zaccheus Obie, who collected their earnings at the United Inn every morning.  Ex. 1, A.G. Dep. at 88:16-20, 132:14-18;

4

Ex. 2, G.W. Dep. at 73:4-7, 91:18-25, 122:8-11.  After Zaccheus Obie collected the earnings from A.G. and G.W., he went to the front office at the United Inn to pay for the room in which A.G. and G.W. were trafficked. Ex. 2, G.W. Dep. 91:18-25, 100:11-101:11; Ex. 1, A.G. Dep. 132:14-134:3.  A.G.'s and G.W.'s traffickers had been to the United Inn multiple times and appeared to be familiar with United Inn staff.  Ex. 1, A.G. Dep. at 132:14-134:3; Ex. 2, G.W. Dep. at 213:5-10, 91:7-25.  As noted, Dontavis Carr, who rented the room used to traffic A.G. and G.W. from June 23 – June 26, rented rooms at the United Inn in February 2017, June 2017, and July 2017.  Ex. 10.  And Kikia Anderson rented a room at the United Inn in July 2017. Ex. 11.

A.G. and G.W. believed their traffickers were in a gang because of statements made by their trafficker Zaccheus Obie.  Ex. 1, A.G. Dep. at 138:11-139:10; Ex. 2, G.W. Dep. at 168:1 – 19.  Zaccheus Obie, and his associates, carried guns. Ex. 1, A.G. Dep. at 137:9-138:3; Ex. 2, G.W. Dep. at 166:12-167:2.  Zaccheus Obie told A.G. and G.W. he was monitoring them at the United Inn. Ex. 1, A.G. Dep. at 103:25-104:10, 138:11-22; Ex. 2, G.W. Dep. at 85:2-14, 91:9-17. Zaccheus Obie implicitly and explicitly threatened A.G. and G.W. at United Inn.  Ex. 1, A.G. Dep. at 132:4-9, 137:9-16, 114:9-15; Ex. 2, G.W. Dep. at 151:23-152:3, 165:22-166:11.

Zaccheus Obie was violent towards women in front of G.W. Ex. 2, G.W. Dep. at 72:4-16, 151:23-152:3, 165:22-166:11.

A.G. and G.W. attracted sex buyers at the United Inn by wearing scant, provocative clothing and loitering in the hotel's common areas. Ex. 1, A.G. Dep. at 82:2-7, 147:8-11; Ex. 2, G.W. Dep. at 77:7-10, 117:19-24, 169:24-170:10, 173:23-5. A.G. and G.W. loitered in the parking lot in the middle of the night to meet sex buyers. Ex. 1, A.G. Dep. at 63:2-12, 65:5-8; 74:20-75:4; 119:13-5; 140:19-141:5; Ex. 2, G.W. Dep. at 56:14-57:2, 88:6-15, 163:18-24, 169:18-170:10, 171:22-25, 173:23-25. Sex buyers drove their cars into the parking lot and circled the lot to find customers. Ex. 1, A.G. Dep. at 63:2-12, 65:5-8; 74:20-75:4; 140:19-141:5. Sometimes A.G. and G.W. had sex with groups of men together, and sometimes one of the girls would wait in the bathroom or the hallway while the other engaged in a commercial sex act with a buyer. Ex. 1, A.G. Dep. at 200:2-203:25; Ex. 2, G.W. Dep. at 94:23-96:3, 161:4-18, 162:20-163:17.

A.G. and G.W. went to the front office to purchase condoms for their commercial sex work at the hotel. Ex. 1, A.G. Dep. at 125:25-126:1, 142:6-11; Ex. 2, G.W. Dep. at 89:11-15, 98:6-24. When housekeeping cleaned the room in which A.G. and G.W. were trafficked, used condoms were visible. Ex. 2, G.W. Dep. at 99:15-19, 104:1-6.

