## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| G.W, | * | |
| | * | Civil Action No. |
| Plaintiffs, | * | 1:20-cv-05232-JPB |
| v. | * | |
| | * | |
| NORTHBROOK INDUSTRIES, | * | |
| INC., d/b/a UNITED INN AND | * | |
| SUITES, | * | |
| | * | |
| Defendants. | | |

### NORTHBROOK INDUSTRIES, INC. d/b/a UNITED INN AND SUITES' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Northbrook Industries d/b/a United Inn and Suites ("Defendant") and files this Reply in Support of Summary Judgment, showing this Honorable Court as follows:

### I.     INTRODUCTION

Defendant filed its Motion for Summary Judgment on December 12, 2023, demonstrating Plaintiff failed to provide sufficient evidence to support her claim for negligence and the Traffic Victims Protection and Reauthorization Act ("TVPRA"). In an attempt to keep her claims afloat, Plaintiff relies on generalities, contrived scenarios, and what-if thought experiments to keep Defendant in this action because Plaintiff has not been able to provide evidence that Defendant is liable for harm

136097989.1

caused by her traffickers alone. At its core, Plaintiff's claims cannot sustain any evidence that Defendant knew of Plaintiff's sex trafficking. Defendant responds to Plaintiff's response to Defendant's Motion for Summary Judgment as follows, incorporating by reference the facts set forth in its Motions and Briefs in Support of Summary Judgement.

## II.     Defendant is Entitled to Summary Judgment on Plaintiff's TVPRA Claim.
### a.  Plaintiff misconstrues Doe #1 precedent on TVPRA liability.

First, Plaintiff's argument for why Defendant should be considered a participant in sex trafficking misconstrues the ruling of the 11th Circuit as it is not grounded in its controlling authority. *Doe #1 v. Red Roof Inns, Inc.,* 21 F.4th 714 (11th Cir. 2021). Plaintiff's reliance on the concurrence is misguided and the Court's guidance on what constitutes participation is clear. Similar to Plaintiff in this case, Doe's allegations of the participation of a defendant rested only on vague allegations of signs and plaintiff-selected reviews from the Internet. Neither passed the Court's scrutiny.

> The Does chose to frame the ventures at issue as sex trafficking ventures in their amended complaints. Yet they have provided no plausible allegations that the franchisors took part in the common undertaking of sex trafficking. Their only allegations as to the franchisors' knowledge or participation in those sex trafficking ventures are that the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels. But observing something is not the

same as participating in it. Accordingly, the Does' Section 1595(a) beneficiary claims against the franchisors fail.

*Id*. at 727. Even Judge Jordan's concurrence, to which Plaintiff cites, recognizes that the participation element still requires a defendant to take part in a common undertaking or enterprise. *Id*. at 730. Again, the Plaintiff in this case fails to present any evidence to show that Defendant participated in a venture with Plaintiff's traffickers and fails to provide evidence that Defendant knew or should have known that they profited from sex trafficking. Thus, Plaintiff's allegation fail to sustain a beneficiary claim against Defendant and summary judgment is proper.  Even when viewing the evidence in the light most favorable to Plaintiff, it establishes, at most, that Defendant's efforts to identify and prevent instances of sex trafficking at the Property were ineffective to prevent her trafficking.   This does not equate to participation. *A.D. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-647-JES-NPM, 2023 U.S. Dist. LEXIS 150397, at *10-11 (M.D. Fla. Aug. 25, 2023).[1]

### b.  Plaintiff Failed to Present Evidence that Defendant Knew or Should Have Known Plaintiff was Trafficked.

---

[1] Defendant notes that although the court in *A.D.* ultimately found that although the plaintiff's claims against the franchisor must be dismissed, her claims against the hotel operator were allowed to proceed. However, this decision turned on the fact that the plaintiff had plausibly alleged a direct association between her trafficker and the hotel operator. *A.D.*, 2023 U.S. Dist. LEXIS 150397, at *13-14. As addressed later in this brief, however, Plaintiff has failed to establish that Defendant had a direct association or continuous business relationship with her traffickers.

