UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| G.W., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | |
| | ) | 1:20-cv-5232-JPB |
| NORTHBROOK INDUSTRIES, INC., | ) | |
| d/b/a UNITED INN AND SUITES, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION FOR RECONSIDERATION AND REQUEST FOR ORAL ARGUMENT

This Court entered an Order absolving Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites ("United") of all legal responsibility for the sex trafficking of Plaintiff that undisputedly took place at the hotel when she was a minor. Doc. 148. The Court should reconsider that Order. The record contains more than enough evidence, when construed in the light most favorable to Plaintiff, to merit a jury trial on her claims under the Trafficking Victims Protection and Reauthorization Act ("TVPRA") and Georgia negligence law. The Court's Order deprives Plaintiff of her day in court. To avoid manifest injustice, the Court should hold oral argument and reconsider—and reverse—its Order absolving United.

## LEGAL STANDARD

The Court can reconsider its ruling if Plaintiff shows either "(1) the discovery

of new evidence; (2) an intervening development or change in the controlling law; *or* (3) the need to correct a clear error or manifest injustice." *Pediatric Med. Devices, Inc. v. Ind. Mills & Mfg., Inc.*, 961 F. Supp. 2d 1241, 1243 (N.D. Ga. 2013) (Batten, J.) (emphasis added). Any of these grounds justifies reconsideration. And both the second and third apply here.

## ARGUMENT

### I.   The Court's dismissal of Plaintiff's TVPRA civil-beneficiary claim rests on clear errors of law and fact and constitutes a manifest injustice.

The Court's conclusion that "Plaintiff has failed to satisfy the participation element of her beneficiary claim" against United is error. Doc. 148 at 17. It rests on the mistaken premises that Plaintiff must show that United: "acted pursuant to the common goal of the trafficking venture," *id.* at 14, "did more than rent rooms to traffickers and observe trafficking at their property," *id.* at 13 n.3, and "took steps with Plaintiff's traffickers to facilitate the traffickers' illicit activities," *id.* at 14. The Court's ruling contravenes the text of the TVPRA on civil-beneficiary claims, disregards binding Eleventh Circuit precedent, and ignores that circumstantial evidence must be viewed in the light most favorable to Plaintiff. Guided by persuasive, non-binding authority, the Court made sufficient conditions necessary and conflated civil-*perpetrator* claims with civil-*beneficiary* claims.

In effect, the Court required Plaintiff to prove too much to proceed to trial on her TVPRA civil-beneficiary claim against United. Plaintiff doesn't have to prove

that United was in a sex-trafficking venture with her traffickers to prove participation in a venture for a civil-beneficiary claim. Plaintiff also doesn't have to prove that the hotel itself violated 18 U.S.C. § 1591(a)(1)—by having an employee knowingly involved in her trafficking or otherwise—to prove participation in a venture for a civil-beneficiary claim. Instead, to prove United's "participation in a venture" for her civil-beneficiary claim, Plaintiff need only have evidence from which a reasonable jury could find that United took part in running the hotel it owned and operated and rented rooms for profit. She has that and more.

The Court's manifest errors in its TVPRA analysis merit reconsideration.

**A.    The Court's analysis of "participation in a venture" contradicts the statutory text, *Doe #1*, and ignores that all reasonable inferences from evidence (including circumstantial evidence) must be drawn in favor of the non-movant.**

The Court's ruling that Plaintiff cannot satisfy the "participation in a venture" element of her TVPRA civil-beneficiary claim under 18 U.S.C. § 1595 is manifestly wrong. It runs afoul of the Eleventh Circuit's binding interpretation of "participation in a venture" in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021).

In *Doe #1*, the Eleventh Circuit held that "participation in a venture" for a TVPRA civil-beneficiary claim requires only that the defendant "take part in a common undertaking involving risk or profit." 21 F.4th at 727. The "common undertaking" need not be a sex-trafficking venture. Judge Jordan emphasized this point in his concurrence: "[T]he participation element of a 'beneficiary' claim under § 1595(a)

3

. . . requires only that a defendant take part in a common undertaking or enterprise involving risk and profit." *Id.* at 730 (Jordan, J., concurring). "[T]he participation element of a 'beneficiary' claim under § 1595(a) does not require that the defendant in question have participated in the sex trafficking act itself." *Id.*; *see also Does 1–4 v. Red Roof Inns, Inc.*, 1:21-cv-4278-WMR, 2023 WL 5444261, at *3 (N.D. Ga. Aug. 10, 2023) (After *Doe #1*, "a person can be liable without participating in the sex trafficking act itself.").

