IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| G.W., | : |
| | : |
|     **Plaintiff,** | : |
| | :    **CIVIL ACTION FILE** |
| vs. | : |
| | :    NO. 1:20-cv-05232-JPB |
| NORTHBROOK INDUSTRIES, | : |
| INC., D/B/A UNITED INN AND | : |
| SUITES, | : |
| | : |
|     **Defendant.** | : |

**PLAINTIFF'S REPLY IN SUPPORT OF
<u>MOTION FOR RECONSIDERATION</u>**

The Court should grant Plaintiff's Motion for Reconsideration and allow a jury to decide the merits of Plaintiff's claims under the Trafficking Victims Protection and Reauthorization Act ("TVPRA") and Georgia negligence law.

**I.   Plaintiff's TVPRA Civil Beneficiary Claim.**

Plaintiff has explained in briefing and oral argument that the Court's ruling dismissing Plaintiff's TVPRA beneficiary claim is legally erroneous because it conflates perpetrator and beneficiary claims, misreads *Doe #1*'s definition of "participation in a venture," overlooks *Doe #1*'s admonition that the Eleventh Circuit only analyzed participation in a "sex trafficking venture" because that is what the plaintiffs in that case had alleged, and relies on *Riti*'s misguided analysis.  Plaintiff incorporates those arguments here in full.  But Plaintiff does not rehash them.

Instead, this reply brief explains that, even if the Court's interpretation of the law governing civil beneficiary claims is correct, then summary judgment should be denied. That is, assuming *arguendo* that Plaintiff must prove that the hotel aided and abetted Plaintiff's traffickers to bring a viable civil beneficiary claim against the hotel under 18 U.S.C. § 1595(a), then summary judgment is still improper. That's because when all facts and reasonable inferences therefrom are construed in Plaintiff's favor, a reasonable jury could conclude that the hotel aided and abetted Plaintiff's traffickers.

Record evidence that United Inn ignores in its response brief (Doc. 159) shows that United Inn aided and abetted Plaintiff's traffickers. For example, during the relevant period, United Inn did not post the anti-trafficking notices at the hotel that Georgia law required. (Doc. 127-23 at 10 ("Defendant did not have any trafficking notices posted on the property within the time frame described in this Request.")). Under O.C.G.A. § 16-5-47(b)(12), United Inn had to post anti-trafficking notices in "each public restroom" and on "conspicuous" parts of the property with "information giving individuals a method to contact the National Human Trafficking Hotline and the Statewide Georgia Hotline for Domestic Minor Trafficking," § 16-5-47(c). In its summary judgment order, the Court wrote that "the record presented here shows that United took actions that would be expected to further the interest of a hotel enterprise. This included renting rooms, collecting payment for the rooms

and providing additional towels to guests upon request." (Doc. 148 at 14). There is no legitimate "interest of a hotel enterprise" in violating Georgia's anti-trafficking laws, and yet, that is what United Inn did. In the Court's parlance, the evidence shows that United Inn "did 'more' than rent rooms to traffickers and observe trafficking at their property." (*Id.* at 13 n.3). Like a hotel deciding not to call the police in response to signs of sex trafficking, United Inn's choice not to post required anti-trafficking notices was a specific corporate act that facilitated Plaintiff's trafficking. Had the required notices been posted, Plaintiff would have seen information about trafficking and how to get help. Standing alone, this failure is sufficient at the summary judgment stage to merit a jury trial as to whether United Inn aided and abetted Plaintiff's sex trafficking.[1]

But there is much more evidence that, when considered with United Inn's failure to post the required trafficking notices, and when construed in the light most favorable to Plaintiff, at least gives rise to the reasonable inference that United Inn aided and abetted Plaintiff's sex trafficking. For example, Plaintiff's traffickers repeatedly visited the United Inn in 2017 to rent rooms and to traffic minors. (Doc.

---

[1] For these reasons, United Inn's statement in its response brief that "United independently operated a *lawful business* that the traffickers exploited for their illicit personal gain" is demonstrably false. (Doc. 159 at 7) (emphasis added). Additionally, as discussed *infra* regarding the need for an adverse inference, United Inn also violated tax, immigration, or labor and employment laws by failing to maintain appropriate records on its workers and payments made to them.