From June 23 - June 26, A.G. and G.W. went to the front office to purchase food, drinks, and hygiene supplies because they were living at the hotel under the supervision and control of their traffickers. Ex. 2, G.W. Dep. at 89:11-15, 211:12-17; Ex. 1, A.G. Dep. at 142:5-10. On one occasion, A.G. and G.W. went to the front office when they were locked out of their room at night. The front desk clerk talked on the phone with Zaccheus Obie and/or Dontavis Carr. After doing so, the front desk clerk walked G.W. and A.G. back to the room in which they were being sex trafficked at the United Inn and opened the room to let A.G. and G.W. back in. Exhibit 1, A.G. Dep. at 142:5-11, 145:14-147:2; Ex. 2, G.W. Dep. at 102:16-103:25.

On at least two occasions at the United Inn between June 23 - June 26, two different groups of five adult men purchased sex with A.G. and G.W. With both groups, disputes arose at night, and there was significant commotion in United Inn's common areas. Ex. 1, A.G. Dep. at 134:14-136:9; Ex. 2, G.W. Dep. at 161:4-163:7. One dispute lasted for 15-20 minutes in United Inn's common areas, and the other for 10 – 15 minutes in United Inn's common areas. Ex. 1, A.G. Dep. at 77:4-21, 81:10-82:1; Ex. 2, G.W. Dep. at 95:9-11.

From July 2, 2017 – July 4, 2017, when G.W. was trafficked at the United Inn without A.G., G.W. met other women engaging in commercial sex activities at United Inn for Zaccheus Obie. Ex. 2, G.W. Dep. at 115:6 - 117:13, 118:20-119:1.

From July 20, 2017 – July 21, 2017, when G.W. was trafficked at the United Inn without A.G., G.W. met other women engaging in commercial sex activities at United Inn.  Ex. 2, G.W. Dep. at 145:3-147:15.

In August 2017, the FBI contacted the United Inn to request records relating to the child sex trafficking of A.G. and G.W. at the hotel.  Ex. 12, NBI 002554-5.

## II.   Commercial Sex Activity and Sex Trafficking at United Inn Before and After G.W.'s Sex Trafficking at United Inn.[3]

The United Inn's history of violent crime and sex crimes is too long to fully recount within the page limits.  The complaint's allegations have been exceeded and proven by at least five different eyewitnesses to commercial sex at United Inn (four of whom are minor victims of sex trafficking at United Inn), 10 police reports detailing investigations and/or arrests just for sex-related crimes at the hotel prior to A.G.'s and G.W.'s trafficking, and multiple online reviews reporting sex crimes and security issues.

By 2015, the Dekalb County Police Department had identified the United Inn as a "problem hotel" in Dekalb County "for drug[s] and prostitution … it was like a

---

[3] G.W. does not concede or agree that only commercial sex crimes are relevant to establishing foreseeability and/or what United Inn knew or should have known about the risk of minor sex trafficking.  But the volume of commercial sex activity at the property was so significant that it is not necessary in this brief to highlight other relevant crimes (e.g., murders, aggravated assaults, etc.).

radar hotel that we knew about." Ex. 15, Detective King Dep. at 18:25-19:10.  The Dekalb County Police Department viewed commercial sex as "common" and a "problem" at United Inn during the relevant period.  Ex. 15, Detective King Dep. at 18:25-19:10, 52:18-53:4.  During the relevant period, there were a "number of women" "working at the [United Inn]" "doing commercial sex activities" who were working for several men at United Inn.  *Id.* at 20:24-21:7, 27:24-28:23.  The most popular website for commercial sex ads—Backpage—had a tool to filter search results to a certain area.  *Id.* at 66:9-67:10. After using that tool, "9 out of 10" ads on Memorial Drive were from United Inn.  *Id.* at 33:22-34:10, 47:11-15.  Some of the ads for sex at United Inn involved minors. *Id.* at 54:9-55:6.

From 2012 – 2016, the Dekalb County Police Department came to the United Inn at least seven times for commercial sex crimes specifically.   Ex. 16 at PLAINTIFF-024272 - 24304.  In 2017, commercial sex was rampant at the hotel.  In May 2017, the United Inn manager texted with a security guard at the hotel about a prostitution-related shooting at the hotel. Ex. 3, United Inn 30(b)(6) May 2, 2023, 370:21-25.  On June 2, 2017, a man was arrested after beating a woman at the United Inn over monies owed for sexual favors. Ex. 16 at PLAINTIFF-024305(UI&S)-24319(UI&S).  On June 20, 2017, police responded to a fight between a prostitute and her pimp at the United Inn.  The pimp left the prostitute's room after the fight to

go stay in another woman's room at the hotel (likely another prostitute).  Ex. 16 at