Similarly, Plaintiff failed to produce evidence that Defendant had knowledge of Plaintiff's trafficking. In the first instance, Plaintiff has provided no evidence that Defendant had actual knowledge of her trafficking. Therefore, her TVPRA claim could only survive if she could produce evidence that Defendant had constructive knowledge of her trafficking. This she cannot do. In an effort to do so, however, Plaintiff relies on generalized testimony about the clothes she wore around the Property, the number of visitors to her room, condoms in her room, and other highly ambiguous "evidence" of her trafficking. Plaintiff's tenacious reliance on possible signs is no more than a distraction for the dearth of actual evidence presented in the case at hand. For Plaintiff to recover under 18 U.S.C. § 1595 , Plaintiff had to show that Defendant had actual or constructive knowledge of her trafficking. Constructive knowledge is that which "one using reasonable care or diligence should have." *Red Roof Inns*, 21 F.4th at 725 (quoting Constructive Knowledge, Black's Law Dictionary (11th ed. 2019)). In other words, Plaintiff must establish that but for Defendant's failure to exercise reasonable care in employing measures to identify and/or prevent sex trafficking at the Property, Defendant would have identified and/or prevented Plaintiff's trafficking. However, Plaintiff has produced no admissible evidence that Defendant could have taken any additional measures that

would have ensured that its staff identify and/or prevent her trafficking.[2] Whether or not Defendant's staff saw the supposed evidence of her trafficking is not the dispositive issue. Rather, the question is whether Defendant negligently failed to employ measures to ensure that if its staff saw this supposed evidence of her trafficking, they would appreciate it as such and take necessary measures to intervene. The evidence of record establishes that Defendant trained its staff to identify sex trafficking and report suspicions of criminal activity to law enforcement. Shareef Dep. at 183:4-185:25; 381:3-395:5; Islam Dep. at 147:24-151:9.[3] Plaintiff has produced no evidence that this training was so insufficient as to constitute a negligent failure to make efforts to identify and prevent sex trafficking at the Property. For all of her talk of what Defendant's employees should have recognized about her appearance, the condition of her room, etc., Plaintiff has made no effort whatsoever to establish what Defendant was legally required to do to ensure that its

---

[2] Although Plaintiff disclosed Darrell B. Chaneyfield as a security expert who asserted several purported expert opinions as to what measures Defendant should have taken to identify and prevent sex trafficking at the Property, Defendant asserts that none of these opinions are admissible evidence.  Defendant will fully brief the issue of these opinions' admissibility in its forthcoming *Daubert* motion. Absent this testimony from Darrell B. Chaneyfield, however, Plaintiff has produced no evidence that Defendant could have taken any additional measures that would have alerted them to Plaintiff's trafficking.

[3] For brevity's sake, Defendant has not refiled the deposition transcripts of Tahir Shareef and Ashar Islam, however, they have already been made a part of the record as exhibits to Defendant's Motion for Summary Judgment. (Doc. 117).

staff identified her as a sex trafficking victim. As such, Plaintiff has failed to produce any evidence that Defendant had constructive knowledge of her trafficking.

**c. Plaintiff failed to produce evidence that Defendant "participated in a venture" that it knew or should have known violated the TVPRA as to Plaintiff.**

Plaintiff failed to substantiate her allegation that Defendant "took part in a common undertaking or enterprise involving risk and potential profit" with her traffickers as required by Eleventh Circuit precedent. *Red Roof Inns, Inc.*, 21 F.4th at 726. In order to establish "participation" under this definition, Plaintiff must "connect the dots between the plaintiff's particular experience as a victim of trafficking and the specific defendant in the case." *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1235 (N.D. Ga. 2022) (quotation marks and citations omitted). Plaintiff may do so by (1) demonstrating a "direct association" between the beneficiary and the plaintiff's trafficker or (2) demonstrating a "continuous business relationship" between a defendant hotel and a sex trafficker. *Id.* Here, Plaintiff has failed to establish that Defendant participated in a venture with her traffickers under either standard.