United's operation of a hotel that rented rooms to Plaintiff's traffickers meets the "participation in a venture" element of a beneficiary claim under *Doe #1*. By renting rooms to Plaintiff's traffickers for money, United engaged in a business deal with Plaintiff's traffickers—providing them a room for "profit" with a level of "risk" (that traffickers would traffic out of the room).

Yet here, the Court rejected *Doe #1*'s holding and concluded that the Eleventh Circuit didn't empower plaintiffs to "automatically" satisfy "the participation element" whenever "the defendant is a hotel operator or other commercial entity, irrespective of whether the entity had any involvement in the plaintiff's trafficking." Doc. 148 at 17. That conclusion violates *Doe #1*'s plain reading of "participation in a venture" and is wrong for two more reasons.

*First*, United *was involved* in Plaintiff's trafficking. The evidence shows that United knew or should have known that it rented rooms for a fee in which Plaintiff

was trafficked as a minor. In a beneficiary case, that is enough to merit a jury trial.

The Court says that Plaintiff must show that "United did more than rent hotel rooms to the traffickers with the knowledge that sex trafficking occurred at its hotel." Doc. 148 at 17 n.5. But Plaintiff has shown more. She showed that United knew or *should have known* specifically *that **she** was trafficked for days in the rooms rented to her traffickers* (not just that "sex trafficking occurred at its hotel" generally). *Id.* The Court also says that "there is *no evidence* that United took steps with Plaintiff's traffickers to facilitate the traffickers' illicit activities." *Id.* at 14 (emphasis added). But that *ignores extensive direct and circumstantial evidence* giving rise to the reasonable inference that United staff aided Plaintiff's traffickers.

For example: Plaintiff's seasoned traffickers, who were well known to FBI and later prosecuted by DOJ, strategically selected Atlanta hotels to traffic minors. They returned repeatedly to United, a hotel that the Dekalb Police Department knew to be a "problem" hotel with "common" commercial-sex activity and multiple pimps operating at the hotel. In a high-crime area, United garnered 90% of the online commercial-sex ads for hotels, including ads for minors. United had an extensive history of violent and commercial-sex crimes. United hired staff without doing background checks.[1] United did not post required anti-trafficking notices (a crime in Georgia).

---

[1] Plaintiff has a pending Motion for Sanctions on United's failure (or inability) to identify its staff, which limited Plaintiff's opportunity to develop evidence of United aiding Plaintiff's trafficking. Granting summary judgment ostensibly rewards

United routinely violated DeKalb County Code. United did not follow the DeKalb Police Department's recommendation to get more security. Plaintiff believes her traffickers talked with United staff for about 15–20 minutes each day. Meanwhile, the girls who the traffickers brought to the hotel were openly exploited in common areas purportedly monitored by cameras played in the lobby and in rooms visited by United staff. Those facts give rise to the "reasonable inference" that United aided Plaintiff's trafficking.

Plaintiff G.W. formed precisely that inference:

Q. Do you have any information, knowledge, or evidence that anyone at the United Inn acted as a lookout for PD?
A. Like, do I have concrete knowledge of that?
Q. Yes, ma'am.
A. No. I don't.
Q. But you think that's what was occurring. Is that fair to say?
A. Yes. That's fair to say.
Q. And is that because of what you told me earlier about PD disappearing for 15 or 20 minutes?
A. *Yes. And also based on the way I realized that he was very familiar with every single place that he took us to. And United Inn and Suites was the most frequent place that we went to*.
Q. Okay. So in this month -- roughly a little over a month -- that you were trafficked, you believe that you were trafficked the most at United Inn?
A. *I believe that I never went to any hotel three times besides, you know, the Inn and Suites*.

Doc. 119-2 at 174 (emphasis added).[2]

_____

Defendant's discovery misconduct.

[2] Plaintiff did not flag this testimony in her summary-judgment response because *Doe #1* does not require "more" (such as "lookout" evidence) and Plaintiff cited

J.G. was 16 years old when she was sex trafficked at United—one year after Plaintiffs A.G. and G.W. were trafficked there. While at United, J.G. observed United staff acting as a lookout for her trafficker and making special accommodations for his illicit business. Three minor sex-trafficking victims bring civil-beneficiary claims against United, the hotel where they were sold for sex in 2017, 2018, and 2019. Whether their respective § 1595(a) beneficiary claims survive summary judgment cannot turn on whether each has direct evidence in their cases of United staff acting as a lookout for their traffickers. Such direct evidence stems from chance observations made between instances of rape and abuse. And requiring it ignores the value of circumstantial evidence and the mandate that all reasonable inferences be drawn in Plaintiff's favor at summary judgment.[3]

*Second*, the Court conflates civil-*perpetrator* and civil-*beneficiary* claims. Whether United rented rooms with "the common goal of" trafficking Plaintiff may be necessary to establish perpetrator liability, but it is not necessary to establish

---

sufficient direct evidence to meet *Doe #1*. If "more" is required under *Riti*—which is discussed later in the brief and which opinion was issued after the parties submitted Rule 56 briefing—then direct *and* circumstantial evidence of "more" must be considered and all reasonable inferences drawn therefrom in favor of Plaintiff.