3

127 at 4-6). It is reasonable to infer that Plaintiff's veteran sex traffickers, who were convicted in federal court for minor trafficking, decided to return to United Inn multiple times to traffic minors because it was a safe haven and United Inn condoned their activities.[2] That follows logically from the fact that the hotel was violating anti-trafficking laws by not posting required anti-trafficking notices. And from the fact that United Inn was a "problem hotel" in DeKalb County known to be a hotbed for commercial sex crimes in a high-crime area. (*Id.* at 8-11). Further, United Inn admitted that it did not follow the DeKalb County Police Department's recommendation to get more security at the hotel. (*Id.* at 13). It is reasonable to infer that Plaintiff's traffickers chose United Inn because of its insufficient security, and that United Inn aided and abetted Plaintiff's traffickers by operating a hotel with less security than was recommended. Construing these facts—the hotel not posting required anti-trafficking notices, Plaintiffs' traffickers returning to the hotel multiple times, the hotel not following recommendations to get more security, and the prevalence of commercial sex activity at the hotel—in the light most favorable to Plaintiff, a reasonable jury could conclude that United Inn's policies, actions, and

---

[2] Plaintiff G.W. reasonably inferred that United Inn aided and abetted her traffickers "based on the way I realized that [one of my traffickers] was very familiar with every single place that he took us to. And United Inn and Suites was the most frequent place that we went to." (Doc. 117-2 at 174).

inactions aided and abetted Plaintiff's traffickers in the sale of Plaintiff for sex at the hotel, which in turn led Plaintiff's traffickers to return to the hotel repeatedly.

On top of those facts, Plaintiff has additional evidence to support the reasonable inference that United Inn aided and abetted Plaintiff's trafficking. Plaintiffs G.W. and A.G. both testified that they attracted sex buyers by loitering in the hotel's parking lot and common areas in the middle of the night wearing scant, provocative clothing. (*Id.* at 7). And that on at least two occasions there was significant commotion in common areas with unruly groups of sex buyers. (*Id.* at 8). United Inn's owner and manager testified that the hotel has surveillance cameras monitoring the areas where Plaintiff G.W. and A.G. loitered to attract customers at night, and where significant commotion arose with sex buyers. (*Id.* at 13). Plaintiffs G.W. and A.G. testified that they were trafficked in rooms repeatedly entered by United Inn staff. (*Id.* at 7). When Plaintiffs G.W. and A.G. were locked out of their room at United Inn in the middle of the night, they went to the front desk for help; the front desk staff person called one of Plaintiff's traffickers; and after a conversation, walked the Plaintiffs back to the room. (*Id.* at 8). Construing these facts in the light most favorable to the Plaintiff (and taking Plaintiff's testimony as true, as is required), a reasonable jury could conclude that the hotel repeatedly saw Plaintiff (a minor being sex trafficked), repeatedly saw evidence of Plaintiff's minor sex trafficking in common areas and rooms, continued to rent rooms in which Plaintiff was sold for sex

repeatedly, and even assisted Plaintiff (at the direction of Plaintiff's trafficker) in getting back into the rooms when she was locked out, and then the trafficking continued.

United Inn argues in its response brief that "the overwhelming majority of the evidence Plaintiff references to support the claim that United participated in her trafficking relates exclusively to whether United had constructive knowledge of her trafficking" and is thus "irrelevant to the participation prong." (Doc. 159 at 7-8). Setting aside that United Inn only addresses a fraction of the evidence showing United Inn's participation, it cites no authority for the illogical principle that evidence is relevant to only the participation *or* the knowledge prong, but ***not both***. Why would that be true? Isn't the conversation in *Ricchio* between the owner and the trafficker evidence of participation ***and*** knowledge? More importantly, this Court has said that it is "not convinced that the participation prong can be viewed in isolation and disconnected from the other prongs of the test." (Doc. 148 at 16).

The Court's Order granting summary judgment suggests that the Court searched for *direct* evidence of United Inn aiding and abetting Plaintiff's sex trafficking. (Doc. 148 at 15 (noting that *Ricchio* involved "an agreement to continue prior commercial dealings" and that *I.R.* involved "managers visit[ing] the trafficking rooms to assist sex buyers[.]")) But direct evidence (e.g., evidence of a specific conversation between the traffickers and the hotel about the hotel aiding the

6

traffickers' illicit activities) is not necessary to create a reasonable inference of aiding and abetting in connection with a civil beneficiary claim. Both *direct* and *circumstantial* evidence suffice at the summary judgment stage to give rise to a reasonable inference of aiding and abetting. Direct evidence is not favored over circumstantial evidence. Pattern Civ. Jury Instr. 11th Cir. 3.3 (2022) ("'Circumstantial evidence' is proof of a chain of facts and circumstances that tend to prove or disprove a fact. ***There's no legal difference in the weight you may give to either direct or circumstantial evidence***.") (emphasis added); *United States v. Barnette*, 800 F.2d 1558, 1566 (11th Cir. 1986) (in criminal cases, "[c]ircumstantial evidence can be and frequently is more than sufficient to establish guilt beyond a reasonable doubt."). This Court should not credit direct evidence differently than circumstantial evidence, especially at the summary judgment stage when the law requires all "reasonable inferences" to be drawn in Plaintiff's favor. As described, there is extensive "proof of a chain of facts and circumstances that tend to prove" that United Inn aided and abetted Plaintiff's trafficking.