PLAINTIFF-024320(UI&S)-24323(UI&S).   And then from June 23 – 26, 2017,

A.G. and G.W. were trafficked at the hotel.  On July 2 – July 4, and July 20 – July

21, G.W. was trafficked at United Inn again.  On July 20, 2017, the Metro Atlanta

Child Exploitation Task Force conducted an operation "in reference [to] child and

adult prostitution" at the United Inn that was unrelated to A.G. and G.W.  Ex. 16 at

PLAINTIFF-024324(UI&S)-24325(UI&S).

After 2017, sex crimes and commercial sex activity remained commonplace

at United Inn, with at least 8 arrests and/or investigations from 2018 – 2020 relating

to commercial sex and sex crimes.[4]   Ex. 16 at PLAINTIFF-024326(UI&S) -

PLAINTIFF-31060 (UI&S).  Further, in 2018 – 2019, a 16-year-old, J.G., was sex

trafficked at United Inn for approximately 40 days by two men she met at United

Inn.  She had sex with approximately 12 men per day at United Inn during that 40-

day period and she regularly loitered in common areas scantily clad to meet sex

---

[4] Because United Inn's owner denied all knowledge of commercial sex on the property, Ex. 18, United Inn 30(b)(6) Dep., Feb. 22, 2023 at 64:3-25, 120:19–121:2, 121:22-122:7, evidence of commercial sex after Plaintiff's trafficking is relevant and admissible for impeachment of United Inn's owner under Fed. R. Evid. 607.  Further, evidence of United Inn's response to commercial sex at the hotel is admissible under Rule 404(b) to show absence of mistake and lack of accident, among other things, in Defendant's response to Plaintiff's trafficking.  Finally, evidence of commercial sex at United Inn is admissible under Rule 406 to show Defendant's pattern, custom, and routine.

buyers.  Ex. 8, J.G. Dep. at 14:16-17, 20:2-9, 28:1-29:11, 29:22-30:6, 33:20-34:02, 35:16-23, 36:15-18, 37:4-16, 40:9-14, 55:22-56:1, 79:19-20, 83:20-21, 113:6-10. Her traffickers sold drugs, and women for sex, including other minors, out of United Inn rooms.  Ex. 8, J.G. Dep. at 74:21-75:14, 93:22; Ex. 9, N.S. Affidavit.  When housekeeping visited the rooms, her traffickers did not make efforts to hide or conceal their criminal activities from United Inn housekeeping staff.  Her traffickers were "cool with everybody who worked up there," "when housekeeping came, nothing changed," "they didn't bother to hide nothing… they didn't care."  Ex. 8, J.G. Dep. at 93:3-94:13.[5]  In September 2019, a 14-year-old girl and a 16-year-old girl were kidnapped and trafficked at the United Inn.  Ex. 16 at PLAINTIFF-002978(UI&S)-2985(UI&S).

### III.   United Inn's Operations and Security.

The United Inn is situated in a high-crime neighborhood.  Ex. 18, United Inn 30(b)(6) Dep., Feb. 22, 2023 at 87:12-15.  From 2017 – 2019, the Dekalb County

---

[5] United Inn's indifference to evidence of minor sex trafficking in hotel rooms in 2018, the year after Plaintiff's trafficking, is probative of United Inn's knowledge of and the foreseeability of sex trafficking the year of Plaintiff's trafficking.  *See, e.g., Suresh & Durga, Inc. v. Doe*, 894 S.E.2d 602, 605 (Ga. Ct. App. 2023) (evidence that staff laughed in response to evidence of trafficking, "like they see this all the time," was relevant to hotel's knowledge and foreseeability of earlier trafficking).

Police Department came to the hotel two – three times per week to respond to calls for service.  Ex. 18, United Inn 30(b)(6) Dep., Feb. 22, 2023 at 60:15-25.