i.   *Plaintiff failed to produce evidence that Defendant was directly associated with her traffickers.*

First, Plaintiff has produced no evidence that Defendant had a "direct association" with her traffickers.[4]  In an effort to convince this Court that the record evidence establishes a direct association between Defendant and her traffickers, Plaintiff relies on the following: (1) her traffickers went to the Property "repeatedly"; (2) her traffickers "appeared to be familiar with the hotel staff"; (3) her traffickers talked to hotel staff every day; and (4) her traffickers talked to hotel staff by phone in the middle of the night when Plaintiff had locked herself out of her room and "convinced" the staff to let her back into the room. (Doc. 127 at 22).  However, none of this evidence demonstrates that Defendant provided her traffickers with any services or accommodations beyond what a hotel guest should reasonably expect to receive from a hotel. Accordingly, none of this evidence establishes that Defendant directly associated with Plaintiff's traffickers.

First, Plaintiff's assertion that her traffickers went to the Property "repeatedly" does not support the conclusion that Defendant had a direct relationship with her traffickers. The evidence of record demonstrates that—over the course of the

---

[4] It is worth noting here that Plaintiff has produced no admissible evidence that Defendant ever appreciated that Dontavis Carr, Kikia Anderson, and Zaccheus Obie were associated with each other. So while Plaintiff attempts to characterize every interaction Defendant had with any one of these individuals as an interaction with all of these individuals, the record evidence does not demonstrate that Defendant had any reason to believe that a relationship existed between her traffickers. Therefore, when examining whether Defendant had a direct association with Plaintiff's traffickers, this Court must look to each interaction with each alleged trafficker individually.

Property's entire history of operation—Dontavis Carr ("Carr") rented rooms from Defendant for a total of eleven nights. (Doc. 127-11).[5]   The evidence of record further demonstrates that Kikia Anderson ("Anderson") rented rooms from Defendant on one single occasion. (Doc. 127-12). When considering the fact that the Property has dozens of guest rooms open to the public for rent 24 hours a day, 365 days a year, a grand total of twelve rentals to two individuals certainly does not evidence a direct association with those guests. Ultimately, the evidence merely establishes that Carr rented rooms at the Property from February 1-3, 2017, June 23-26, 2017 and July 2-4, 2017 while Anderson ("Anderson") rented one room on July 20, 2017. None of these rentals exceed the normal bounds of a typical hotel stay nor do they demonstrate that Defendant directly associated with either individual. Under Plaintiff's logic, any hotel that provides a single guest with multiple stays over the course of a year has elevated their relationship with that individual to something resembling a joint venture. This view, however, defies logic and cannot stand to establish a direct relationship between Defendant and Plaintiff's traffickers.

Second, Plaintiff's speculative testimony that her traffickers appeared to be familiar with Defendant's staff is inadmissible to establish that Defendant was, in

---

[5] Of these eleven purchases, only eight bear any relationship to Plaintiff's trafficking. (Doc. 127-11).

fact, familiar with her traffickers. *See Avenue CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) ("an inference based on speculation and conjecture is not reasonable"). In fact, the testimony Plaintiff relies on to support this speculative assumption affirmatively demonstrates that neither she nor A.G. had any idea whether her traffickers were actually familiar with Defendant's staff. G.W. Dep. at 91:7-25 and 213:5-10; A.G. Dep. at 132:14-134:3.  As such, the evidence of record does not demonstrate that Plaintiff's traffickers were so familiar with Defendant's staff to establish a direct association between the two.