[3] The Court makes a factual assessment that "a total of only eleven nights in three different months at a property that has numerous rooms for rent 365 nights a year" is inadequate. Doc. 148 at 16. That is a jury question. And it ignores reasonable inferences from the evidence, like Plaintiff's seasoned traffickers used other people or other names to rent rooms, so it was not "only eleven nights."

beneficiary liability. *Contra* Doc. 148 at 14. If United had the "common goal of" trafficking Plaintiff with her traffickers, then it was *not* a beneficiary with constructive knowledge of her trafficking. The Court's "common goal" framework eviscerates the "should have known" standard that Congress created in the TVPRA's 2008 amendment and reverts § 1595(a) to the pre-2008 form that allowed perpetrator claims against criminal beneficiaries of sex trafficking. If all civil beneficiaries were criminal perpetrators, the 2008 amendment would have been unnecessary. But Congress chose to expand the statute beyond perpetrators to beneficiaries with constructive knowledge.

### i.   Error 1: Misapplying *Doe #1*.

The Court's legal analysis strips the Eleventh Circuit's holding that the plaintiffs in *Doe #1* didn't adequately plead "participation in a venture" of its factual and legal context.

In *Doe #1*, the district court dismissed plaintiffs' civil-beneficiary claims against franchisors of hotels at which they were sex trafficked for failure to state a claim. *Doe #1*, 21 F.4th at 721. On appeal, "[t]he only question" was "whether the Does have plausibly alleged that the franchisors are liable." *Id.* at 723. After defining "participation in a venture" in § 1595(a),[4] the court rephrased the relevant inquiry as

---

[4] "[Taking] part in a common undertaking or enterprise involving risk and potential profit." *Doe #1*, 21 F.4th at 725.

"whether the Does plausibly alleged that the franchisors took part in the common undertaking of sex trafficking with hotel employees, management, owners, and sex traffickers." *Id.* at 726.

While the Eleventh Circuit focused on whether the plaintiffs plausibly pleaded a "common undertaking of sex trafficking," the court did so ***only*** because the plaintiffs pleaded that the "ventures" in which the franchisors allegedly participated were "sex trafficking ventures." *See id.* at 726 ("We begin with the venture the Does say that the franchisors participated in. Throughout their complaints, the Does alleged that the franchisors participated in 'sex trafficking ventures.'"); *see also id.* at 727 ("Again, every time the complaints refer to ventures, they refer to 'sex trafficking ventures.' And those ventures were alleged to include the sex traffickers themselves as participants."). Nowhere in *Doe #1* does the court say—much less hold—that all sex-trafficking victims must plead and prove that the defendant was involved in a sex-trafficking venture or "took some action in common with the traffickers or others at the hotel who violated the statute" to prevail on a civil-beneficiary claim under § 1595(a). *Contra* Doc. 148 at 9. The Court's contrary conclusion is manifest error. Unlike the plaintiffs in *Doe #1*, Plaintiff did not plead a sex trafficking venture here. Instead, Plaintiff pleaded that United participated in a venture to operate the hotel and rent hotel rooms for profit, with concomitant risk and profit.

In fact, the Eleventh Circuit was clear that a plaintiff does ***not*** have to "prove

that the defendant knowingly facilitated a violation" of the TVPRA to establish "participation in a venture," because that would make the "should have known" language in § 1595(a) "superfluous." *Id.* at 724. Thus, the Eleventh Circuit's only binding precedent on civil-beneficiary claims rejects the idea that Plaintiff must prove "more" or a "lookout" to prevail. A TVPRA victim has a right to recover from a defendant that *unknowingly* facilitates a violation, if the defendant should have—but did not—know about it.[5]

### ii.    Error 2: Misunderstanding the relevance of *Ricchio* to *Doe #1*.

The Court's legal analysis of "participation in a venture" also misconstrues the relevance of *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017) in *Doe #1*. Every count in the victim's complaint in *Ricchio* alleged that the defendants violated the *criminal* provisions of chapter 77.[6] That's why the phrase "knew or should have