Further, favoring direct evidence over circumstantial evidence ignores that 18 U.S.C. § 1595(a) is a civil remedy for sex trafficking victims. (Doc. 148 at 7). It cannot be that Congress intended minor sex trafficking victims to have viable beneficiary claims only if they have *direct* evidence that the beneficiaries aided and abetted trafficking. That would defeat the purpose of the civil remedy and leave it

7

toothless. In most minor sex trafficking cases, victims do not see or hear their traffickers strike a deal with the subject hotel in between rapes, beatings, and drugging. The fortuity of whether a minor sex trafficking victim happens to see the trafficker pay a hotel staff member for aiding the trafficker or happens to overhear a phone call where a hotel staff member is acting as a lookout for the trafficker cannot be the distinction between viable and nonviable civil beneficiary claims for minor sex trafficking. That distinction is not found in § 1595(a) and it conflicts with federal caselaw on the value of circumstantial evidence.

The consequences of requiring direct evidence of aiding and abetting, and discrediting circumstantial evidence of it, are not academic. Undersigned counsel represents another minor victim of sex trafficking at United Inn, Plaintiff J.G., who brought a TVPRA civil beneficiary claim against United Inn. *J.G. v. Northbrook Industries, Inc. d/b/a/ United Inn & Suites*, Case No. 1:20-cv-05232-JPB (N.D.Ga. Dec. 28, 2020). In that case, J.G. happened to observe a phone call between her traffickers and United Inn staff where the staff acted as lookouts for J.G.'s traffickers. Her case, which is before Judge Geraghty, is set for trial on April 14, 2025. (*Id.* at Doc. 145). It cannot be that only direct evidence will give a child sex trafficking victim the right to a trial and abundant circumstantial evidence will not.

Until now, Plaintiff's reply has proceeded as if she had a fair chance to develop record evidence that United Inn aided and abetted Plaintiff's traffickers. And

as if United Inn followed the Federal Rules of Civil Procedure and provided Plaintiff with complete and accurate discoverable information in a timely fashion. But United Inn serially abused the discovery process. It did not provide Plaintiff with complete and accurate discoverable information. As discussed in the August 8, 2024 hearing, and in Plaintiff's motion for sanctions filed on December 12, 2023 (Doc. 114), United Inn offered partial, late, and inconsistent discovery responses about its staff. United Inn admitted that it paid numerous hotel workers in cash, failed to maintain records of those cash payments, and failed to maintain records of who worked at the hotel and when they worked there. (*Id.* at 13-14). In doing so, United Inn likely violated tax, immigration, or labor and employment laws. Such violations are not mere technicalities. Plaintiff needed to know in discovery who worked at United Inn during the relevant period, the dates of their employment, their full names, and their contact information so that Plaintiff could investigate United Inn's staff, run background checks, gather criminal histories, conduct interviews, take depositions, and more. *See, e.g.*, Fed. R. Civ. P. 26(a)(1). United Inn's discovery abuses and unlawful business practices undermined Plaintiff's ability to investigate and develop evidence that the hotel aided and abetted Plaintiff's trafficking.

It is not right or fair in this minor sex trafficking case that a business that routinely flouts the law should benefit from its unlawful business practices when it is sued for minor sex trafficking. As discussed in the August 8th hearing, the Court

should draw the adverse inference at the summary judgment stage that United Inn's partial, late, and inconsistent discovery responses regarding the people who worked at United Inn means that the workers would have supported Plaintiff's position that United Inn aided and abetted Plaintiff's trafficking (and harmed United Inn's position that it did not).  In response to discovery misconduct of the sort at issue here, several Rules authorize (and at least one requires) sanctions, which may include adverse inferences, jury instructions, and court orders prohibiting a non-compliant party from opposing certain claims or arguments. *See, e.g.,* Fed. R. Civ. P. 26(g)(3) ("If a certification violates this rule without substantial justification, the court on motion or on its own must impose an appropriate sanction on the signer, the party, or both[.]"); 37(b) (listing potential sanctions, including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action"); 37(c)(1) ("If a party fails to provide information or identify a witness as required under Rule 26(a) or (e)[,]" then the Court may "not allow[]" the party to "use that information," may "inform the jury of the party's failure," or may "impose other appropriate sanctions."); *accord* O.C.G.A. § 24-14-22 ("If a party has evidence in such party's power and within such party's reach by which he or she may repel a claim or charge against him or her but omits to produce it or if such party has more certain and satisfactory evidence in his or her power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against such

party is well founded; but this presumption may be rebutted.")  The "inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct," for the Federal Rules of Civil Procedure are not substitutes for the Court's inherent power.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).  At trial, Plaintiff would request an adverse inference along the same lines.