The Dekalb County Police Department notified the United Inn about commercial sex crimes at the hotel.  Ex. 13, United Inn's Response to RFA No. 45. The United Inn manager claimed to be aware of 5-6 instances of prostitution at the hotel during the relevant period.  Ex. 14, Ashar Islam Dep., Feb. 22, 2023 at 57:12-59:7.  In May 2017, one month before Plaintiff's trafficking, the United Inn manager texted with a security guard at the hotel about a prostitution-related shooting at the hotel. Ex. 3, United Inn 30(b)(6) May 2, 2023, 370:21-25.  The United Inn owner talked with the Dekalb County Police Department about how to reduce prostitution on the property.  United Inn 30(b)(6) Dep., Feb. 22, 2023 at 110:16-111:24, 121:2-9.  United Inn believes that signs of sex trafficking and prostitution are the same and include traffic in and out of a hotel room. United Inn 30(b)(6) Dep., Feb. 22, 2023 at 53:25-55:7; Ashar Islam Dep., Feb. 22, 2023 at 58:9-14, 185:18-25.  United Inn has called the Dekalb County Police Department "many times" about rooms with "too much traffic going on."  United Inn 30(b)(6) Dep., Feb. 22, 2023 at 110:24, 121:2-21, 185:18-25.[6]  United Inn did not post anti-trafficking notices at its property,

---

[6] According to United Inn's manager, "inappropriate clothes" also can be a sign of commercial sex activity.  Ex. 14, Ashar Islam Dep., Feb. 22, 2023 at 58:4-6.

a misdemeanor under O.C.G.A. § 16-5-47.  *See* Ex. 21, Dft's Resp. to Pl's 2nd RPDs at 5.

During the relevant period, United Inn had 36 surveillance cameras at the hotel, including cameras angled at the parking lots and Memorial Drive.  Ex. 18, United Inn 30(b)(6) Depo., Feb. 22, 2023 at 158:13-15, 214:4-10.  The United Inn only had one security guard who worked from 10pm – 2am.  Ex. 3, United Inn 30(b)(6) Dep., May 2, 2023 at 275:14-276:1, 277:9-15.  From 9pm – 10pm, and 2am – 6am, United Inn had only one person working at the hotel.  *Id.* at 49:17-50:7.  During that period, United Inn's one working employee was expected to manage the lobby, monitor surveillance cameras in the back office, and secure the property. Ex. 18, United Inn 30(b)(6) Dep., Feb. 22, 2023 at 48:22-50:7; 94:20-97:18, 156:24-159:9.  The Dekalb County Police Department recommended that United Inn hire additional security, but United Inn did not.  *Id.* at 113:23-114:3; 154:5-13, 155:19-22.

The United Inn did not conduct background checks on its staff, Ex. 3, United Inn 30(b)(6) Dep., May 2, 2023 at 380:18-381:2, did not review online reviews about the hotel outside of Google reviews, Ex. 18, United Inn 30(b)(6) Dep., Feb. 22, 2023 at 134:17-135:7, and did not monitor popular commercial sex websites, like

Backpage, for advertisements relating to commercial sex at the United Inn, *id.* at
123:8-25.

The United Inn was also dilapidated.  From 2017 – 2019, the United Inn
"regularly violated" Dekalb County Code.  *Id.* at 73:10-16.  In 2017, the Dekalb
County Code Enforcement Division cited the United Inn for 447 violations of the
Dekalb County Code.  *Id.* at 80:2-81:19.  In 2018, the United Inn pled guilty to 447
violations of the Dekalb County Code and paid a $60,345 fine. Ex. 20, NBI 002431-
002432; Ex. 3, United Inn 30(b)(6) May 2, 2023 at 344:11–346:12.

## LEGAL STANDARD

Summary judgment is only appropriate if the movant shows there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a
matter of law.  Fed. R. Civ. P. 56(a).  A material fact is any fact that "is a legal
element of the claim under the applicable substantive law which might affect the
outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).
A genuine dispute exists when "the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
242, 248 (1986).

In *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), the Eleventh
Circuit held that to state a claim for beneficiary liability under the TVPRA, a plaintiff

must plausibly allege that the defendant: (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.  *Id.* at 726.  Doc. 40 at 6-7.