Next, Plaintiff similarly fails to set forth any admissible evidence that her traffickers interacted with Defendant's staff every day.  As an initial matter, Plaintiff has cited no evidence in support of this assertion and it can be discarded on this basis alone. To the extent that Plaintiff intends to rely on her own testimony regarding what she believed her traffickers to be doing while she remained in the guest room, any such testimony would be inadmissible speculation.  Accordingly, Plaintiff has produced no evidence that her traffickers interacted with Defendant's staff "every day".[6] And even if there were evidence to this effect, interacting with hotel staff to pay for rooms, request typical guest services, etc., would not establish a direct

---

[6] Moreover, to the extent that Plaintiff or A.G.'s testimony can be construed as recounting information provided to them by their traffickers about their traffickers' whereabouts or activities outside of their presence, any such evidence would constitute inadmissible hearsay.

association between Defendant and Plaintiff's traffickers. Moreover, "every day" in the context of Plaintiff and A.G.'s testimony—at most—only amounts to nine days over the course of two months.   Therefore, even if Plaintiff's traffickers had interacted with Defendant's staff as alleged, this still would not evidence a direct association. This is especially true considering that there is no evidence of record demonstrating that Plaintiff's traffickers ever alerted Defendant's staff to their true intentions for renting rooms at the Property.

Finally, the fact that Plaintiff's traffickers spoke to Defendant's staff and permitted them to unlock their rented room for Plaintiff on one occasion does not evidence a direct association between Defendant and Plaintiff's trafficker.  Assisting a guest with a lost key falls squarely within the realm of hotel guest services.

Simply put, Plaintiff has failed to set forth any evidence that Defendant directly associated with her traffickers.  As courts in this District have previously recognized, participation in a venture predicated on direct association must involve some affirmative act by the defendant in furtherance of the plaintiff's trafficking. *See e.g.*, *K.H. v. Riti, Inc.*, No. 1:22-CV-3404-MHC, 2023 U.S. Dist. LEXIS 93374, at *10 (N.D. Ga. Apr. 17, 2023) (drawing a distinction between the plaintiff's allegations as to the defendant's participation in her trafficking and others in which the plaintiff alleged that the defendants' employees had taken an active role in

facilitating sex trafficking). In fact, this Court relied, in part, on Plaintiff's allegation that Defendant's employees acted as lookouts for her traffickers in denying Defendant's Motion to Dismiss. (Doc. 40). However, Plaintiff failed to produce any evidence to substantiate this allegation. As such, Plaintiff has failed to present any evidence that Defendant directly associated with her traffickers and cannot establish that Defendant participated in a venture that it knew or should have known violated the TVPRA as to Plaintiff based on a direct association venture theory.

      ii.    *Plaintiff has failed to produce any evidence that Defendant maintained a continuous business relationship with her traffickers.*

Similarly, Plaintiff has failed to establish that Defendant maintained a continuous business relationship with her traffickers. Notably, Plaintiff has failed to produce any admissible evidence that her traffickers utilized the Property for sex trafficking prior to her trafficking. And as previously demonstrated, the evidence of record merely establishes that Defendant rented rooms to Plaintiff's traffickers for a total of twelve nights over the course of an entire year. Even this twelve-rental total is misleading because the rooms had to be reserved daily as opposed to being rented for an entire stay. When examining these rentals more closely, it is apparent that these rentals can be separated into four "stays" at the Property for a total of twelve nights.

The first stay occurred in February of 2017 and bears no relationship to Plaintiff's trafficking. During this stay, Carr rented a room for three consecutive days, renewing the room rental each day. (Doc. 127-11). Notably, there is no evidence to suggest that Defendant had any reason to believe Carr was engaged in any sex trafficking activities at the Property during this February stay nor is there any evidence that Carr was, in fact, engaged in sex trafficking activities during this stay. Neither he nor anyone else associated with Plaintiff's trafficking returned to the Property until June of 2017, nearly six full months later.

Because there is no evidence that Carr's February stay alerted (or should have alerted) Defendant to any risk that he would perpetuate sex trafficking crimes at the Property, Defendant had no reason to believe that renting a room to him in June of 2017 bore any risk of sex trafficking. This second stay, lasted from June 23-26, 2017, comprising four consecutive rentals. (Doc. 127-11).  Plaintiff claims that she was trafficked, and exhibited signs of her trafficking during this stay.

The third stay lasted from July 2-4, 2017.  Again, Plaintiff claims that she was trafficked and exhibited signs of her trafficking during this stay.