---

[5] As this Court noted, the Eleventh Circuit said that "[o]bserving something is not the same as participating in it." *Doe #1*, 21 F.4th at 727, *quoted with approval* Doc. 148 at 9. Plaintiff agrees. Observing sex trafficking is not the same as participating in it. So when, as in *Doe #1*, the plaintiff alleges that **the venture is sex trafficking**, proof that the defendant observed sex trafficking doesn't necessarily prove participation in *that* venture—though it's sufficient to establish actual or constructive knowledge of trafficking. But when, as here, Plaintiff alleges that the venture is a hotel and renting rooms, operating the hotel and renting rooms is the epitome of participation.

[6] *See* Ex. 1, Compl. at 13–21, *Ricchio v. Bijal, Inc.*, No. 1:15-cv-13519 (D. Mass. Oct. 7, 2015) (claims 1, 2, 3, 5, 6, 7 alleging criminal violations, all of which require the defendant to act knowingly or recklessly). While each claim also included a civil-beneficiary claim under the "knew or should have known" standard, the First

known"—the knowledge needed for a § 1595(a) civil-beneficiary claim—appears only once in *Ricchio*: when the First Circuit quotes the statute in a footnote. *Id.* at 556 n.2.

*Ricchio* was relevant to *Doe #1* precisely because it involved sex-trafficking perpetrator claims. The plaintiffs in *Doe #1* chose to allege that the venture in which the hotel franchisors took part (and knowingly benefited from) committed sex trafficking. *See Doe #1*, 21 F.4th at 726. Because this *was* part of what Lisa Ricchio alleged too, *Ricchio*'s analysis of her factual allegations was relevant to *Doe #1*.

One cannot be in a sex-trafficking venture accidentally. The crime of sex trafficking lies at the core of a sex-trafficking venture. And it's impossible to knowingly benefit from taking part in a sex-trafficking venture without committing a crime. *See, e.g.*, § 1591(a)(2). So having chosen to plead the hotel franchisors involvement in sex-trafficking venture, the plaintiffs in *Doe #1* had to effectively meet the burden of pleading a perpetrator claim. And that's why *Doe #1* concluded that the allegations in *Ricchio* were the "kinds of allegations [that] would establish a hotel operator's participation in a venture with a sex trafficker." *Doe #1*, 21 F.4th at 726.

Yet nowhere in its opinion did the Eleventh Circuit say a "sex trafficking

---

Circuit's opinion focused on the perpetrator claims. This makes sense because if the perpetrator claims were plausibly alleged, any related civil-beneficiary claims were also plausibly alleged.

venture" was required in a civil beneficiary claim. In laying out the elements of the claim without reference to any "sex trafficking venture," the court in fact **said the opposite**. By failing to understand the relevance of *Ricchio* to *Doe #1*—and its significant differences from the allegations and facts here—the Court committed manifest error.

### iii.   Error 3: Treating *Riti* as persuasive authority.

The Court's legal analysis of "participation in a venture" also uncritically treats *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024), as persuasive authority. *See* Doc. 148 at 2. Because both the circuit opinion and district-court order in *Riti* misapply the holding of *Doe #1*, they should not be followed.

*Riti* is an unpublished Eleventh Circuit decision. The Court thus needed to determine whether Riti was correctly decided before citing it as a basis for its ruling. *See, e.g.*, *McNamara v. Gov't Emps. Ins.*, 30 F.4th 1055, 1060–61 (11th Cir. 2022) ("[A] district court shouldn't simply cite to one of our unpublished opinions as the basis for its decision without separately determining that it is persuasive. . . . [Because the unpublished decision] didn't properly analyze Florida law, [] the district court shouldn't have followed it.").[7] Not only did the Court not consider if *Riti* was

---

[7] Numerous published Eleventh Circuit opinions have concluded that unpublished opinions are wrong and thus should not have been followed. *See, e.g.*, *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) (rejecting conclusion of two unpublished opinions that relied on a "heightened standard for ascertainability" for class certification was inconsistent with circuit precedent and Rule 23's text); *United*

correctly decided, but a close reading also reveals that it was not.

*Riti* is wrong because it misreads *Doe #1*. *Riti* fails to recognize that the plaintiffs in *Doe #1* pleaded that the hotel franchisors participated in "sex trafficking ventures." *Doe #1* at 726; *see also id.* at 727. But as discussed above, the Eleventh Circuit was clear that "participation in a venture" for TVPRA civil-liability purposes requires only that the defendant "take part in a common undertaking involving risk or profit." *Id.* at 727. The common undertaking need not be a sex trafficking venture, as Judge Jordan emphasized in his concurrence. *Id.* at 730 (Jordan, J., concurring).