There was some discussion at the August 8 hearing about whether Plaintiff previously requested an adverse inference, and the Court's Order (Doc. 157) references "new arguments [that] were raised during oral argument" on August 8.  Plaintiff had indeed requested an adverse inference.  For clarity, Plaintiff notes that her December 2023 motion for sanctions stated in relevant part:

> Defendant should not be allowed to introduce evidence or argument at trial that its staff never reported concerns about commercial sex at the hotel, that it trained its staff to be on the lookout for criminal activity and commercial sex, and that none of its staff had criminal records or were complicit in crime at the hotel, because it has produced inconsistent, incomplete information about who worked at the hotel. Plaintiff cannot confront Defendant's claims about staff reports of crime, staff trainings, and vetting of staff because Plaintiff does not know who Defendant's employees were and cannot find them. *See, e.g., Nance v. Ricoh Electronics, Inc.*, 2008 WL 926662 at *3 (N.D. Ga. April 4, 2008) aff'd, 38 Fed. Appx. 99 (11th Cir. 2010) (imposing Rule 37(c)(1) sanction for Rule 26(a) violations). Alternatively, Plaintiff requests a jury instruction on how Defendant's conflicting and partial staff records compromised Plaintiff's ability to examine Defendant's claims about staff crime reports, staff trainings, and vetting of staff, among other topics.

(Doc. 114 at 24-25).

Likewise, in her January 2024 reply in support of her motion for sanctions,

11

Plaintiff argued:

> As to Plaintiff's requested sanctions regarding what staff reported about crime, what staff was trained on, and staff criminal histories, the point is that Plaintiff is not able to appropriately examine Defendant's contentions on those topics because Defendant has produced inconsistent, incomplete information about who worked at the hotel. Plaintiff cannot confront Defendant's claims about staff reports of crime, staff trainings, and staff criminal histories because Plaintiff does not know who Defendant's employees were, whether it has a complete list of people who worked at the hotel, and cannot find them.
>
> Plaintiff does not dispute that Shareef and Islam testified in their depositions to what they claimed was in their "direct and personal knowledge." But that does not mean that they were telling the truth, or remembering events accurately, or that Plaintiff must simply take their word for it. Because Defendant has produced shifting, inconsistent lists of employees, Plaintiff has been hamstrung in her ability to investigate the allegations and challenge Defendant's claims about issues related to staff. Defendant's suggestion that Shareef's and Islam's testimonies are sufficient is a bit like saying it is good enough to hear one side of a telephone call, there is no need to talk to the person on the other end of the call.
>
> If the Court is not inclined to grant the requested exclusion of the specific, enumerated testimony by Shareef and Islam, then a jury instruction is necessary to level the playing field. Contrary to what Defendant suggests, Plaintiff is not asking for a jury instruction that Defendant "obstruct[ed] Plaintiff's investigation."
>
> Rather, Plaintiff would request a jury instruction that conveys the facts (at least some of which Defendant does not dispute): Defendant produced conflicting and incomplete staff lists to Plaintiff during the litigation, which compromised Plaintiff's ability to identify who worked at the hotel and investigate Defendant's claims about staff crime reports, staff trainings, and vetting of staff, among other topics.

(Doc. 130 at 10-12).

Plaintiff responded to United Inn's motion for summary judgment five days before the sanctions briefing closed on January 23, 2024 (Doc. 130). In her summary

judgment response, Plaintiff did not ask for an adverse inference. Instead, Plaintiff raised that issue in her contemporaneous sanctions briefing. Regardless, *Riti* had not been issued when the parties briefed summary judgment. Now that the Court has articulated an aiding-and-abetting standard in the wake of *Riti*, Plaintiff has drawn the Court's attention back to the issue of sanctions because the need for an adverse inference is relevant to the Court's reconsideration of United Inn's motion for summary judgment.

\*             \*             \*

Whether the evidence above establishes that United Inn aided and abetted Plaintiff's trafficking (assuming that is the legal standard for a TVPRA civil beneficiary claim) is for a jury to decide at trial. That is not a question that this Court can answer as a matter of law on summary judgment. As a result, the Court should reconsider its prior Order and deny United Inn's motion for summary judgment.