## ARGUMENT

I. **United Inn is Not Entitled to Summary Judgment on G.W.'s TVPRA Claim Because of Disputed Issues of Material Fact.**

United Inn does not raise arguments about the first or third elements of G.W.'s TVPRA claim, and as such, has conceded those elements.  It only argues that it did not take part in a common undertaking involving risk and potential profit (element two) and that it did not have at least constructive knowledge that the common undertaking violated the TVPRA as to G.W. (element four).

a. ***Doe #1* is dispositive of United Inn's TVPRA Arguments.**

Before addressing United Inn's arguments as to the second and fourth elements of G.W.'s TVPRA claims, G.W. explains why United Inn's TVPRA arguments fail under the Eleventh Circuit's precedential ruling in *Doe #1*.

First, United Inn ignores that the allegations in *Doe #1* were insufficient *as to franchisors* but would have been sufficient *as to hotel owners-operators*.  21 F.4th

714.  The *Doe #1* plaintiffs were sex trafficking victims who sued the franchisors of the hotels at which they were trafficked.  The plaintiffs alleged that the franchisors participated in a venture because the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and the franchisors received reviews mentioning sex work occurring at the hotels.  The Eleventh Circuit held such allegations were insufficient to establish the franchisors' participation in a venture.  But Judge Jordan "emphasize[d]" in his concurrence that "***similar claims*** [to those raised against the franchisors] ***against those who own, operate, or manage the hotels in question*** (e.g., franchisees) ***would withstand a Rule 12(b)(6) motion to dismiss***."  *Doe #1*, 21 F.4th at 729 (emphasis added).

Judge Jordan's concurrence fits like a glove here.  G.W. sued the hotel owner-operator, United Inn, not a franchisor.  This Court previously explained that *Doe #1* concerns "a similar fact pattern to the fact pattern presented here."  Doc. 31 at 2.  And there is significant record evidence demonstrating that United Inn knew or should have known that A.G.'s and G.W.'s traffickers were trafficking the girls at United Inn, and, nevertheless, United Inn continued to rent rooms for profit to their traffickers.  In sum, United Inn misconstrues *Doe #1* and ignores that the Eleventh Circuit would have found "similar claims" to G.W.'s claims here sufficient against a hotel owner-operator, like United Inn.

Second, United Inn contends that G.W. "must demonstrate" that United Inn "actually took part in the common undertaking of sex trafficking."  Doc. 118 at 16. But as this Court has properly held, *in this case*, the second element "merely requires that a plaintiff allege that the defendant took part in a common undertaking or enterprise involving risk and potential profit." Doc. No. 39 at 7.

Nonetheless, to briefly rebut the same argument this Court already rejected in United Inn's motion to dismiss, *Doe #1* asks whether a hotel owner-operator "t[ook] part in a common undertaking or enterprise involving risk and potential profit," ***not*** a "common undertaking of sex trafficking." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021).[7]  A beneficiary TVPRA claim does not require proof that a hotel owner-operator itself perpetrated the crime of trafficking, because that would "make the [18 U.S.C. §1595(a)] 'should have known' language superfluous," 21 F.4th at 724, and it would eliminate the distinction between perpetrator and beneficiary liability under §1595(a).  As this Court has held: "the Eleventh Circuit

---

[7] The *Doe #1* court held the plaintiffs to proving a "sex trafficking venture" with the franchisors because that is what those plaintiffs alleged in their complaints. *Doe #1*, 21 F.4th at 727 ("every time the [*Doe #1*] complaints refer to ventures, they refer to 'sex trafficking ventures'").  The G.W. complaint is different.  For example, G.W. alleges that United Inn participated in the venture of running the hotel, renting rooms, and "collect[ing] fees for rental of those rooms" "notwithstanding that it knew or should have known that Plaintiff was a victim of sex trafficking" in those rooms." (Doc. 1 at 3).

has made clear that the definition of 'participation in a venture' is not the same as that found in the criminal provisions of § 1591(e)(4)." Doc. 40 at 6.

Here, G.W. has alleged and developed record evidence that United Inn knowingly profited from rental of rooms that it knew *or should have known* were used to traffic G.W. Proper review of *Doe #1* establishes that the evidence supporting G.W.'s allegations is sufficient to state a beneficiary claim against United Inn under §1595(a) and summary judgment is improper.