The fourth stay lasted from July 20-21, 2017. However, Anderson made the room reservations for this stay. Therefore, because there is no evidence that Defendant had any reason to associate Anderson with Carr, this final stay cannot

12

contribute to the establishment of a continuous business relationship venture. Even if Defendant had associated the alleged signs of Plaintiff's trafficking with Carr, there is no evidence demonstrating that Defendant could have or should have then connected the prior suspected trafficking to Anderson.

The continuous business relationship venture theory depends entirely on the plaintiff's ability to demonstrate that the beneficiary had actual or constructive knowledge of the plaintiff's trafficking. *See e.g.*, *J.G.*, 619 F. Supp. 3d at 1236 (relying on plaintiff's allegations that the defendant knew or should have known that her traffickers had trafficked women at the property before but chose to rent rooms to them anyway in ruling that the complaint plausibly alleged a continuous business relationship); *see K.H*, 2023 U.S. Dist. LEXIS 93374, at *10 (holding that plaintiff did not plausibly allege a continuous business relationship venture where her complaint failed to plausibly allege that the defendant had constructive knowledge of her trafficking).   Indeed, this Court relied on Plaintiff's allegations as to Defendant's constructive knowledge in ruling that she had plausibly alleged a continuous business relationship venture. (Doc. 40 at 7). Therefore, Plaintiff must set forth evidence that Defendant had actual or constructive knowledge that her traffickers had a history of sex trafficking in order to establish a continuous business relationship venture.  With this in mind, neither the first stay (Carr's February 2017

rental) or the fourth stay (Anderson's July 2017 rental) can contribute to establishing a continuous business relationship venture between Defendant and Plaintiff's traffickers. As previously stated, there is no evidence that Carr's February, 2017, rentals should have put Defendant on notice of his sex trafficking activities. Furthermore, there is no evidence establishing Defendant knew or should have known Anderson was associated with Plaintiff's traffickers. Accordingly, Plaintiff can only rely on the second stay (June 23-26, 2017) and third stay (July 2-4, 2017) in her attempts to establish a continuous business relationship between Defendant and her traffickers.  However, renting a room from a hotel on two occasions for a total of seven days can hardly establish a continuous relationship with a hotelier. Black's Law Dictionary defines "continuous" as "[u]ninterrupted; unbroken; not intermittent or occasional; so persistently repeated at short intervals as to constitute virtually an unbroken series." *See* Continuous, BLACK'S LAW DICTIONARY (4th ed. 1968). Under this definition, two separate stays at a hotel simply cannot establish a continuous relationship between Plaintiff's traffickers and Defendant. Such contact could only be reasonably described as occasional. And as previously demonstrated in the sections above, Plaintiff similarly cannot establish that Defendant had constructive knowledge of her trafficking. Therefore, she cannot establish that a continuous relationship existed between Defendant and her traffickers.

14

By contrast, the First Circuit in *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), held that the plaintiff stated a TVPRA claim against a hotel operator where she "plausibly alleged that the operator's association with the plaintiff's sex trafficker was a 'venture' because her abuser 'had prior commercial dealings with the [operators], which the parties wished to reinstate for profit.'" *Red Roof Inns, Inc.*, 21 F.4th at 725 (alteration in original) (quoting *Ricchio*, 853 F.3d at 555). The court in *Ricchio* summarized the plaintiff's allegations that plausibly pleaded a venture between the trafficker, McLean, and the hotel operators, the Patels, as follows:

> McLean enticed Ricchio to drive from Maine to the [motel] in Massachusetts, where he took her captive and held her against her will. Over the course of several days there, McLean physically and sexually abused Ricchio, repeatedly raping her, starving and drugging her, and leaving her visibly haggard and bruised. He told her that he was grooming her for service as a prostitute subject to his control. McLean had prior commercial dealings with the Patels, which the parties wished to reinstate for profit. McLean and Mr. Patel enthusiastically expressed this intent by exchanging high-fives in the motel's parking lot while speaking about "getting this thing going again," in circumstances in which McLean's coercive and abusive treatment of Ricchio as a sex slave had become apparent to the Patels. Ms. Patel had not only nonchalantly ignored Ricchio's plea for help in escaping from McLean's custody at the motel but, when visiting the rented quarters to demand further payment, had shown indifference to Ricchio's obvious physical deterioration. And in plain daylight view of the front office of the motel, either of the Patels on duty there would have seen McLean grab Ricchio, kick her, and force her back toward the rented quarters when she tried to escape.