In *Riti*, the plaintiff didn't allege that the franchisee hotel was involved in a "sex trafficking venture" with the plaintiff's trafficker (unlike in *Doe #1*), yet the court held her to that standard: "K.H. has not plausibly alleged that Riti took part in a common sex trafficking undertaking or enterprise with Laye," the trafficker. 2024 WL 505063, at *3. In doing so, *Riti* misapplied *Doe #1* because allegations of a "sex trafficking venture" were not required. Instead, "a person can be liable without participating in the sex trafficking act itself." *Red Roof Inns*, 2023 WL 5444261, at *3 (applying *Doe #1*).

---

States v. Iguaran*, 821 F.3d 1335, 1336 & n.1 (11th Cir. 2016) (holding that criminal defendant's jurisdictional objection was reviewed for plain error based on two unpublished decisions was "wrong"); *Pellitteri v. Prine*, 776 F.3d 777, 781–82 (11th Cir. 2015) (holding that "conclusion" in unpublished decision "was mistaken on two fronts" and explaining why).

*Riti* is also wrong because requiring allegations (and later proof) that the defendant "participated in a common sex trafficking undertaking or enterprise" with the plaintiff's sex trafficker to plead (and later prevail on) a TVPRA civil-beneficiary claim erases the line between perpetrators and beneficiaries in 18 U.S.C. § 1595(a). *Contra* 2024 WL 505063, at *4. A "sex trafficking venture" is a "common undertaking of sex trafficking with hotel employees, management, owners, and sex traffickers." *Doe #1*, 21 F.4th at 726. Participating in a sex-trafficking undertaking or enterprise makes someone a sex-trafficking perpetrator. *See* § 1591(a)(1) (direct violator), § 1591(a)(2) (knowing beneficiary). A sex-trafficking beneficiary, on the other hand, is someone who "knowingly benefits, or attempts or conspires to benefit," from "a common undertaking or enterprise involving risk and potential profit" (i.e., "participation in a venture") that the person "knew or should have known has engaged in an act in violation" of the TVPRA. § 1595(a); *Doe #1*, 21 F.4th at 725. While a § 1595(a) claim requires that the plaintiff be a "victim" of a "perpetrator," the plaintiff need not pursue a claim against the perpetrator to recover against a beneficiary, and a beneficiary need not have committed a crime under the TVPRA to be civilly liable.

*Riti is also wrong* because it held that the difference between franchisors and companies that owned and operated the hotel (like United) was "immaterial." *Contra* 2024 WL 505063, at *3. This misreads *Doe #1*, which involved "claims against

franchisors which do not operate or manage the hotels at which sex trafficking allegedly occurred." 21 F.4th at 727 (Jordan, J., concurring). Indeed, Judge Jordan wrote separately to emphasize that *the same allegations* as in *Doe #1* would be sufficient against the owner or operator of a hotel. *Id.* at 729. Treating *Riti* as persuasive authority was thus manifest error.[8]

### B.   Plaintiff provided sufficient evidence to meet the fourth *Doe #1* element.

The Court didn't reach United's summary-judgment argument on the fourth element of *Doe #1* regarding whether United knew or should have known of Plaintiff's trafficking at United. Doc. 148 at 17 n.6. Insofar as the Court is inclined to take up this argument on reconsideration, the Court should find that Plaintiff has presented sufficient evidence to warrant a trial on Plaintiff's TVPRA claim based on the extensive evidence that United knew or should have known of her trafficking at United set forth in Plaintiff's Statement of Material Facts.

### C.   *Doe #1*'s interpretation of the elements other than participation in a venture is dicta.

"The only question" in *Doe #1* was "whether the Does have plausibly alleged that the franchisors are liable." *Id.* at 723. The court held "they have not." *Id.* at 726. That holding was based on the court's conclusion that the plaintiffs didn't adequately

---

[8] The Court's reliance on the other district-court orders was manifest error for the same reason: they also misapplied *Doe #1*.

plead that the hotel franchisors participated in the alleged venture. *See id.* at 726–27. Any statutory interpretation or construction beyond the second element of the four outlined in *Doe #1* was unnecessary to decide the appeal. Thus, the court's interpretation of the first, third, and fourth elements of a TVPRA civil-beneficiary claim is dicta. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 762 (11th Cir. 2010).