## II. Plaintiff's Negligence Claim Against United Inn.

Plaintiff also asks that the Court reconsider its negligence ruling. Georgia law does not preclude a minor who is sex trafficked for days at a hotel in this state from suing the hotel for negligently (at the very least) causing her injuries. If Plaintiff had been robbed and shot in the parking lot after purchasing goods at United Inn, she could have sued the hotel for causing her injuries through negligently securing the property in the face of reasonably foreseeable risks. Likewise, if she had slipped on

13

a spilled drink in the front office while buying condoms, she could have sued the hotel for negligently causing her injuries. The result should not be different simply because the source of her injury was sex trafficking that the hotel knew or should have known about.

It is undisputed that Plaintiff lawfully purchased goods and engaged in certain lawful conduct at the United Inn (e.g., buying food, eating, sleeping, showering, and so forth). That conduct establishes that Plaintiff was, at least for a period, an invitee at United Inn because she was on the property, at least for a period, for "any lawful purpose." O.C.G.A. § 51-3-1. The scope of Plaintiff's invitation is a fact question. *See, e.g., W.K. v. Red Roof Inns, Inc.*, 692 F. Supp. 3d 1366, 1381–82 (N.D. Ga. 2023) (Calvert, J.) (denying summary judgment as to negligence claim in a sex trafficking case because "whether Plaintiffs were invitees or licensees is a jury question"); *Wiltse v. Wal-Mart Stores E., LP*, 720 F. Supp. 3d 1313, 1319–20 (N.D. Ga. 2024) ("When there is conflicting evidence regarding one's status on the premises, it is a question of fact left to the jury."); *Clark Atlanta Univ., Inc. v. Williams*, 654 S.E.2d 402 (Ga. Ct. App. 2007).

Further, even if Plaintiff were a licensee, not an invitee, summary judgment is still inappropriate on Plaintiff's negligence claim. Plaintiff alleged, presented evidence, and argued that United failed to exercise ordinary care. *See, e.g.*, Doc. 1 ¶¶ 85, 96, 97; *see also* Doc. 127 at 24. In Georgia, "it is usually willful or wanton not

to exercise ordinary care to prevent injuring a person who is actually known to be, or may reasonably be expected to be, within the range of a dangerous act being done or a hidden peril on one's premises." *Bethany Grp., LLC v. Grobman*, 727 S.E.2d 147, 149 (Ga. Ct. App. 2012). "Accordingly, if a danger to a licensee is known and foreseen by the property owner, then the owner must exercise ordinary care and diligence to protect that licensee from the peril." *Id.* Here, United Inn knew of the extensive criminal history on the property, including commercial-sex activity, and United Inn repeatedly talked with, observed, and sold goods to Plaintiff on the property. Under *Bethany*, there is a jury question as to whether United owed Plaintiff a duty of ordinary care—regardless of whether she was an invitee or a licensee—and whether the failure to exercise that duty of ordinary care was willful or wanton in accordance with *Bethany*.

## CONCLUSION

For these reasons, Plaintiff's Motion for Reconsideration should be granted.

This 19th day of December, 2024.

> */s/ David H. Bouchard*
> Richard W. Hendrix
> rhendrix@finchmccranie.com
> Georgia Bar No. 346750
> David H. Bouchard
> david@finchmccranie.com
> Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

                                                    */s/ Rory A. Weeks*
                                                    Patrick J. McDonough
                                                    pmcdonough@atclawfirm.com
                                                    Georgia Bar No. 489855
                                                    Jonathan S. Tonge
                                                    jtonge@atclawfirm.com
                                                    Georgia Bar No. 303999
                                                    Rory A. Weeks
                                                    rweeks@atclawfirm.com
                                                    Georgia Bar No. 113491

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

                                                    *Attorneys for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

This is to certify that the foregoing pleading has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

                                             Respectfully submitted,

                                             */s/ David H. Bouchard*
                                             Richard W. Hendrix
                                             rhendrix@finchmccranie.com
                                             Georgia Bar No. 346750
                                             David H. Bouchard
                                             david@finchmccranie.com
                                             Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

                                             *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certify that Plaintiff, through her attorneys, has served a true and correct copy of the foregoing pleading into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 19th day of December, 2024.

                                        */s/ David H. Bouchard*
                                      Richard W. Hendrix
                                      rhendrix@finchmccranie.com
                                      Georgia Bar No. 346750
                                      David H. Bouchard
                                      david@finchmccranie.com
                                      Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

                                 *Attorneys for Plaintiff*