### b. G.W. Has Developed Record Evidence that United Inn Knew or Should Have Known that G.W. was Trafficked at the United Inn.

Not only does United Inn mischaracterize *Doe #1*, but it also incorrectly analyzes the second and fourth elements of a beneficiary claim as outlined in *Doe #1*. United Inn's argument on the fourth element, about what it "knew or should have known" concerning G.W.'s sex trafficking, amounts to a closing argument for trial and should be summarily rejected at the summary judgment stage because it ignores material disputed evidence.

To start, United Inn disregards that its 30(b)(6) representative agreed that high traffic into a hotel room can be a sign of commercial sex activity and that United Inn has 36 surveillance cameras for the purpose of monitoring activity at the hotel. Ex. 18, United Inn 30(b)(6) Dep., Feb. 22, 2023 at 53:25-55:7, 158:13-15, 214:4-10. It also ignores that its manager testified that "inappropriate clothes" can be another

sign of commercial sex activity.  Ex. 14, Ashar Islam Dep., Feb. 22, 2023 at 58:4-6.

United Inn's acknowledgement of these signs of commercial sex, and of its ability

to monitor its premises via cameras, creates a fact question about whether it knew or

should have known that A.G. and G.W., children, loitered at night in common areas

scantily clad so that a stream of men could pay them for sex at United Inn.

Further, United Inn overlooks this Court's previous finding that certain

"should have known" allegations were sufficient at the 12(b)(6) stage, (Doc. 40 at

10), which means that evidence supporting such allegations warrants a trial.  For

example, this Court previously found that allegations regarding G.W.'s minor age[8],

G.W. loitering on the property in scant attire with A.G., another minor, G.W.

soliciting men late at night with A.G. in common areas, the high volume of visitors

to A.G.'s and G.W.'s room, the disturbances caused by the sex buyers visiting late

at night in hotel common areas, A.G.'s and G.W.'s purchase of necessary condoms,

and the sex paraphernalia in the rooms in which they were trafficked, among other

factors, were "sufficient to infer" that United Inn "knew or should have known of

the sex trafficking."  Doc. 40 at 10.  Now that G.W. has developed evidence

---

[8] As this Court has previously held, United Inn "misstates the standard" relating to United Inn's awareness of Plaintiff's age.  Doc. 40 at 8.  "It is enough that Plaintiff allege that Defendant had a reasonable opportunity to observe her."  *Id.*

supporting such allegations, *see* Statement of Facts, United Inn's motion for summary judgment should be rejected.

Finally, United Inn's 7.5-page argument on constructive knowledge only cites two paragraphs from G.W.'s complaint (¶¶21, 24) and four pages from her deposition transcript (pages 40-41, 98-99). Rather than relying on the evidence, United Inn provides uncited, *ipse dixit* opinions about whether hotels can identify sex trafficking based on certain information it could observe about A.G. and G.W. United Inn's opinions about the feasibility of a hotel identifying minor victims based on certain information is not a summary judgment issue, it is a trial issue. In any event, G.W. is not claiming, as United Inn's brief suggests, that her scant clothing alone, or her lack of eye contact alone, or her condom purchases alone, or her loitering alone were necessarily indicative of minor sex trafficking on their own. But G.W. is contending that those factors, plus others supported by the record here are sufficient to, at a minimum, create a jury question about whether United Inn knew or should have known that G.W. was a minor victim of sex trafficking at United Inn. For these reasons, summary judgment is improper on the fourth TVPRA element.

### c. Substantial Evidence Shows that United Inn "Participated in a Venture"—*i.e.*, That it Took Part in a Common Undertaking or Enterprise Involving Risk and Potential Profit.

As to the second element of G.W.'s TVPRA claim, the only other element that United Inn challenges, United Inn claims that "Plaintiff has failed to produce any evidence that United Inn participated in her trafficking," and therefore summary judgment is appropriate. This argument fails too.