15

*Ricchio*, 853 F.3d at 555. Here, unlike *Ricchio*, Plaintiff has not produced any evidence that Defendant made specific efforts to create an ongoing association with her traffickers.  In sum, the evidence merely demonstrates that Defendant operated a legitimate hotel business and Plaintiff's traffickers took advantage of that business by using it as a venue for sex trafficking. Accordingly, Plaintiff has failed to demonstrate that Defendant participated in a venture that it knew or should have known violated the TVPRA as to Plaintiff under a continuous business relationship venture theory.

### III. Defendant is entitled to Summary Judgment on Plaintiff's Negligence claim

### a. Plaintiff was not an Invitee of United Inn and was not owed a Duty of Ordinary Care.

Plaintiff was not an invitee at the time of her injury as she was not present in the guest rooms of the Property for a lawful purpose. *See* O.C.G.A. §§ 16-6-9 and 16-5-46. Plaintiff alleges that she had a "present business relationship" that "provided mutual benefit" to Plaintiff and Defendant but can point only to her condom purchases at the store in the front of property. She claims that her convenience store purchases granted her invitee status. However, her trafficking did not occur in the lobby in full view of everyone, it occurred behind the closed doors of a guest room. To the extent Plaintiff relies on her convenience store purchases to establish her invitee status, that invitation would only extend to the lobby where she

purchased these items. As soon as she returned to her guest room, she would have exceeded the scope of her invitation and become a licensee at best. *See Armstrong v. Sundance Entm't*, 179 Ga. App. 635, 636 (1986) ("If an invitee does not go beyond that part of the premises to which, as it reasonably appears to him the invitation extends, he does not become a licensee. If, however, he does go beyond that part to which he is invited, he becomes a mere licensee"). As such, even if Plaintiff did obtain invitee status for the brief moments in which she made purchases in the convenience store, she lost that status as soon as she strayed from the lobby. More importantly, Plaintiff's injury did not occur in the lobby or in relationship to her convenience store purchases, it occurred in the guest rooms, where she was a mere licensee. As such, Plaintiff has produced no evidence that she was an invitee at the time of her injury and, therefore, the only duty Defendant owed to her at the time of her injury was to not cause her willful or wanton injury.

Plaintiff incorrectly cites *Cham v. ECI Mgmt. Corp.* to support her stretch of statute. 311 Ga. 170 (2021). *Cham* quotes not *Anderson v. Cooper* as stated in Plaintiff's response, but instead *Esposito v. Pharr Court Assocs. L.P.* which states the following:

> The mutuality of interest required to make one an invitee upon the premises of another does not mean that there must be a commercial business transaction between the parties. It is sufficient to show that each party is moved **by a lawful purpose or interest** in the object and

17

subject matter of the invitation. The visitor is an invitee if the enterprise is mutual, **each lawfully interested therein** or there being a common interest or mutual advantage involved. A monetary consideration is not essential.

*Esposito v. Pharr Court Assocs., L.P.*, 334 Ga. App. 434, 437 (2015)(emphasis added)(quoting *Candler Gen. Hosp. v. Purvis*, 123 Ga. App. 334, 336 (1971)). Nowhere does this case give invitee status to those on hotel property for an unlawful purpose or intent. Plaintiff also stretches *McGarity v. Hart Electric Membership Corp.*; while monetary consideration may not necessarily be essential, the Court of Appeals still held that invitee status hinges on "whether the person coming onto the premises had present business relations with the owner or occupier which would render his presence of mutual benefit to both, or whether his presence was for his own convenience, or was for business with someone other than the owner or occupier." 307 Ga. App. 739, 743 (2011). Neither support the idea that buying from a store inside the lobby of a motel creates mutual benefit for the illegal use of motel room for commercial sex acts. Further, Plaintiff, who alleges that she was taken to the Property against her will by her traffickers, has provided no evidence that Defendant "induced or led Plaintiff to come on to the property for a lawful purpose." If Plaintiff was only on property by the control of her traffickers, she cannot have been there by being "induced or led" by Defendant itself per O.C.G.A. § 51-3-1. Therefore, Plaintiff was not an invitee of the property.