The elements of a TVPRA civil-beneficiary claim must be interpreted according to the plain meaning of the statutory text. In this case, that means Plaintiff needs evidence from which a reasonable jury could find (1) United knowingly benefitted, (2) from running the hotel and renting rooms for a fee; (3) the hotel harbored, maintained, or provided Plaintiff (i.e., engaged in an act that violated the TVPRA), a minor, sold for sex; and (4) United should have known—even if it did not actually know—that the hotel was harboring, maintaining, or providing Plaintiff, a minor, sold for sex. Because she has such evidence, her case should proceed to trial.

## II.    The Court's dismissal of Plaintiff's negligence claim is based on clear factual and legal errors and is a manifest injustice.

The Court clearly erred in its review of the factual record and in its application of Georgia law by finding that Plaintiff was a licensee, and, on that basis, dismissing Count II. Admissible material facts show both that United employees invited Plaintiff to stay at the hotel by welcoming her into a room and that Plaintiff was a repeat customer of the hotel. Both facts create a jury question on whether Plaintiff was an invitee at United. *See* O.C.G.A. § 51-3-1. Thus, summary judgment was improper

as to Count II, and this Court should reconsider its ruling on Count II.

The Court's finding that Plaintiff was a licensee ignores that, under Georgia law, a licensee is, by definition, *not* a customer and *not* invited to be on the premises. And the Court's reliance on the phrase "lawful purpose" in O.C.G.A. § 51-3-1 to conclude that Plaintiff was a licensee misses that (1) § 51-3-1 hinges on whether Plaintiff had "*any* lawful purpose"; (2) Plaintiff had no unlawful purpose; she was a minor victim of a crime, not the perpetrator of it, and crime victims can be invitees, regardless of the crime perpetrator's "purpose"; and (3) even if Plaintiff were a licensee when her trafficker brought her to United to exploit her, she was an invitee after buying goods and accepting United's invitation to stay there.

Because Plaintiff was a customer who was invited to stay at United, there is a jury question as to whether Plaintiff was an invitee owed a duty of ordinary care. Count II should proceed to trial.

A.    **Admissible evidence creates a jury question as to whether Plaintiff was an invitee at United because United invited her to stay at the hotel by welcoming her into a hotel room.**

"Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1.

Plaintiff's Statement of Material Facts highlights that United front-desk staff

"walked G.W. and A.G. back to the room in which they were being sex trafficked at the United Inn and unlocked the door and let them back inside." Doc. 103-1 at ¶ 34. That is the definition of "invitation." *See Invitation*, Black's Law Dictionary (11th ed. 2019) ("In the law of negligence, the enticement of others to enter, remain on, or use property or its structures; conduct that justifies others in believing that the possessor wants them to enter."). By walking Plaintiff to a hotel room that she was locked out of, opening the door, and letting her inside, United staff "entice[d]" Plaintiff "to enter, remain on, or use [its] property," or, alternatively, engaged in "conduct that justifies others in believing that the possessor wants them to enter." Even if such evidence did not give rise to a jury question about an "express . . . invitation" (it does), then it at least gives rise to a jury question about an "implied invitation." *See* Georgia Suggested Civil Pattern Jury Instructions § 60.630 ("An implied invitation is one that is extended because of the owner doing something or permitting something to be done, fairly indicating to the person entering that the entry and use of the property is consistent with the intents (or interests) and purposes of the owner.").

There is nothing "unlawful" about United inviting Plaintiff into a hotel room. § 51-3-1. By doing so, United gave Plaintiff lodging, a place to sleep, a place to shower, an opportunity to buy goods from United—all of which are "lawful purpose[s]." That Plaintiff was victimized in the room that United staff welcomed her into does not change that United invited her on the premises for "any lawful

purpose." That is sufficient under the plain language of § 51-3-1, which asks whether United, "by express or implied invitation, induce[d] or le[d] others to come upon his premises for **any** lawful purpose."

Because there is admissible record evidence that United invited Plaintiff to stay in a hotel room at United for "any lawful purpose," there is a jury question as to whether United owed Plaintiff a duty of ordinary care under § 51-3-1 "[to] keep[] the premises and approaches safe."[9]

### B.   Admissible material facts create a jury question as to whether Plaintiff was an invitee at United because she was United's customer.