*First*, United Inn again misstates the second element of a TVPRA beneficiary claim. G.W. need not prove that United Inn "participated in her trafficking," (Doc. 118 at 17) but rather that United Inn "took part in a common undertaking or enterprise involving risk and potential profit." *Doe #1*, 21 F.4th at 726. *Second*, even if United Inn had stated the correct legal standard for participation in a venture (it did not), United Inn's argument that G.W. "failed to produce any evidence" of the hotel's participation in an "undertaking" "involving risk" of G.W. being sex trafficked and earning "potential profit" from the sex trafficking G.W. is specious. Contrary to United Inn's claim, there is substantial evidence of United Inn's awareness of *both* the overarching risk of its rooms being used for sex trafficking *and* the specific risk of profiting from room rentals to G.W.'s traffickers for the sex trafficking of G.W. *See* Statement of Facts. *Third*, United Inn says participation in a venture can be shown through evidence of a "direct association" between United

Inn and the trafficker, or of a "continuous business relationship" between United Inn and the trafficker, but disregards evidence proving the same.  (Doc. 118 at 17).

As to direct association: A.G. and G.W.'s traffickers, and their associates, went to the United Inn repeatedly, appeared to be familiar with the hotel staff, talked to hotel staff every day A.G. and G.W. were trafficked at United Inn, and talked to hotel staff by phone in the middle of the night when A.G. and G.W. were locked out of the room and convinced the staff to let A.G. and G.W. back into the room.  *See* Statement of Facts.

As to "continuous business relationship," the evidence shows that G.W. was trafficked at the hotel for approximately 6 days from June – July 2017, and that during that period, G.W.'s traffickers rented rooms that United Inn knew or should have known were used to traffic G.W.  Further, G.W. has established that her traffickers and their associates operated at the United Inn on an ongoing basis: they talked with United Inn staff every day they were trafficking A.G. and G.W. at United Inn; they had reserved rooms at United Inn prior to June 2017; they reserved rooms after June 2017; their room, with two minor girls in it, had used condoms and extra linens visible to housekeeping; they monitored G.W. on the property and directed her to loiter in hotel common areas wearing scant clothing to attract sex buyers; they

advised G.W. to buy necessary condoms at the front desk; the rooms they rented had a high volume of visitors, including commercial sex buyers. *See* Statement of Facts.

G.W.'s allegations on these issues were "sufficient" at the 12(b)(6) stage to show that United Inn "had rented a room to her trafficker in the past" and "knew or should have known that the trafficker[s] [were] presently engaged in sex trafficking with Plaintiff." Doc. 40 at 7. G.W. has presented evidence proving such allegations, so summary judgment is improper on the second element.

## II. Defendant Is Not Entitled to Summary Judgment On Plaintiff's Negligence Claim.

### a. United Inn Owed G.W. a Duty of Ordinary Care Because She Was An Invitee of United Inn.

G.W. was an invitee at United Inn because she was a customer of United Inn, and because she was a guest of invitees, *i.e.*, her traffickers and their associates.

The test to determine whether a person is an invitee is, in relevant part, whether she "had present business relations with the owner or occupier which would render [her] presence of mutual benefit to both[.]" *Freeman v. Eicholz*, 705 S.E.2d 919, 923 (Ga. App. 2011). G.W. was an invitee of United Inn because her presence was of "mutual benefit" to G.W. and United Inn. Indeed, G.W. frequented the store at United Inn to buy condoms, food, and other items. Ex. 1,

A.G. Dep. at 125:25-126:1, 142:6-11; Ex. 2, G.W. Dep. at 89:11-15, 98:6-24, 211:12-17.  While "[m]onetary consideration is not essential to invitee status," it is indicative of it.  *McGarity v. Hart Elec. Membership Corp.*, 307 Ga. App. 739, 743 (2011). G.W.'s payments to United Inn for goods gave her invitee status. *Cham v. ECI Management Corporation*, 311 Ga. 170 (2021) (quoting *Anderson v. Cooper*, 214 Ga. 164, 169 (1958).)  Further, G.W. was an invitee because she was a guest of invitees, her traffickers.  In a parallel trafficking case, Judge Geraghty said: "in most circumstances, an invitee's guest stands in the invitee's shoes and is herself an invitee."[9] That applies here.