18

**b. Plaintiff has provided no evidence of United Inn's superior knowledge of Plaintiff's sex trafficking.**

Even if Plaintiff could establish invitee status (which she cannot), Plaintiff must still demonstrate that Defendant had superior knowledge of an unreasonable risk of harm to the invitee. *Robinson v. Kroger Co.,* 268 Ga. 735, 740 (1997); *see, Travis v. QuikTrip Corp.,* 339 Ga. App. 551, 553 (2016) (the fundamental basis for an owner or occupier's liability is that party's superior knowledge of the hazard encountered by the plaintiff). Here, Plaintiff's cannot point to any evidence to support her claim that Defendant had superior knowledge of sex trafficking at the Property. Plaintiff claims that Defendant had more knowledge about the Property itself but that does not equate to knowledge of the risk that Plaintiff's traffickers would force her to have sex at the Property. In addition, Plaintiff knew before ever setting foot on the Property that her traffickers were taking her to Property with the intention of performing commercial sex acts because Plaintiff has already performed those acts in a different hotel immediately prior to her stay at the Property. So while there is plenty of evidence from Plaintiff herself of her own knowledge of what her traffickers propensities and intent at the Property were, there is no evidence that Defendant was ever made aware of Plaintiff's trafficker's intentions. And even to the extent that this Court construes Defendant's generalized knowledge of crime at the Property as putting it on notice of the risk of crime, any such knowledge is

certainly inferior to Plaintiff's direct and actual knowledge that her traffickers were taking her to the Property for the express purpose of trafficking her. Therefore, Defendant is entitled to judgment in its favor as a matter of law on Plaintiff's state law negligence claim.

### IV.   **CONCLUSION**

Based on the foregoing evidence, arguments, and authority, Defendant respectfully requests that this Court issue an ORDER granting its Motion for Summary Judgment and dismissing Plaintiff's Complaint with prejudice.

Respectfully submitted this 8th day of February, 2024.

*Signature on following page*

LEWIS BRISBOIS BISGAARD
& SMITH LLP
Bank of America Plaza
600 Peachtree Street, NE, Suite 4700
Atlanta, Georgia 30308
(404) 348-8585
(404) 467-8845 Facsimile
Adi.Allushi@lewisbrisbois.com
Cameron.Mobley@lewisbrisbois.com
Cecilia.Walker@lewisbrisbois.com

/s/ Cameron A. Mobley
ADI ALLUSHI
Georgia Bar No. 852810
CAMERON A. MOBLEY
Georgia Bar No. 613048
CECILIA WALKER
Georgia Bar No. 916346

*Attorneys for Defendant*
*Northbrook Industries, Inc. d/b/a*
*United Inn and Suites*

21

## **RULE 7.1D CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

Dated: February 8, 2024

/s/ Cameron A. Mobley
CAMERON A. MOBLEY

22

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2024, I electronically filed the foregoing

***Defendant's Reply in Support of its Motion for Summary Judgment*** with the Clerk

of Court using the CM/ECF filing system which will automatically send e-mail

notification of such filing to the following counsel of record:

David H. Bouchard
Finch McCranie, LLP
229 Peachtree Street, NE, Suite 2500
Atlanta, GA 30303
david@finchmccranie.com

*Attorney for Plaintiff*

*/s/ Cameron A. Mobley*
CAMERON A. MOBLEY
Georgia Bar No. 613048

*Attorney for Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites*

23