In 2021, the Supreme Court of Georgia stated that "***the customer of a business is typically an invitee of the business owner***." *Cham v. ECI Mgmt. Corp.*, 856 S.E.2d 267, 276 n.13 (Ga. 2021) (emphasis added). *Cham* follows a long line of binding Georgia cases establishing as much. *See, e.g.*, *Howell v. Three Rivers Sec., Inc.*, 456 S.E.2d 278, 280 (Ga. Ct. App. 1995) ("As a paying customer of Shenanigan's, it is undisputed that Howell was an invitee in this case."); *Munford, Inc. v. Lay*, 216 S.E.2d 123, 126 (Ga. Ct. App. 1975) ("[T]he proprietor of a retail business is not an

---

[9] Any questions about the temporal and spatial limitations of Plaintiff's invitee status are issues of fact for the jury to resolve. *See, e.g., Clark Atlanta Univ., Inc. v. Williams*, 654 S.E.2d 402 (Ga. Ct. App. 2007) (genuine issue of material fact existed as to whether student was still an "invitee" of the university at the time he was shot when he left an activity hosted by university and stopped for 45 minutes to socialize on lawn that may have been off campus before being shot on that lawn).

insurer of the safety of his customers, though they are unquestionably invitees."),
*rev'd on other grounds*, 219 S.E.2d 416 (Ga.); *S.A. Lynch Corp. v. Greene*, 109
S.E.2d 615, 617 (Ga. Ct. App. 1959) ("In the instant case, the petition alleges that
the plaintiff was a paying guest in the defendant's hotel. As such she was an in-
vitee[.]"); *Hopkins v. Hudgins & Co.*, 462 S.E.2d 393, 395 (Ga. Ct. App. 1995) (cus-
tomer waiting in parking lot for product to be loaded into his truck was invitee);
*Hicks v. M.H.A., Inc.*, 129 S.E.2d 817, 819–20 (Ga. Ct. App. 1963) (plaintiff was
invitee because shopping center had "some interest" in plaintiff's visit to store in
shopping center where it could benefit if "their tenants [did] a satisfactory volume
of business"); *Lenny's No. Two, Inc. v. Echols*, 384 S.E.2d 898 (Ga. Ct. App. 1989)
(nightclub customer was business invitee even after nightclub's request that he leave
premises because he was intoxicated).

The principle set forth in *Cham* and myriad Georgia cases that a business's
customer is its invitee aligns with Georgia's pattern jury instruction on the "defini-
tion" of an invitee: "A person who enters the premises of another ***for any purpose
connected with the business of the owner or occupier*** is an invitee, and the owner
or occupier of the premises owes that person the duty to exercise ordinary care in
keeping the premises safe." Georgia Suggested Civil Pattern Jury Instructions
§ 60.610 (emphasis added); *see also Howard v. Gram Corp.*, 602 S.E.2d 241, 244
(Ga. Ct. App. 2004) ("[W]here [a] retail establishment sells goods to all comers, any

person entering the premises occupies the status of invitee. Even if the injured party does not have a present intent to make a purchase upon entry, the existence of a possible economic exchange is of mutual benefit to both parties.").

Here, there is no question that Plaintiff was a customer of United. She repeatedly made **lawful purchases** at United. She bought drinks, food, condoms, and feminine hygiene products from United's retail store in its lobby and from its vending machine in an outdoor hallway.

Because Georgia law holds that a business's customers are its invitees, and Plaintiff has presented admissible evidence that she was a customer of United on a repeated basis, there is at least a disputed material fact as to whether Plaintiff was an invitee of United and whether United owed Plaintiff a duty of ordinary care.

### C.    The Court's conclusion that Plaintiff was a licensee of United is inconsistent with Georgia law.

The Court's conclusion that Plaintiff was a licensee conflicts with Georgia law in two regards. *First*, it violates Georgia law providing that a customer is *not* a licensee. *See* Georgia Suggested Civil Pattern Jury Instructions § 60.710 ("A licensee is a person who (1) is not a customer."); *see also* O.C.G.A. § 51-3-2. When Plaintiff repeatedly bought goods at the hotel, she paid money to the hotel for the hotel's benefit. § 51-3-2 (defining "licensee" as person on the "premises **merely** for his own interests, convenience, or gratification" (emphasis added)).

*Second*, the Court's licensee conclusion misses that a person invited to stay at

21

a hotel is, by definition, not a licensee. O.C.G.A. § 51-3-1. United Inn did not invite Plaintiff to stay in a hotel room "merely for [her] own interests, convenience, or gratification." § 51-3-2. The hotel's business is renting rooms and selling goods to its guests. *See, e.g.*, *Howard*, 602 S.E.2d at 244 ("Even if the injured party does not have a present intent to make a purchase upon entry, the existence of a possible economic exchange is of mutual benefit to both parties.").