United Inn also mistakenly argues that G.W. was not an invitee because she was not at United Inn "for any lawful purpose." Doc. 118 at 20.  Staying in a hotel room and buying goods from the hotel is a lawful purpose, and "any" lawful purpose is all that is required.  Judge Geraghty rejected the same argument in the parallel case, because the question under O.C.G.A. § 51-3-1 is not whether G.W. was engaged in unlawful activity, but whether United Inn "induced or led Plaintiff to come upon its property for a lawful purpose." Doc. 44 at 24. It did, by providing lodging and selling goods to her.  Therefore, G.W. was an invitee.

---

[9] *J.G. v. Northbrook Industries Inc.*, Civil Action File 1:20-cv-5233-SEG, Doc. No. 44.

### b. The Record Evidence Establishes that United Inn Had Superior Knowledge of the Risk of Minor Sex Trafficking on its Premises.

United Inn's claim that it is entitled to summary judgment based on G.W.'s "superior knowledge" of the risk of sex trafficking at United Inn fails as a matter of fact and law.  The owner testified that he is "more knowledgeable about the property than anybody else." Ex. 18, United Inn 30(b)(6) Dep., Feb. 22, 2023 at 34:19-24.  A.G. and G.W. did not choose to go to United Inn but were brought there by their trafficker and his associate (who had previously rented rooms at United Inn) and they had no foreknowledge of United Inn.  Ex. 1, A.G. Dep. at 56:8-57:15; Ex. 2, G.W. Dep. at 75:23-77:3. United Inn's argument that A.G had greater knowledge about the risk of trafficking at United Inn is wrong.

Even if G.W. did have superior knowledge (she did not), the rule still does not fit here.  While it is true that a plaintiff is not entitled to recover if the "undisputed evidence demonstrates that the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant," *Norman v. Jones Lang LaSalle Americas, Inc.*, 277 Ga. 621, 624 (2006), there are two applicable exceptions.

First, where the potential hazard arises from a third party's acts, a plaintiff's knowledge of the hazard only bars recovery when "[e]xposure to the known risk [was] voluntar[y], the result of deliberate choice." *Travis v. Quiktrip Corporation*, 339 Ga. App. 551, 555 (2016).  Assumption of risk "assumes that

25

the actor, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice[.]" *Id*.   G.W.'s trafficking at United Inn was not "voluntary," a "deliberate choice," free of "coercion," or made with "full knowledge."   At 17, G.W. did not choose to go to the United Inn; she was brought there by her trafficker and his associate.   G.W. also did not choose sex trafficking; she was deceived by her trafficker into believing that she would be making money as a dancer.  Ex. 1, A.G. Dep. at 38:3-39:16. G.W.'s trafficker intimidated G.W. into committing sex acts for money by threatening her, claiming to monitor her, and leading her to believe he was in a gang. Ex. 1, A.G. Dep. at 52:19-53:2, 137:3-22, 138:11-139:10; Ex. 2, G.W. Dep. at 85:8-14, 168:1 – 19. Her trafficker also collected and retained all the money that Plaintiff made from commercial sex acts.  This type of evidence creates a fact question as to whether G.W. made a voluntary choice free of coercion.   If she did not, then the superior knowledge rule does not apply.

Second, the superior knowledge rule does not apply because it requires proof that A.G. "failed to exercise ordinary care for her own safety."  *Gateway Atlanta Apartments, Inc. v. Harris*, 290 Ga. App. 772, 775, 660 S.E.2d 750, 754 (2008); *see, e.g.*, *Currie v. Chevron U.S.A., Inc.*, 266 Fed. Appx. 857 (11th Cir. 2008) (questions of material fact existed as to whether the plaintiff exercised ordinary care

when she did not attempt to flee under threatening, coercive circumstances). There is at least a fact question whether G.W. exercised ordinary care by not trying to escape from the armed, gang-affiliated, threatening traffickers who brought her to United Inn, where they appeared comfortable and to have been before.

## CONCLUSION

For these reasons, United Inn's motion for summary judgment should be denied.

This 18th day of January, 2024.

/s/ David H. Bouchard
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

/s/ Patrick J. McDonough
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing pleading has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certify that Plaintiff, through her attorneys, has served a true and correct copy of the foregoing pleading into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 18th day of January, 2024.

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*/s/ Patrick J. McDonough*
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone

(770) 822-9680 – Facsimile

*Attorneys for Plaintiff*