The Court's reliance on the "lawful purpose" language in § 51-3-1 for its licensee conclusion is also mistaken. Because the statutory text says "any lawful purpose," invitee status does not hinge on whether Plaintiff had any *unlawful* purpose while on the property. It hinges on the inverse: whether Plaintiff had any *lawful* purpose. Here, Plaintiff had many—eating, sleeping, buying food and drinks, and so forth. That is enough to meet the "any lawful purpose" standard.

The Court's "lawful purpose" analysis also misses that Plaintiff was a victim—not a perpetrator—of minor sex trafficking. Her "purpose" on the property was not "unlawful." She did not commit "unlawful" acts. She was the victim of "unlawful" acts—assault, rape, and sex trafficking. Her violent and dangerous sex trafficker was prosecuted by DOJ for trafficking her. Victims of crime are routinely found to be invitees in premises liability cases, even though the perpetrators of the crime may not have been on the "premises for any lawful purpose." The status of a crime perpetrator does not carry over to the crime victim. *See, e.g., Ga. CVS Pharmacy, LLC*

*v. Carmichael*, 890 S.E.2d 209, 227 (Ga. 2023) (robbery victim was invitee); *see also Matt v. Days Inns of Am., Inc.*, 443 S.E.2d 290 (Ga. Ct. App. 1994) (robbery victim was invitee); *Walker v. Aderhold Props., Inc.*, 694 S.E.2d 119, 124 (Ga. Ct. App. 2010) (rape victim was invitee).

Finally, even if the Court's "lawful purpose" analysis is based on the opinion that Plaintiff was a licensee when she arrived on the property, it does not address that the hotel transacted business with her and invited her to stay in a room. To the extent that Plaintiff was not an invitee at any point, she became an invitee when she was invited into a hotel room and sold goods.

### D. Even if Plaintiff were a licensee, United owed her—a known or anticipated visitor—a duty of ordinary care against foreseeable dangers.

The Court's decision to grant summary judgment as to Count II "[s]ince Plaintiff does not argue that United willfully or wantonly caused her injury" is flawed. Doc. 148 at 22. Plaintiff alleged, presented evidence, and argued that United failed to exercise ordinary care. *See, e.g.*, Doc. 1 ¶¶ 85, 96, 97; *see also* Doc. 130 at 23. While Plaintiff's summary-judgment response focuses on her invitee status, United cannot escape its duty of ordinary care regardless of her status as an invitee or licensee. In Georgia, "it is usually willful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or may reasonably be expected to be, within the range of a dangerous act being done or a hidden peril on one's

premises." *Bethany Grp., LLC v. Grobman*, 727 S.E.2d 147, 149 (Ga. Ct. App. 2012) (citation omitted). "Accordingly, if a danger to a licensee is known and foreseen by the property owner, then the owner must exercise ordinary care and diligence to protect that licensee from the peril." *Id.*

*Bethany* arose because a taxi driver was shot and killed at an apartment complex where he was picking up a passenger. The court noted that even if the taxi driver were a licensee when he visited the apartment complex, there was sufficient evidence to go to a jury over whether the apartment complex owed the driver a duty of ordinary care because "there was evidence that Bethany knew that armed robberies had occurred on the property, even though no one had been murdered on the premises, and that it should have anticipated Mr. Grobman's presence on the property" because taxi drivers came to the apartment complex with some frequency. *Bethany*, 727 S.E.2d at 150.

Here, United knew of the extensive criminal history on the property, including commercial-sex activity, and that it repeatedly talked with and observed Plaintiff on the property. Under *Bethany*, there is a jury question as to whether United owed Plaintiff a duty of ordinary care—whether she was an invitee or a licensee—and whether the failure to exercise that duty was willful or wanton.

## CONCLUSION

Plaintiff asks the Court to grant oral argument on her motion for

24

reconsideration. But with or without oral argument, the Court should grant Plaintiff's motion for reconsideration and vacate its Order granting summary judgment to United. Whether Plaintiff's TVPRA civil-beneficiary claim or Georgia negligence claim against United succeeds or fails is a jury question.

*—signatures appear on the next page—*

Respectfully submitted on July 12, 2024.

ANDERSON, TATE & CARR, P.C.

*/s/ Rory A. Weeks*
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Rory A. Weeks
rweeks@atclawfirm.com
Georgia Bar No. 113491

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

FINCH McCRANIE, LLP
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorneys for Plaintiff*

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

Respectfully submitted on July 12, 2024.

ANDERSEN, TATE & CARR, P.C.

*/s/ Rory A. Weeks*

Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
Rory A. Weeks
Georgia Bar No. 113491
rweeks@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile